# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. TDC-20-33 |
| | * | |
| WILLIAM GARFIELD BILBROUGH IV, | * | |
| | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

## OPPOSITION TO SECOND MOTION TO REOPEN DETENTION HEARING

On March 17, 2020, the defendant filed his second motion to reopen his detention hearing. ECF No. 69. The only novel claim in this second motion is that COVID-19 is a changed circumstance meriting the defendant's release. This Court recently denied a similar claim in *United States v. Martin*, PWG-19-140 (D. Md.), ECF No. 209. Because the defendant's generic argument runs counter to the individualized determination required by the Bail Reform Act, this Court should do the same and deny the motion, without a hearing.

## Background

On January 16, 2020, the defendant was arrested pursuant to a federal criminal complaint, which charged him with various alien-related offenses. In a motion and at a detention hearing on January 22, 2020, the Government set forth substantial evidence in favor of detention. The defendant countered that he should be released into the custody of his grandmother.

At the conclusion of the hearing, the Court detained the defendant, finding that no release condition would reasonably assure either the safety of any other person and the community or the defendant's appearance as required. The Court left open the door, as does the statute, to reconsideration if material facts change. The Court did note, however, that any reconsideration

would have to result in a release package that did not involve the defendant going back to the grandmother's house. Specifically, the Court stated:

- "I don't think . . . that going back to the residence is an appropriate house for him."
- "[P]utting him back in the same house where he has fostered these misguided ideas and ideology, I don't think it's going to work."
- "He's not going back to grandma's house. Period. End of discussion."

On January 27, 2020, a federal grand jury for the District of Maryland returned an indictment charging the defendant with two counts of conspiracy regarding the transportation and harboring of co-defendant Patrik Jordan Mathews, and three substantive counts of transporting and harboring Mathews.

On February 12, 2020, the defendant filed a motion to reopen the detention hearing. The defendant again offered his grandmother as a third-party custodian. After a hearing on March 4, 2020, the Court again detained the defendant.

On March 17, 2020, the defendant filed his second motion to reopen the detention hearing, citing concern over COVID-19. ECF 69. He again offers his grandmother as a third-party custodian, at the very location this Court previously rejected. *Id.* As detailed below, the motion should be denied.

## **Argument**

The defendant relies on the speculative prospect of a COVID-19 outbreak at the Correctional Treatment Facility ("CTF"), the pretrial facility where he currently is housed. Yet neither the defendant nor any other detainee at CTF has been diagnosed with COVID-19. Further, CTF continues to take precautionary measures to prevent transmission of COVID-19 into CTF. For example, CTF has suspended all non-attorney in-person visits, programming, and volunteer activities, and has enhanced cleaning efforts, especially within common areas. *See*

https://doc.dc.gov/page/coronavirus-prevention. At this time, transmission of COVID-19 into CTF is hypothetical. It is even more speculative when discussing the defendant specifically, since he is housed within the facility's medical infirmary.

Furthermore, the defendant's second motion to reopen his detention hearing, which focuses exclusively on the COVID-19 outbreak, ignores the other § 3142 factors the Court must consider in determining whether a defendant poses a danger to the community and a flight risk. To be sure, the Bail Reform Act instructs courts to consider the "physical and mental condition" of the defendant as one of the factors in its analysis. 18 U.S.C. § 3142(g)(3)(A). Notwithstanding the COVID-19 outbreak, that factor does not weigh heavily, if at all, in favor of the defendant's release. Currently, there are no cases of COVID-19 at CTF. The defendant acknowledges that he does not have COVID-19. He does not allege that he has been exposed to any individuals with COVID-19. In this way, he is not seeking release based on his *actual* "physical and mental condition." Instead he relies solely on the *possibility* of becoming infected.[1]

While the COVID-19 virus is new, health claims by detainees are not. Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where otherwise detention would be warranted. *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008). These cases recognize that reasonably necessary treatments are available in prison, and often times a prison setting will provide superior care than a defendant can obtain on the outside. *See United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999). In this case, the defendant simply has not made a factual record that his needs will not be met while detained. Granting a defendant's motion for release based on a

---

[1] The defendant's diabetic condition does not change the analysis. When faced with a similar motion for release based on COVID-19, of a defendant suffering from "diabetes, high blood pressure, asthma, and pain," Judge Grimm denied the motion for release without a hearing. *See United States v. Martin*, PWG-19-140 (D. Md.), ECF No. 209.

general, speculative claim of harm flies in the face of the defendant-specific analysis required by 18 U.S.C. § 3142(f).

Nor has the defendant found a sufficient third-party custodian, proffering only his grandmother who the Court previously found was not suitable.

Finally, awarding relief here, and in similar cases, would place a substantial and unwarranted burden on the Pretrial Services Division of the U.S. Probation Office, as well as the Court.  Whenever the Court orders electronic monitoring, a Location Monitoring Specialist is appointed to oversee the defendant's pretrial release.  To be sure, one case, by itself, would not strain the system.  But if the Court released the defendant, then undoubtedly an avalanche of defendants would also seek release.  Each defendant would make the generic argument, now being made by the defendant, that he should be released to reduce contact with other persons and have greater access to healthcare in the community—notwithstanding the fact that, twice now, the Court has detained the defendant to protect the community *from* him.  The speculative prospect of a COVID-19 outbreak at CTF does not diminish the public interest in keeping the defendant off the streets based on a judicial finding of dangerousness that cannot be ameliorated by any combination of release conditions.  And if the Court did release the defendant, and other defendants, such release would not only endanger the community, it would quickly stretch the bandwidth of existing LM specialists beyond its breaking point.[2]

---

[2] Before a Defendant is placed on release, a Pretrial Services Officer also must vet the proposed residence and meet the proposed third-party custodian and other residents who live there.  A flood of release orders would force these Officers to conduct a substantial amount of *in-person*, *in-home* meetings, exposing them to a heightened risk of infection.

## **Conclusion**

For the foregoing reasons, the Court should deny the defendant's second motion to reopen the detention hearing.

Respectfully submitted,

Robert K. Hur
United States Attorney

/s/
Thomas P. Windom
Thomas M. Sullivan
Assistant United States Attorneys

Jamie M. McCall
Special Assistant United States Attorney
