**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. TDC-20-33** |
| | * | |
| **WILLIAM GARFIELD BILBROUGH IV,** | * | |
| | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| ******* | | |

**SUR-REPLY TO SECOND MOTION TO REOPEN DETENTION HEARING**

On March 18, 2020, the defendant filed a letter regarding a Deputy U.S. Marshal in D.C. who had contracted COVID-19. The Government files this sur-reply to address the defendant's latest filing, which included information that was not addressed in the original motion. The conclusion is the same: the Court should deny the defendant's motion, without a hearing.

The D.C. Department of Corrections ("DOC"), which oversees the D.C. Jail and Correctional Treatment Facility ("CTF"), has undertaken comprehensive precautionary measures to protect detainees from exposure to COVID-19. As additional measures are implemented, DOC is alerting the public to the precautions. *See* https://doc.dc.gov/page/coronavirus-prevention. In addition to the information on the public webpage, the Government has learned the following by communicating with the United States Marshals Service and DOC's General Counsel.

DOC has installed an "Incident Command System." Each day, the heads of DOC and relevant agencies meet to discuss COVID-19 issues as they pertain to the D.C. jails, to discuss strategies to combat any possible spread of COVID through the D.C. jails, to track national trends, and to make sure DOC's policies are consistent with those national trends and with recommendations from the Centers for Disease Control and the D.C. Department of Health.

DOC also has taken various steps to protect its facilities, to screen visitors and incoming detainees at intake, to maintain cleanliness within the facilities, and to increase its medical coverage within facilities, including:

- **No Non-Legal Visitation:**  As of Saturday, March 14, 2020, DOC suspended all non-attorney in-person visits, programming, and volunteer activities, and has enhanced cleaning efforts, especially within common areas.  For staff and legal visitors, DOC performs a COVID-19 screening for these limited visitors.  The screening includes asking a series of questions to determine possible exposure to COVID, observing whether the person is displaying flu-like or COVID-associated symptoms, and taking their temperature.  Anyone displaying symptoms, giving a positive response, or showing an elevated temperature, is denied entry into the facility.

- **Inmate Screening and Awareness:**  All new detainees and inmates are subject to similar COVID-19 screening.  If an inmate presents with symptoms or provides affirmative answers during screening, they are provided a face mask and taken to medical.  Medical does an assessment and makes determination about whether transport to the hospital is appropriate.  Furthermore, facility staff are going through the jail units and reminding detainees to put in requests for sick call to see medical if they are feeling poorly.  Staff are reminded at roll calls about the need for various preventative measures.

- **Quarantine:**  Particular units have been set up to operate as quarantine locations.  Detainees are placed in quarantine locations if they show flu-like or COVID-like symptoms.

- **Extra Cleaning:**  Additional measures have been taken to maintain cleanliness of facilities, detainee hygiene, and access to (and awareness of) medical treatment.  DOC has increased its supply of cleaning and sanitation materials.  They currently have 55,000 bars of soap and are issuing inmates one bar of soap each week, in addition to allowing additional purchases of soap through commissary.  Posters are placed throughout the facilities to remind detainees about preventative measures they can take.  DOC staff puts emphasis on maintaining clean surfaces, avoiding touching, and other similar precautions.  In addition to standard cleaning, staff perform cleaning spot checks every two hours.  A cleaning unit goes through areas common areas to clean frequently touched areas like elevator buttons, escalators, and railings.

The defendant's motion does not discuss these DOC precautionary measures or allege that these measures are insufficient to address the needs of detainees.  Rather, the defendant's latest filing relies on the fact that a Deputy U.S. Marshal ("DUSM") in D.C. Superior Court has tested positive for COVID-19.  This information does not merit the defendant's release.  As of March 19,

2020, DOC is taking immediate, responsible action to address any potential threat. For example, DOC has identified DOC inmates and detainees who appear to have been in the vicinity of the DUSM and is screening those inmates and detainees for illness. Pending screening, those inmates and detainees have been separated from the rest of the DOC population. Likewise, DOC staff and other USMS and DOC personnel in the vicinity of the DUSM also have been quarantined and/or separated from other staff and jail population. Each of these reasonable steps is intended to address the actual threat posed by the DUSM's COVID-19 diagnosis, and is far more relevant to the Court's determination than the hypothetical speculation that is the focus of the defendant's motion. Indeed, U.S. District Judge Amit Mehta of the United States District Court for the District of Columbia recently affirmed Magistrate Judge Meriweather's detention order, relying at least in part on the fact that "[t]he Department of Corrections is taking precautions to protect the inmate population, and there is not any reported case within the inmate population (to the court's knowledge)." *United States v. Hill*, APM-19-260 (D.D.C.), Paperless Order date March 19, 2020.

        Respectfully submitted,

        Robert K. Hur
        United States Attorney

        /s/
        Thomas P. Windom
        Thomas M. Sullivan
        Assistant United States Attorneys

        Jamie M. McCall
        Special Assistant United States Attorney