IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Case No. TDC-20-0033 |
| WILLIAM GARFIELD BILBROUGH, IV | * | |

\* \* \* \* \*

**ORDER**

This matter is before the Court on the "Motion to Review Detention Order and Order Release of Defendant" ("Motion") (ECF No. 69) filed by Defendant William Garfield Bilbrough, IV ("Mr. Bilbrough"). Having considered the submissions of the parties (ECF Nos. 69, 70, 71, 72 & 75) the Court finds that a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons set forth below, the Motion is **DENIED**.[1]

On January 15, 2020, Mr. Bilbrough was charged by criminal complaint with transporting and harboring certain aliens and conspiracy to do so, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (iii), and (v)(I), and a warrant was issued for his arrest. (ECF No. 7.) On January 16, 2020, Mr. Bilbrough was arrested. Judge Day conducted an initial appearance the same day and a temporary order of detention was entered. (ECF Nos. 21 & 23.) On January 22, 2020, a detention hearing was conducted before the undersigned. (ECF No. 35.) The Government sought detention (ECF No. 33) and Mr. Bilbrough was detained (ECF No. 37).

On January 27, 2020, Mr. Bilbrough, together with co-defendants Brian Mark Lemley, Jr.

---

[1] The government's motion for leave to file a surreply (ECF No. 75) is granted. The government's surreply addresses new information that was filed in Mr. Bilbrough's supplement to his reply (ECF No. 72).

and Patrik Mathews, were indicted by the grand jury. (ECF No. 40.) Mr. Bilbrough is charged as follows: in Count One with conspiracy to transport certain aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I); in Count Two with transporting certain aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II); in Count Three with conspiracy to transport and harbor certain aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I); in Count Four with transporting certain aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II); and in Count Five with harboring certain aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (a)(1)(A)(v)(II). The maximum penalty for Counts One and Three is 10 years imprisonment, a $250,000 fine, and three years of supervised release. The maximum penalty for Counts Two, Four, and Five is five years imprisonment, a $250,000 fine, and three years of supervised release.

The government alleges that Mr. Bilbrough is a member of white supremacist organization called "The Base." (*See* ECF No. 33 at 2.) Among other things, The Base and its members seek the creation of a white ethno-state and the commission of acts of violence against minority communities. To that end, and to prepare for a "White Revolution," members of The Base have attended military-style training camps and extensively discussed ways to commit acts of extreme violence. The government has proffered that Mr. Bilbrough has boasted of The Base's activities, comparing it favorably to other terrorist organizations like al-Qaeda and ISIS. In addition to his activities in The Base, there is evidence of Mr. Bilbrough's intent to travel to Ukraine to join the nationalists fighting in the region and of his efforts to recruit his co-defendants to come with him. (*See id.* at 10.)

On February 12, 2020, Mr. Bilbrough filed a sealed motion seeking to reopen the detention hearing and establish conditions of release. (ECF No. 47.) The government opposed this motion. (ECF No. 60.) On March 4, 2020, a detention review hearing was conducted. (ECF No. 62.) The

Court declined to impose conditions of release and ordered that Mr. Bilbrough remain detained. (ECF Nos. 62 & 64.)

On March 17, 2020, Mr. Bilbrough filed the Motion seeking review of his detention status and the establishment of conditions of release. (ECF No. 69.) In the Motion, Mr. Bilbrough argues that "[c]ircumstances since the last hearing in this matter have changed dramatically with the spread of Coronavirus (COVID-19) and the recognition of the serious medical consequences to individuals who have prior medical conditions that may make them particularly vulnerable to the virus." (*Id.* at 2.) Because Mr. Bilbrough suffers from diabetes, a condition that potentially places him at greater risk of harm if infected with the virus, he argues that he should be released on conditions. He asserts that even if the virus has not yet infected any person in the facility where he is detained, the virus is highly contagious and is likely to do so in the future.[2] If that occurs, and if Mr. Bilbrough is infected, he would be placed in "potentially great danger." (*Id.* at 2.) He proposed to be released to live with his grandmother, who would serve as a third-party custodian.

The Court will first consider whether review of the detention order is appropriate. Under the Bail Reform Act, a detention hearing may be reopened "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue" of whether conditions of release can be established that will reasonably assure the appearance of such person as required and the safety of any other person and the community. 18 U.S.C. § 3142(f). During the previous hearings, Mr. Bilbrough was not aware that Coronavirus Disease 2019 (COVID-19) would become a pandemic and endanger

---

[2] In Mr. Bilbrough's supplement to his reply (ECF No. 72), he provides information that a member of the U.S. Marshals Service in Washington, DC has tested positive for the virus. This person apparently had regular contact with other detainees at two D.C. Department of Corrections facilities. The virus is highly contagious.

the health of individuals with certain medical conditions who are detained at pretrial detention facilities. The Court concludes that Mr. Bilbrough has provided new information that was not known to him at the time of his previous detention hearings and that this information has a material bearing on the issue of whether conditions of release are appropriate. *See* 18 U.S.C. § 3142(g) (stating that one of the factors to be considered under the Bail Reform Act is the physical condition of the defendant). The fact that Mr. Bilbrough suffers from diabetes and is therefore at an increased risk of complications if infected with COVID-19 is a material issue for the Court to consider.

