UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| VS. | * | CASE NO. TDC 20-00033 |
| WILLIAM GARFIELD BILBROUGH, IV | * | |

### APPEAL FROM THE DENIAL OF THE DEFENDANT'S MOTION TO VACATE DETENTION ORDER AND SET CONDITIONS OF RELEASE AND REQUEST FOR AN IMMEDIATE HEARING

The Defendant by and through his attorneys, Robert C. Bonsib, Esq. and Megan E. Coleman, Esq., respectfully notes this appeal from the denial of the Defendant's motion to vacate the order of detention in this matter and, in furtherance thereof, states as follows:

### SUMMARY OF ARGUMENT

The Defendant, William Garfield Bilbrough IV ("Bilbrough"), appeals from the March 20, 2020 Order of United States Magistrate Judge Timothy J. Sullivan, denying his motion to vacate the order of detention and set conditions of release. (ECF #76).

While this appeal includes a request for relief based upon the potential health risk to Bilbrough of his continued pre-trial confinement, this appeal would have been filed regardless of whether the Covid-19 had become an urgent health issue. Bilbrough respectfully submits that conditions of release should have been set in this matter without consideration of the impact of the Covid-19, however, now the reasonableness of Bilbrough's request that conditions of release be set becomes both more urgent and necessary.

### RECOGNITION OF A UNIQUE TIME IN THE FEDERAL JUDICIAL SYSTEM

Bilbrough recognizes that this is a unique and critical time in the history of this country and with respect to the challenges facing the federal courts in addressing the needs of criminal

MarcusBonsib, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000

defendants to have issues in their cases promptly resolved.

Bilbrough also faces the challenges and fears associated with his continued confinement as the political leaders order their citizens to stay home, to avoid gatherings of more than ten (and in some states more than three), to engage in social distancing, and to practice personal sanitizing precautions. These orders are difficult enough for our fellow citizens not subject to the restrictions of confinement in pre-trial detention facilities. But the rules and logistics of detention facilities make "social distancing" and these other practices, a wishful dream.

Courts are called upon to decide whether to risk infection, serious illness, or potential death of an inmate against in the face of an Order that otherwise would keep the person detained. The courts are struggling with the best way to resolve these issues. Some courts are denying release as others find that release is appropriate. Even as courts address release issues, the courts are closed except for urgent hearings, and when those hearings occur, precautions are taken to keep defendants and other court personnel as distant from one another as possible. While "social distancing" may be possible and occur in the courthouse, once detained defendants are ordered returned to detention facilities where "social distancing" is a hope, the future is both uncertain and scary.

We hear that the detention facilities have protocols in place to protect the inmates, then the news reports that recently convicted and detained media mogul Harvey Weinstein has tested positive for the virus while in detention. Likewise, in Texas, another inmate recently tested positive for the virus while in detention. These reports have prompted thousands of low-level inmates to be released from detention facilities in Los Angeles and New Jersey, with other facilities likely to follow.

It is unrealistic to suggest that detention authorities can protect those confined in detention facilities. Attached to this motion as Exhibit No. 1 is the Affidavit and C.V. of Dr. Mark Stern, a board-certified physician in internal medicine who specializes in correctional health care. Dr. Stern's

MarcusBonsib, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000

Affidavit most clearly cautions of the dangers posed by Covid-19 in correctional facilities.

Extraordinary times justify considerations regarding release of low-level offenders, such as Bilbrough.

Bilbrough respectfully submits that his detention would not be appropriate in "ordinary times" but is absolutely not reasonable in these times and for the reasons more particularly set forth in this motion.

## PROCEDURAL HISTORY

The following is the procedural history with respect to the preliminary proceedings this matter;

January 16, 2020 – Initial appearance and order of temporary detention.

January 22, 2020 - Detention Hearing (Order of Detention entered; ECF #36).

January 27, 2020 – Indictment filed.

February 4, 202 – Motion to Review Order of Detention (ECF #47).

March 4, 2020 - Hearing to Review Order of Detention

March 5, 2020 – Paperless order denying Motion to Review Order of Detention (EFC #47; ECF#64).

March 17, 2020 – Motion to review order of detention (ECF #69).

March 20, 2020 – Order denying Motion for Review of Order of Detention (ECF #76).

