# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM GARFIELD BILBROUGH, IV,<br><br>Defendant. | Criminal Action No. TDC-20-0033 |

**MEMORANDUM ORDER**

On January 22, 2020, United States Magistrate Judge Timothy J. Sullivan ordered Defendant William Garfield Bilbrough, IV detained pending trial based on the finding that, pursuant to 18 U.S.C. § 3142(e), no condition or combination of conditions of release would reasonably assure the appearance of the defendant as required and the safety of the community pending trial. After Magistrate Judge Sullivan denied two Motions for Review of the Detention Order based on changed circumstances, ECF Nos. 47, 69, Bilbrough filed the pending Appeal from the Denial of the Defendant's Motion to Vacate Detention Order, ECF No. 77, which seeks review by the district judge pursuant to 18 U.S.C. § 1345(b). The Motion is fully briefed, and the Government has filed a Motion for Leave to File a Surreply, ECF No. 88. Because Bilbrough's reply brief asserted new arguments not raised in the original Motion, the Government's Motion will be granted and the Court will consider the surreply brief.

The Court is required to conduct a *de novo* review of the Magistrate Judge's ruling. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (citing *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992)). Having reviewed the recording of the two prior detention hearing on January 22, 2020 and March 4, 2020, considered the Indictment and the pretrial services report, reviewed the submitted briefs and exhibits on the present and all prior detention motions, and

reviewed the Magistrate Judge's oral and written rulings on detention, the Court affirms the Magistrate Judge's detention order because the Court finds that, upon consideration of the factors in 18 U.S.C. § 3142(g), no condition or combination of conditions of release would reasonably assure the defendant's appearance as required or the safety of the community pending trial. The Court further finds that the ongoing coronavirus pandemic does not provide a sufficient basis to alter the conclusion that detention is warranted.

## DISCUSSION

### I. Risk of Flight and Danger to the Community

As a threshold issue, Bilbrough argues that he may not be detained pending trial based on the danger he presents to the community because he has not been charged with one of the crimes listed in 18 U.S.C. § 3142(f)(1). This provision, however, describes one basis to justify a detention hearing, not a precondition to detention. 18 U.S.C. § 3142(f) states that "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required *and* the safety of any other person and the community" either (1) upon motion of the attorney for the Government in a case that involves" one of five categories of crimes; or (2) "upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves" either "a serious risk that such person will flee" or "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f) (emphasis added). The plain language of the statute thus provides that a detention hearing may be triggered by any of these conditions, and that the scope of any detention hearing is both risk of flight and danger to the community. *See id.* The distinction between the different bases for holding a detention hearing in the first place is that a hearing based on the type

of offense committed may be held only upon a motion by the Government, while either a Government motion or a determination by the judge could warrant a hearing based on risk of flight or obstruction of justice. *See id.* § 3142(f)(1), (2). As for the appropriate basis for a detention determination, where detention is warranted only if the judicial officer finds a lack of conditions that "will reasonably assure the appearance of the person as required *and* the safety of any other person and the community," it is clear that once a hearing has been properly held, both risk of flight and danger to the community are necessarily at issue and may be considered. 18 U.S.C. § 3142(e)(1) (emphasis added).

Contrary to this language, the United States Court of Appeals for the Third Circuit has rejected the argument that "once a hearing is authorized any evidence of danger to the community from recidivism may be relied upon to justify pretrial detention" and concluded that detention may be imposed "only upon proof of a likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes actually specified by the bail statute." *See United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *see also United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) (holding that "where detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)"). The United States Court of Appeals for the Fifth Circuit, however, even while agreeing that "a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention," did not foreclose consideration of such danger when "any one of the six listed circumstances that warrants pre-trial detention is present," meaning that the case involved "a crime of violence or any one or more of the § 3142(f) factors," which include a serious risk of flight. *United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992); *see also United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) (after finding that felon-in-possession of a firearm was not a crime of violence under the

Bail Reform Act warranting a detention hearing, holding that pretrial detention is not available "*solely* on a finding of dangerousness" (emphasis added)). Where *Byrd* is consistent with the Court's reading of the statutory language, the Court concludes that 18 U.S.C. § 3142 permits consideration of a defendant's danger to the community where a detention hearing was properly invoked on risk-of-flight grounds under 18 U.S.C. § 3142(f)(2)(A), and risk of flight is, in fact, a basis for detention under 18 U.S.C. § 3142(e).

Here, the detention hearing was proper because at Bilbrough's initial appearance, the Government moved for, and United States Magistrate Judge Charles B. Day granted, a detention hearing on the grounds that Bilbrough was a serious risk of flight. *United States v. Bilbrough*, No. 20-MJ-0194-CBD, ECF Nos. 6, 8. As discussed below, there was sufficient evidence for risk of flight to be an appropriate basis for detention. Accordingly, the Magistrate Judge's consideration of danger to the community was proper even if not based on one of the categories of offenses in 18 U.S.C. § 3142(f)(1).

