**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. TDC-20-33** |
| | * | |
| **WILLIAM GARFIELD BILBROUGH IV,** | * | |
| | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | ****** | |

### SURREPLY TO MOTION FOR REVIEW OF DETENTION ORDER

Though the defendant's reply contains many pages and exhibits, most of the scattershot arguments contained therein are merely recycled or enhanced versions of ones already made. The reply makes certain new arguments, though, which the Government addresses below.

## I.      The Defendant's Reply Misstates Certain Facts.

The defendant claims that "[w]hen his residence was searched, no firearms or contraband was found." This is simply not true. FBI agents recovered four firearms—two .22 rifles, one 12 gauge shotgun, and a 20 gauge shotgun—along with various forms of ammunition. *See* **Exhibit C** (Property Receipt). The defendant admitted that the two shotguns were his.

The defendant also claims that he should not even have been subject to a detention hearing under 18 U.S.C. § 3142(f) because "Judge Sullivan did not find that Bilbrough was a 'serious risk' of flight." This misstates the facts and the law. During the defendant's initial appearance—which was held before Magistrate Judge Day, not Magistrate Judge Sullivan—Magistrate Judge Day found that the defendant presented a "serious risk of flight" under § 3142(f) sufficient to trigger a detention hearing. The defendant then was temporarily detained pending the detention hearing. Case No. 20-mj-194-CBD, ECF No. 8. Magistrate Judge Sullivan then conducted the detention

hearing and clearly found, by the requisite preponderance of evidence standard, that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.   (Magistrate Judge Sullivan also found, by clear and convincing evidence, that the defendant should be detained on dangerousness grounds.)  Magistrate Judge Sullivan said this on the open record, memorialized it in the written detention order, ECF No. 14 at 2, and later wrote an opinion on the issue, ECF No. 76 at 5-6.  The defendant's suggestion to the contrary is inaccurate.

II.        **When a Detention Hearing Is Appropriate, the Court Can Detain For Flight Risk And Community Danger.**

For the first time, the defendant argues that he cannot be detained as a danger to the community because the charged crimes are not identified in 18 U.S.C. § 3142(f)(1).  ECF No. 86 at 8.  In support, the defendant cites a Third Circuit case from 1986, *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986).  That case, and the defendant's argument, ignores the plain language of the statute and the historical practice in the District of Maryland.

Using the word "shall," § 3142(f)(2)(A) requires the court to "hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required **and** the safety of any other person and the community upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves a serious risk that such person will flee." (emphasis added) That is, when the court finds—as Magistrate Judge Day did—that a case involves a serious risk that such person will flee, the court must hold a detention hearing on both the flight risk and the community danger prongs.  The statutory language is plain and direct; there is no ambiguity.  If a defendant represents a serious flight risk, the door is opened to a detention hearing.  At the hearing, the Court can detain on grounds of either non-appearance or danger.

The defendant reads out the mandatory ("shall") and compound ("and") nature of the statute, thus violating basic principles of statutory construction.  The defendant's reading also makes no sense when considering another subsection of the same statute, § 3142(f)(2)(B), which requires a detention hearing in a case that involves "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."  Under the defendant's reading, if a case involves a serious risk that the defendant will injure a witness, the same defendant only could be detained if he presented a flight risk and not because he was dangerous.  Thus, the defendant's reading of the statute violates the plain statutory text and would lead to perverse results.

### III.        The Court Should Consider Uncharged Conduct.

The defendant argues that "[t]he government unfairly and inaccurately attributes to Bilbrough conduct as to which he has not been charged." ECF No. 86 at 10.  The defendant would have this Court ignore § 3142(g)(1), which requires the Court to consider not just the charged statutes but "the nature and circumstances of the offense charged."  In considering whether the defendant is a danger to the community under 18 U.S.C. § 3142(e), there is no requirement that the evidence of dangerousness even relate to the charged conduct.  Indeed, courts routinely hold that uncharged conduct can and should be considered at detention hearings. *See United States v. Stone*, 608 F.3d 939, 953 (6th Cir. 2010) (considering "evidence of dangerousness although it does not relate to the offenses charged" and vacating district court's release order); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) (vacating district court's release order and stating, regarding the relationship between evidence of dangerousness and the charged conduct, "We have never required such a nexus, nor do we impose such a requirement today."); *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990) (considering uncharged conduct and detaining

defendant on dangerousness grounds); *United States v. Lee*, 206 F. Supp. 3d 103, 131 (D.D.C. 2016) ("While the D.C. Circuit does not appear to have addressed the issue, other courts have found that a court may consider a variety of sources of evidence of the defendant's danger to the community, separate and apart from evidence relating to the crime charged.").