Next, the Court must consider what impact this new information has on Mr. Bilbrough's detention. Just days ago, Judge Grimm authored a comprehensive Memorandum Opinion and Order discussing the COVID-19 pandemic in the context of an appeal of a detention order. *See United States v. Martin*, No. PWG-19-140, ECF No. 209. The defendant in that case stated "that he suffers from asthma, high blood pressure, and diabetes." (*Id.* at 8.) In light of the COVID-19 pandemic, the defendant argued that he should be released on conditions. Judge Grimm considered this factor along with the other factors set forth in the Bail Reform Act. In the end, having weighed all of the relevant information, Judge Grimm concluded that the defendant had failed to rebut the presumption of detention and that the government had established that the defendant was a danger to the community. Judge Grimm ordered that the defendant remain detained. (*Id.*)

Mr. Bilbrough's argument is no different from the argument raised in the case before Judge Grimm. The Court adopts Judge Grimm's reasoning in full. The fact of Mr. Bilbrough's medical condition is an appropriate factor for the Court to consider under the Bail Reform Act, especially in light of the COVID-19 pandemic, but it is not dispositive. Instead, the Court must make an individualized determination of whether conditions of release are appropriate in light of all of the factors listed in the Bail Reform Act. 18 U.S.C. § 3142(g).

At first blush, Mr. Bilbrough's charges may appear non-violent in nature, but the nature and circumstances of the offenses are serious. The relevant conduct underlying these charges involves efforts to form a white ethno-state, commit acts of mass violence, and overthrow the United States government. In addition, the strength of the evidence against Mr. Bilbrough appears to be strong. The government's proffers at both detention hearings reveal an extensive investigation undertaken into the criminal activities of Mr. Bilbrough and his co-defendants. As the Court previously explained, these factors weigh heavily in favor of detention. Mr. Bilbrough is a danger to the community. And his prior fixation on traveling to Ukraine to fight with nationalists, along with the maximum penalties he faces if convicted, make him a risk of flight.

But even with that backdrop, in the two prior hearings on this matter the Court stated that conditions of release might be appropriate if a suitable third-party custodian could be identified. After all, Mr. Bilbrough is young and has no criminal history. If a responsible third-party custodian could be identified, Mr. Bilbrough could live under the supervision of that person pending the resolution of this case. A responsible third-party custodian could be trusted to make sure that Mr. Bilbrough complied with all conditions of release and inform Pretrial Services and the Court of any violations. At both detention hearings, however, the Court has made clear that Mr. Bilbrough's grandmother is not a suitable third-party custodian and that he may not reside at her home. The reason for this is simple. Before Mr. Bilbrough was arrested, he lived with his grandmother. His grandmother was aware of Mr. Bilbrough's white nationalist activities and was troubled by them. But she did not report Mr. Bilbrough to law enforcement authorities and she was unable to exercise the degree of control over Mr. Bilbrough that would be required of a third-party custodian. This does not make Ms. Bilbrough's grandmother a bad person, but it does disqualify her from serving as a third-party custodian. If Mr. Bilbrough's grandmother was appointed as a third-party

custodian, Mr. Bilbrough would remain a danger to the community and a risk of flight. Given the serious nature of the charges in this case, releasing Mr. Bilbrough to live with his grandmother would be an unacceptable risk to the safety of the community.

Finally, the Court turns to the issue of Mr. Bilbrough's medical condition. The Court acknowledges that experts on COVID-19 have stated that individuals with diabetes are at a higher risk of experiencing more serious complications if infected with the virus. But there is also reason to believe that Mr. Bilbrough is not at increased risk of being infected with the virus just because he is confined in a pretrial detention facility. The government has submitted information regarding the procedures in place at Mr. Bilbrough's place of confinement to combat the spread of the virus. (ECF No. 75-2.) These procedures include a suspension of most visits and the screening of those visitors that are permitted; the screening of all new detainees and inmates; the establishment of quarantine locations in the facility for inmates showing COVID-19 symptoms; extra cleaning measures; and steps to educate detainees about measures that can be taken to avoid contracting or spreading the virus. The D.C. Department of Corrections appears to be taking reasonable steps to prevent and combat the spread of COVID-19 in its facilities. Although Mr. Bilbrough may still be at an increased health risk if he is infected with the virus, this factor alone does not outweigh the other factors that strongly favor detention. Mr. Bilbrough is simply too great a danger to be released.

Having considered these factors, as well as the findings made on the record during the previous detention hearings, the Court finds that Mr. Bilbrough's Motion must be **DENIED**. Mr. Bilbrough is a danger to the community and a flight risk. Without a suitable third-party custodian, there are no conditions of release that will reasonably assure the safety of the community and the appearance of the defendant.

The Motion (ECF No. 69) is **DENIED**.

<u>March 20, 2020</u>                                                            <u>        /s/                         </u>
Date                                                                                   Timothy J. Sullivan
                                                                                       United States Magistrate Judge