Undersigned counsel has not included with the motion the information and exhibits filed during the course of proceedings before Judge Sullivan, but adopts and incorporates and asks this Honorable to consider the pleadings and exhibits in the proceedings before Judge Sullivan (ECF #47 and #69)

MarcusBonsib, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000

3

## JUDGE SULLIVAN'S ORDER

Judge Sullivan, in his Order denying Bilbrough's motion to vacate detention order and set conditions of release explained his rationale for his Order. (ECF #76). Judge Sullivan was wrong and this Honorable Court should determine, in its *de novo* review of Judge Sullivan's Order, that there are conditions of release that can be set that will reasonably assure that Bilbrough will both appear in court when required to do so and will not represent a danger to the community if released.

As is more fully discussed herein, Gail Bilbrough, who is Bilbrough's grandmother, and has been his *de facto* mother, is a responsible member of her community, a loving and caring grandmother, whose loves for her grandson should not be a disqualifying factor in determining her suitability as an appropriate third-party custodian. Additionally, the nature of the charges against Bilbrough, his status as a non-violent offender accused of harboring an illegal alien, his lack of any prior record, his young age, his serious medical condition, and the risk to his health in being confined at the Correctional Treatment Facility ("CTF") in the District of Columbia are compelling reasons supporting Bilbrough's request that this Honorable Court vacate the order of detention and set conditions of release.

## WILLIAM GARFIELD BILBROUGH IV

Bilbrough is a nineteen-year old young man with no prior criminal record who, undersigned counsel has, in prior court proceedings, accurately described as a "knucklehead." His immature and fanciful ideas were the product of a young man who allowed himself to be, for a relatively brief period of time, influenced by the misguided and racist ideas of others.

As has been acknowledged by the government in its filings and before Judge Sullivan, Bilbrough, at least partially dissociated himself from these individuals and the organization referred to as "The Base" in December, 2019, well before he was arrested in this matter. (See ECF #12, p.

MarcusBonsib, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000

4

11).

While Bilbrough's co-defendants have been indicted for other offenses involving weapons, Bilbrough was initially charged in a criminal complaint with harboring an illegal alien in violation of 8 U.S.C. 1324(a)(1)(A)(v)(1), an offense under the federal sentencing guidelines (2L1.1) that has an Offense Level of 12. With Bilbrough's Criminal History Category of I, his advisory sentencing guideline range would be 10-16 months.

While often the government will file a criminal complaint with preliminary information only to get a defendant before the Court, before then expanding the nature of the charges based upon a more measured review of the evidence through the process of the Grand Jury, here the government returned an indictment that essentially tracked the information in the criminal complaint. Harboring and conspiracy to harbor. No weapons count. No counts alleging acts of violence.

The "flavor" of this case (which consists mostly of talk) might fairly be described as "ugly" and "offensive." Yet, those are not factors or reasons to keep this young man detained. However detestable Bilbrough's views of others might be, such views are not criminal and do not provide a basis for detention. It is an indisputable conclusion that if the government had evidence that Bilbrough was engaged in conduct other than that with which he has been indicted, it would have been charged. Words may be "ugly" but they are not a crime.

Bilbrough realized he was "in over his head" when in December, 2019 he voluntarily disassociated himself with his co-defendants and "The Base" at a time even before he was arrested and at a time when did know he was under investigation.

In his personal life, Bilbrough had no prior record, was employed and was in college.

Bilbrough has now been detained almost three-months.

Respectfully, it is submitted that the "flavor" of this case should not override "the facts" that

MARCUSBONSIB, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000

5

even giving the government the best inference of its allegations, does not justify the continued detention of Bilbrough. This is particularly so considering the extreme potential risk to his personal health should Bilbrough continued to be detained in this matter.

Bilbrough suffers from diabetes. While detained he has been provided a machine that he must periodically use to administer medicine to him to maintain his medical stability.

Should Covid-19 become present at the Correctional Treatment Center it is likely to quickly spread. Should Bilbrough be exposed to the virus he would be placed in potentially great danger. The CDC has recognized that individuals with diabetes are amongst the group of individuals who are particularly vulnerable to have severe adverse consequences should they be exposed to the virus. Bilbrough's continued detention in a large population detention facility creates great potential risk to Bilbrough's health and well-being.

Releasing Bilbrough to the third party custody of Gail Bilbrough would not only provide greater protection to ensure Bilbrough's personal safety, but the fact that the Bilbrough residence is somewhat isolated from other residences will provide further protection and increase the likelihood that Bilbrough would not be exposed to the virus.

Furthermore, if Bilbrough were to be exposed to the virus, he will need immediate medical attention, something that would be much more difficult to achieve if Bilbrough were detained.