In considering the questions of risk of flight and danger to the community, the Court considers (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed to any person or the community upon release. 18 U.S.C. § 3142(g).

### A. Nature and Circumstances of the Offenses

Bilbrough is charged in the Indictment with one count of conspiracy to transport an alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I); two counts of transporting an alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II); one count of conspiracy to transport and harbor an alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I); and one count of harboring an alien, in violation of 8 U.S.C. § 324(a)(1)(A)(iii) and (a)(1)(A)(v)(II). On their face, these charges do not

involve crimes of violence, firearms charges, or drug trafficking charges. The maximum term of imprisonment on the conspiracy charges is ten years, while the maximum term of imprisonment on the transporting and harboring charges is five years.

However, the circumstances of these charges are more troubling. The alien at issue was co-defendant Patrick Jordan Mathews, a Canadian who entered the United States illegally after a search warrant was executed at his residence. In August 2019, Bilbrough and co-defendant Brian Mark Lemley, Jr. drove from Maryland to Michigan to transport Mathews back to the Maryland area and beyond. All three co-defendants were associated with The Base, a white supremacist group that organized military-style training camps, supports the overthrow of the United States government and the creation of a white ethno-state, and espouses the commission of acts of violence against minority communities. In November 2019, all three co-defendants were at a Base training camp in Georgia, and Lemley and Bilbrough purchased over 1,500 round of ammunition before all three drove back to Maryland. That month, Lemley and Mathews began to construct an assault rifle, which Bilbrough handled when they met together in December 2019. Over the next month, Lemley and Mathews took additional steps as part of a plan to use the firearm to commit acts of violence at a January 20, 2020 public event in Richmond, Virginia before they were arrested on January 16, 2020. Thus, although the specific statutory charges are not overtly serious, and Bilbrough is not charged with firearms offenses and apparently did not participate in the plans relating to the Virginia event, his criminal activity facilitated the potentially violent plans of Lemley and Mathews by helping to transport Mathews, a fellow member of the Base, into the United States and back from a Base training camp in Georgia, which led to the construction of the assault rifle of which Bilbrough was aware.

### B. Weight of the Evidence

There is no dispute that the weight of the evidence on the charged offenses, which includes wiretapped conversations and cell phone text messages, is strong, including as to Bilbrough's knowledge that Mathews was an alien unlawfully present in the United States.

### C. History and Characteristics

Bilbrough is a 19-year-old man from Denton, Maryland, with lifelong ties to that community, who at the time of the offense was a college student and working as a pizza delivery man. He has no prior criminal record. However, the Government has offered extensive evidence not only of his membership in the Base, which included firing a weapon in a propaganda video and acquiring masks to conceal his identity, but of statements by others describing him as someone who had "standing" in the organization. Bilbrough described himself as a "leader" in the group. Bilbrough also expressed a desire to commit acts of violence against others, including potentially harming someone involved in an interracial relationship with a relative. As of October 27, 2019, Bilbrough had on his cell phone a photograph of the Robert Bowers, the perpetrator of the 2018 mass murder at the Tree of Life synagogue in Pittsburgh, Pennsylvania, with the caption "hero." Opp'n Ex. B at 9, ECF No. 83-2. Text messages on Bilbrough's cell phone from November 2019 reveal that he made statements that he had access to heroin and cocaine, that he "just likes breaking the law," and had identified information "on how to make a new identity." Opp'n Ex. B at 6-8. Even though some of these facts are not directly related to the charged offenses, the Court may consider them. *See* 18 U.S.C. § 3142(g)(3) (requiring consideration of "the history and characteristics" of the defendant, including "the person's . . . past conduct"); *United States v. Stone*, 608 F.3d 939, 953 (6th Cir. 2010); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991).

Although Bilbrough began to disassociate himself from the Base in December 2019, the parties disagree on the reasons for that decision. Nevertheless, Bilbrough continued to associate with individual members, including Lemley and Mathews, and was involved with the manufacture of illegal drugs with them in December 2019. He also expressed in an interest in traveling to Ukraine to fight with nationalists there and sought to recruit others to join him. Even after his grandmother hid his passport to prevent him from doing so, he obtained another passport application and filled it out. When he was arrested, several firearms were recovered from his residence.

**D. Nature and Seriousness of the Danger**

The multiple statements by Bilbrough expressing an interest and willingness to break the law and commit acts of violence, either in furtherance of or consistent with the ideology of the Base, illustrate that he presents a serious risk to the safety of the community. Although Bilbrough's adoption of certain ideological beliefs is protected activity, his significant role in an organization that has professed support for the use of violence to meet its goals, his engagement in military style training as part of that organization, and the evidence reflecting admiration for the perpetrator of a heinous mass murder are relevant to support the inference that he has an interest in engaging in violent acts as generally espoused by the Base and as specifically conducted by the Bowers, particularly there is concurrent evidence that he has the means to engage in acts of violence, based on his training in and access to firearms. Even without participating in the specific planning of his co-defendants to commit acts of violence at the Virginia event, Bilbrough's standing in the Base community and his close association with individual members even after he withdrew from formal involvement show that he has the potential to access the tools and associates to engage in violence

7

going forward. The Court therefore concludes that he presents a danger to the community if released.