**IV.       The First Amendment Does Not Give The Defendant Safe Harbor.**

As a subsidiary argument to the one above, the defendant argues for the first time that the Court cannot consider otherwise-protected First Amendment speech when considering the "nature and circumstances of the offense" under § 3142(g)(1). This simply is not the law. *See, e.g.*, *United States v. Reiner*, 468 F. Supp. 2d 393, 399 (E.D.N.Y. 2006) ("Even if that [website] evidence is not charged as a crime or constitutes protected speech under the First Amendment, it still may be considered by the Court on the issue of dangerousness as it relates to the crime charged . . . ."). *Cf. United States v. Hassan*, 742, F.3d 104 (4th Cir. 2014) ("Furthermore, it was entirely consistent with the First Amendment to make 'evidentiary use of [the appellants'] speech to establish the elements of [their] crime[s] or to prove motive or intent.'" (citation omitted)). Indeed, during a telephonic detention hearing for co-defendant Lemley on March 31, 2020, in which Lemley was detained, Magistrate Judge Boardman repeatedly stated that certain of Lemley's speech, while not itself illegal, provided context for the crimes and the § 3142 analysis.

Similarly, the defendant argues that the Court should not consider his ritual sacrifice of a goat in Georgia. The defendant again is wrong. While at a Base training camp in Georgia, the defendant led a group of older men to the property of a neighbor, where they stole a goat and brought it back to the Base property. After failing to kill the goat with a blade, the defendant shot the goat with a pistol, killing it while others watched. This conduct shows two things: first, the

defendant is a leader and not a follower, even when surrounded by dangerous older men; and second, the defendant has no regard for the property rights of others.

In sum, Magistrate Judge Sullivan was entitled to, and did, consider the context of the defendant's crimes, just as this Court should on *de novo* review.

**V.      The Defendant's Claims Regarding Contact with Counsel Do Not Merit Release.**

Again for the first time, the defendant raises the specter that continuing his detention will unconstitutionally and adversely affect his access to counsel.  ECF No. 86 at 7.  The defendant does not claim that he would interact with his counsel in person if released; indeed, the defendant expressly says he will not.  *Id.*  Rather, according to the defendant, he and his counsel could speak over the telephone or through video conferencing more frequently than would be permitted by the detention facility.  *Id.*  This argument carries little weight.  The defendant can have calls with his counsel already from inside the detention facility.[1]

The volume and type of discovery in this case does not change the analysis.  No trial date has been set in this case.  Moreover, if the defendant needs more time to review certain discovery with his attorney, the Court can accommodate exclusions of time pursuant to 18 U.S.C. § 3161.

More broadly, courts have regularly held that "the reasonable restrictions imposed by the circumstances of [a defendant's] custody do not 'impede his ability to prepare for trial or personally assist his counsel in such preparation.'"  *United States v. Stanford*, 394 F. App'x 73, 76 (5th Cir. 2010) (rejecting a claim for release based upon how pretrial detention affects a defendant's ability to participate in his own defense, "particularly in light of the other factors

---

[1] DOC has acknowledged that there will be delays in processing legal calls, due to the increase in legal call requests, but has noted that diligent efforts are being made to accommodate all requests under the circumstances.  And as of March 25, 2020, DOC also noted that in-person legal visits are still allowed and the most frequently-used option, which includes visits from attorneys and their teams (caseworkers, paralegals, and investigators).

supporting his continued detention"). *See also, e.g.*, *United States v. Dettelis*, 372 F. App'x 105, 106 (2d Cir. 2010) (finding a defendant's claims that his Fifth and Sixth Amendment rights were violated by pretrial detention "without merit," with the observation that "[a]lthough pretrial detention . . . undoubtedly makes communication with counsel and preparation for trial more cumbersome, without more, those consequences do not result in an interference of constitutional significance"). Indeed, access to counsel is not a factor under 18 U.S.C. § 3142. Accordingly, although certain restrictions *could* be unreasonable, *Dettelis*, 372 F. App'x at 106-07, there is no basis to find such an issue here.[2]

## VI.     The Fraternal Order of Police Press Release Is Not Dispositive.

The defendant appends to his reply a press release issued by the law firm representing the Fraternal Order of Police ("FOP") in Washington, D.C. In the press release, the FOP makes allegations that dispute some portions of the information provided by DOC regarding safety measures implemented at CTF. However, according to the USMS, which visited one of the DOC's facilities on March 30, 2020, certain of the FOP's descriptions of facility operations are not consistent with USMS's observations. The USMS reported to the Government and Chief Judge Bredar that the guards were wearing gloves and masks and that there were hand sanitizer dispensers mounted and being used throughout the facility. According to the USMS, the facility is also conducting medical evaluation of all employees and visitors prior to entering the facility.