### THIS CASE IS NOT JUDGE GRIMM'S CASE IN *U.S. V. ADAM MARTIN*

Judge Sullivan supports the denial of the Defendant's motion for release by citing the Memorandum and Opinion Order ("Order") of Judge Grimm in *United States v. Adam Martin* ("Martin") (PWG 19-140-13). To the contrary, Judge Grimm's Order supports the Defendant's release in this matter when the facts in these two cases are compared one to the other.

A comparison of the facts and personal characteristics of the Defendants in each case is

MarcusBonsib, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000

instructive.

    Judge Grimm notes the following regarding Martin:

1.     Martin is a lead defendant in a 17-defendant drug conspiracy.

    Bilbrough is the third defendant in aa 3-defedndant conspiracy in which he is charged with harboring an illegal alien by driving him or being a passenger in a car in which he was being driven on a couple of days on a couple of occasions.

2.     Martin maintained two stash houses that were searched and yielded five firearms, over 200 grams of cocaine base and other narcotics.

    Bilbrough's residence was searched and no weapons, drugs or other contraband was recovered.

3.     Martin was the subject of a wiretap that revealed that he exercised a leadership role in the drug conspiracy including evidence that Martin intended to "beat the fuck out of" a drug associate who thought had stolen drugs from another co-conspirator as well as intercepted conversations where Martin and his confederates discussed procuring firearms to aid in the conspiracy

    Bilbrough was a low-level associate in the organization referred to as "The Base" – an association that only lasted a few months before Bilbrough disassociated himself from regular contact with Base members.

4.     Martin had an extensive criminal history having accumulated 17 criminal history points resulting in a Criminal History Category of VI. He has been previously convicted of both narcotics and firearm offenses.

    Bilbrough has 0 criminal history points.

5.     Martin had a history of poor adjustment to community and court supervision and has

MARCUSBONSIB, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000

7

previously violated his release conditions.

Bilbrough has never been under court supervision.

6. Judge Grimm's Order noted that Martin "has not challenged, let alone rebutted, any of Chief Judge Gesner's factual findings, nor has he overcome the presumption of detention."

Bilbrough, on repeated occasions, has aggressively and repeatedly challenged Judge Sullivan's factual findings and notes that there is no presumption of detention to overcome based upon the charges against Bilbrough.

7. If convicted, Martin faces a mandatory minimum of ten years of imprisonment. Bilbrough, if convicted, would face no mandatory minimum sentence and, were he to plead guilty, could easily be in a Zone B sentencing range or if convicted after trial would likely be in a Zone C sentencing range.

**JUDGE GRIMM'S OPINION ACKNOWLEDGES THE COVID-19 PANDEMIC**

Judge Grimm, in his Opinion, recognized the difficulty in addressing the risk of Covid-19 in a detention facility. He noted that he was required to balance that extreme risk against the factors present in the Martin case. Judge Grimm concluded that the extremely serious nature of the charges against Martin, his criminal history, his involvement with narcotics and firearms and his prior poor performance while under court supervision – as well as the presumption of detention based upon the nature of the charges against Martin – tip the balance in favor of detention. The Martin case provides a roadmap for evaluating whether appropriate conditions of release can be set in Bilbrough's case where there is no criminal history, no history of poor performance under court supervision, no presumption of detention and where Bilbrough does not face a mandatory sentence if convicted.

MarcusBonsib, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000

The threat of Covid-19 – and the particular risk to Bilbrough of infection while detained – particularly where there are conditions that can be set that would reasonably guarantee that he would not flee and that he would not represent a danger to the community more than tip the balance in favor of vacating the Order of Detention and setting conditions of release.

### JUDGE SULLIVAN ACKNOWLEGED THAT CONDITIONS OF RELEASE CAN BE SET – BUT ERRED IN CONCLUDING THAT THE CONDITIONS OF RELEASE PROPOSED BY BILBROUGH WERE INADEQUATE

Interesting, Judge Sullivan's Order denying release does not suggest that no conditions of release can be set to reasonably guarantee that Bilbrough will not flee or represent a danger to the community. He simply finds that he was not satisfied that Bilbrough's grandmother, Gail Bilbrough, would be a proper third-party custodian. Judge Sullivan's rationale of why he concluded Gail Bilbrough is not a proper third-party custodian is not supported by the facts in this matter. Because this Honorable Court conducts a *de novo* review in this matter, no deference need to be given to Judge Sullivan's conclusion regarding the factors relevant to Bilbrough's request for release. Not only because this Court's review is *de novo* but also because Judge Sullivan's analysis is mistaken, this Court should vacate Judge Sullivan's detention order.