### E. Risk of Flight

Consistent with the Magistrate Judge's findings, the Court concludes that Bilbrough presents a serious risk of flight based on his stated to desire to travel to Ukraine to fight with nationalists, the depth of which is demonstrated by the fact that when his grandmother hid his passport to prevent him from doing so, he began to fill out another passport application. He also stated in a text message that he had found instructions on how to make a new identity. Most importantly, as noted by the Magistrate Judge, Bilbrough's criminal conduct in this case effectively consisted of assisting another individual in evading the detection of authorities when he directly participated in aiding Mathews, who had clandestinely entered the United States, travel undetected through several states to participate in Base activities leading up to Mathews's plan to engage in a violent attack on January 20, 2020. This activity demonstrates that Bilbrough has access to a network of individuals who could assist him in fleeing, evading detection, and reconnecting him with the types of activities in which he had previously engaged.

## II. Conditions of Release

The Court also agrees with the Magistrate Judge's conclusions that (1) by clear and convincing evidence, conditions of release cannot assure the safety of the community, and (2) by a preponderance of the evidence, conditions cannot assure his appearance at trial. 18 U.S.C. § 3142(e). In particular, the Court agrees that the proposed third-party custodian, Bilbrough's grandmother, is not an appropriate custodian because the offenses and activities he engaged in occurred while he was residing with her, and although she was specifically aware of Bilbrough's white supremacist views and association with neo-Nazi individuals, she was unable to prevent him

from traveling to assist Mathews with his illegal entry into the United States and to Base training camps at which he engaged in exercises involving the use of violence. In conversations with Bilbrough's incarcerated father, she acknowledged that any efforts she undertook to stop Bilbrough from engaging in certain activities would have the opposite effect. Thus, the concern is not that she had specific knowledge of criminal activity that she did not report. Rather, it is that she has a demonstrated lack of ability to cause Bilbrough to comply with her instructions. Accordingly, even with the proposed security of her home and cash, where Bilbrough ignored her prior efforts to prevent him from engaging in dangerous activity, the Court finds by a preponderance of the evidence that the proposed conditions of release will not reasonably assure the defendant's appearance as required, and by clear and convincing evidence that they will not reasonably assure the safety of the community.

### III. Coronavirus

Finally, the Court finds that the ongoing coronavirus pandemic does not provide a sufficient basis to alter these conclusions. The Court takes very seriously the potential risk to Bilbrough at the Correctional Treatment Facility ("CTF") in Washington, D.C. where he is currently detained, particularly in light of the fact that multiple detainees there have tested positive for the coronavirus. Although Bilbrough's young age makes him statistically less vulnerable to the virus, his diagnosed diabetes makes him more vulnerable and is thus a relevant factor for consideration as part of his "physical and mental condition," which is part of his history and characteristics. 18 U.S.C. § 3142(g)(3). The Court also rejects the Government's argument that the Court should consider the potential burden on U.S. Probation and Pretrial Services from having multiple detainees released because of the coronavirus. Although Probation's resources may factor into the manner in which conditions of release would be monitored, detention decisions must be

9

individualized and should not be swayed by the concern that release of one detainee may cause others to seek the same relief.

While the health risk to Bilbrough weighs in favor of release, it is not dispositive. As outlined by the Government, CTF officials have taken various preventative measures, including quarantining the detainees with the coronavirus, to reduce the risk to Bilbrough and others. To the extent that these measures need to be improved, or that CTF needs to provide detainees with high-risk health conditions certain accommodations to mitigate the risk to them, CTF must do so. Likewise, although attorney-client communications may be more challenging under the present circumstances, the Court will take necessary steps, between now and trial, to facilitate defense counsel's ability to have sufficient opportunities to meet with Bilbrough, in person or electronically, in order to review discovery, provide legal advice, and prepare for trial. But where the other factors add up to the conclusion that Bilbrough should be detained pending trial, the ongoing pandemic does not provide a sufficient basis to warrant his release on conditions that are insufficient to address the risk of flight and the potential danger to the community. If Bilbrough's health and safety are not being satisfactorily protected at CTF, the solution in his case is to address the conditions of detention, not to release him.

Accordingly, it is hereby ORDERED that:

1. The Government's Motion for Leave to File a Surreply, ECF No. 88, is GRANTED.

2. Bilbrough's Appeal from the Denial of the Defendant's Motion to Vacate Detention Order, ECF No. 77, is DENIED.

3. The Magistrate Judge's detention order is AFFIRMED.

Date: April 7, 2020

      /s/ *Theodore D. Chuang*
      THEODORE D. CHUANG
      United States District Judge