---

[2] Governor Hogan's "stay at home" order and other circumstances would surely, and rightly, limit defendants' access to in-person meetings and other conferences with counsel even when not in pretrial detention. Thus, viewing of discovery documents will be difficult whether or not a defendant is detained. *See, e.g.*, *United States v. Cox*, 2020 WL 1491180, at *5 (D. Nev. Mar. 27, 2020) (noting, in denying a request for temporary release, that "this Court understands and is sympathetic to the considerations that may lead counsel to not visit Mr. Cox at [the detention center]. But to the extent these considerations exist while Mr. Cox is detained, they will also exist if he is released. In other words, it would be equally unwise to visit Mr. Cox outside of jail during the COVID-19 pandemic . . . .").

The Government and the USMS continue to seek information from the DOC regarding the allegations in the FOP press release.  But for now, the FOP press release should be taken only as that—a press release containing unproven allegations that are at least inconsistent with certain first-hand, recent observations by the USMS.  *See United States v. Gibson-Bey*, RDB-19-563 (D. Md.), ECF No. 26 (Order by Magistrate Judge Coulson) (balancing FOP press release with other conflicting information, including USMS information, and denying release).

**VII.      The Government Agrees That Decisions in Other Cases Are Relevant.**

Since the Government filed its opposition, additional courts in this District have denied release motions premised on COVID-19, including ones involving defendants with health issues. For example, Judge Hazel denied release for a defendant who "states that he had open heart surgery as a child, requires regular EKGs, and continues to experience a diminished immune system, heart flutters, and shortness of breath."  *United States v. Gray*, GJH-19-407, ECF No. 120 (Order by Judge Hazel).  And Magistrate Judge Copperthite denied release for a defendant ***who actually contracted COVID-19 at CTF.***  *See United States v. West*, ELH-19-364 (D. Md.), ECF No. 23 (Order by Magistrate Judge Copperthite).

**VIII.     The Court Should Not Consider the Information in the Defendant's Sealed Submission.**

In a sealed filing, the defendant advances an additional argument.  The same argument was considered and rejected by Magistrate Judge Sullivan in the second detention hearing on March 4, 2020, the audio of which is available to the Court.

## **Conclusion**

For the foregoing reasons, the Court should order the defendant to be detained pending trial.

Respectfully submitted,

Robert K. Hur
United States Attorney

/s/
Thomas P. Windom
Assistant United States Attorney

# EXHIBIT C

FD-597 (Rev. 4-13-2015)                                                      Page __1__ of __2__

## UNITED STATES DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property

Case ID: _____

On (date) January 16, 2020      item (s) listed below were:
☒ Collected/Seized
☐ Received From
☐ Returned To
☐ Released To

(Name) _____

(Street Address) _____

(City) Denton MD _____

Description of Item (s):

3. 20 ga. slugs-Federal 5 in box, 5 loose

5. Magazine filled with rounds
6. Box of Remington 12 ga. shells-5 boxes
7. Ruger .22 Rifle S/N 250-01672
8. Bolt-Action .22 Rifle S/N 409896

13. Winchester model 1300 12 ga. S/N L2805436
14. Binelli camo 20 ga. shotgun S/N BA056687B
15. Remington 20 ga. shotgun shells (2)
16. Boxes (3) Winchester 12 ga. shotgun shells

Received By: _____      Received From: _____
                    (Signature)                                        (Signature)

Printed Name/Title: _____        Printed Name/Title: _____

                                             COPY LEFT ON TABLE

FD-597 (Rev. 4-13-2015)                                                    Page __2__ of __2__

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property

Case ID: ████████████████████

On (date) January 16, 2020          item (s) listed below were:
                                     [X] Collected/Seized
                                     [ ] Received From
                                     [ ] Returned To
                                     [ ] Released To

(Name) _____

(Street Address) _____

(City) Denton, MD ████████

Description of Item (s): ████████████████████

████████████████████

25. Remington box of 20 ga. shells

████████████████████

31. 3.223 Remington Rounds

nothing follows

Received By: ████████████          Received From: _____
            (Signature)                          (Signature)

Printed Name/Title: ████████████    Printed Name/Title: _____

                                     COPY LEFT ON TABLE