Had Judge Sullivan determined that Gail Bilbrough was a proper third-party custodian it seems clear that Judge Sullivan would have released Bilbrough and that his reluctance to approve Gail Bilbrogh as a third-party custodian was the only barrier to Judge Sullivan setting conditions of release. Had he found Gail Bilbrough was an appropriate third-party custodian he would have released Bilbrough. That determination conclusively establishes that there are conditions of release that can be set that would ensure that Bilbrough would not represent a risk of flight nor a danger to the community – only that a condition precedent was the finding of an appropriate third-party custodian.

MarcusBonsib, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000

9

In fact, not only is Gail Bilbrough an appropriate third-party custodian – she is best person to serve as a third-party custodian.

Before Judge Sullivan, Bilbrough submitted extensive documentation regarding the suitability of Gail Bilbrough as the appropriate third-party custodian. She is a responsible, caring and well-respected member of her community. She has no criminal history. She has guaranteed in proceedings before Judge Sullivan that she would faithfully report to the Court any violations of conditions of release set by the Court. Her deficiency is that she is Bilbrough's grandmother – a fact that Judge Sullivan erroneously relied upon as a personal characteristic that disqualified her from being an appropriate third-party custodian. Judge Sullivan was wrong. Ms. Bilbrough now has even more incentive to ensure that her grandson toes the line and strictly complies with conditions of release set by the Court as she has been extremely concerned about his health and well-being.

Ms. Bilbrough has been a regular presence at all of Bilbrough's court hearings. She has offered to post her residence – property worth a quarter of a million dollars – with no mortgage – and has offered to post $100,000 in cash as further security for Bilbrough's appearance in court.

Judge Sullivan concluded that because Ms. Bilbrough did not prevent Bilbrough from becoming involved with his co-defendants in this matter, that she, in some manner, has forfeited the right to be considered as a responsible third-party custodian. That is an erroneous conclusion and suggests that a parent must be viewed by the actions of an adult child (her grandchild). Ms. Bilbrough was an active presence in Bilbrough's life. She monitored and required Bilbrough to be responsive to her demands in many areas. She should not be characterized by 20/20 highsight as an irresponsible choice as a third-party custodian because Bilbrough did things – without her knowledge and outside of her presence.

Not only does Ms. Bilbrough have an impeccable personal history and not only is she willing

to risk her entire financial security on behalf of her grandson, but her residence is the very best place for Bilbrough pending the resolution of his case. In her residence, it would be her and Bilbrough. She would be in the best position to report to the Court if Bilbrough "stepped off the line."

Her residence is in an area where there is no risk of unnecessary contact with others.

Bilbrough could be "locked down" 24/7. His health would be best protected. She could make sure that his diabetes is best controlled. Ms. Bilbrough has been one who has consistently been concerned about Bilbrough's medical condition and she was very much involved in monitoring his medical condition, even before his detention.

To suggest that because Bilbrough, as an adult, chose to associate with individuals who, in retrospect, were much more involved in illegal conduct, somehow means that Ms. Bilbrough, at that time in the past, should have been able to fully appreciate the nature and characteristics of those individuals, is both unreasonable and wrong.

The nature of this matter has resulted in potential alternative third-party custodians to be reluctant to offer to serve in that capacity. It is not because of a concern relating to Bilbrough not following the Court's conditions of release. It is because of a concern that the nature of this case might result in publicity regarding this matter being directed at their residences and towards their families.

Ms. Bilbrough is the best, proper, appropriate and only reasonable choice to serve as a third-party custodian.

### SUMMARY AND CONCLUSION

For each and all of the foregoing reasons, Bilbrough respectfully requests that this Honorable Court vacate the order of detention in this matter and set appropriate conditions of release.

MarcusBonsib, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000

Respectfully submitted,

MARCUSBONSIB, LLC

*/s/ Robert C. Bonsib*

ROBERT C. BONSIB, ESQ.
6411 Ivy Lane, Suite 116
Greenbelt, Maryland 20770
robertbonsib@marcusbonsib.com
(301) 441-3000
Trial Bar No. 00324

*/s/ Megan E. Coleman*

MEGAN E. COLEMAN, ESQ.
6411 Ivy Lane, Suite 116
Greenbelt, Maryland 20770
robertbonsib@marcusbonsib.com
(301) 441-3000
Trial Bar No. 17552

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing motion was filed, via ECF, this 25th day of March, 2020 to all parties of record.

*/s/ Robert C. Bonsib*

ROBERT C. BONSIB

MarcusBonsib, LLC
6411 IVY LANE
SUITE 116
GREENBELT, MD 20770
(301) 441-3000