

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Southern Division*

| | | | |
|---|---|---|---|
| *Thomas P. Windom*<br>*Chief, Southern Division*<br>*thomas.windom@usdoj.gov* | *Mailing Address:*<br>*6500 Cherrywood Lane, Suite 200*<br>*Greenbelt, MD 20770-1249* | *Office Location:*<br>*6406 Ivy Lane, 8th Floor*<br>*Greenbelt, MD 20770-1249* | *DIRECT: 301-344-0197*<br>*MAIN: 301-344-4433*<br>*FAX: 301-344-4516* |

HEE

September 29, 2020

Robert C. Bonsib, Esq.
MarcusBonsib, LLC
6411 Ivy Lane, #116
Greenbelt, Maryland 20770

\_\_\_\_ FILED   \_\_\_\_ ENTERED
\_\_\_\_ LOGGED   \_\_\_\_ RECEIVED

5:21 pm, Dec 08 2020
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY \_\_\_dds_____Deputy

Re:   United States v. William Garfield Bilbrough IV,
       Criminal No. TDC-20-33

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, William Garfield Bilbrough IV (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. **This plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** If this offer has not been accepted by **5:00 p.m. on October 6, 2020**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1.   The Defendant agrees to plead guilty to Count One and Count Two of the Indictment, which charge the Defendant, in Count One, with conspiracy to transport certain aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), and, in Count Two, with transporting certain aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) & (a)(1)(A)(v)(II). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

2.   The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland—

Count One (conspiracy to transport certain aliens): (1) the Defendant and one or more persons entered into the unlawful agreement charged in the Indictment, that is, an agreement to transport certain aliens; and (2) the Defendant knowingly and willfully became a member of that conspiracy.

Rev. August 2018

Count Two (transporting certain aliens): (1) an alien was in the United States in violation of the law; (2) the Defendant knew, or recklessly disregarded the fact, that the person was an alien who had come to, entered, or remained in the United States in violation of the law; (3) the Defendant transported, or aided and abetted the transportation of, the alien within the United States; (4) the Defendant acted willfully in furtherance of the alien's violation of law.

Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 8 U.S.C. § 1324 (a)(1)(A)(v)(I) | N/A | 10 years | 3 years | $250,000 | $100 |
| 2 | 8 U.S.C. § 1324 (a)(1)(A)(ii) & (a)(1)(A)(v)(II) | N/A | 5 years | 3 years | $250,000 | $100 |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant

Rev. August 2018

2

exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts

of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        g.    If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.    This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

### Count One

        a.    This Office and the Defendant further agree that the applicable base offense level is **12**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2L1.1(a)(3).

        b.    A **3**-level reduction applies, pursuant to U.S.S.G. § 2L1.1(b)(1), because the offense was committed other than for profit.

        c.    The offense level is increased to **18**, pursuant to U.S.S.G. § 2L1.1(b)(5)(C), because a dangerous weapon (including a firearm) was possessed.

Count Two

  d. The applicable base offense level is **12**, pursuant to U.S.S.G. § 2L1.1(a)(3).

  e. A **3**-level reduction applies, pursuant to U.S.S.G. § 2L1.1(b)(1), because the offense was committed other than for profit.

  f. The offense level is increased to **18**, pursuant to U.S.S.G. § 2L1.1(b)(5)(C), because a dangerous weapon (including a firearm) was possessed.

Grouping

  g. Counts One and Two group, pursuant to U.S.S.G. § 3D1.1 and 3D1.2(d).

  h. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

  i. This Office and the Defendant further agree that an **upward departure** applies, pursuant to U.S.S.G. § 2L1.1, application note 7, because the Defendant smuggled, transported, or harbored an alien knowing that the alien intended to enter the United States to engage in subversive activity or other serious criminal behavior.

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11 (c) (1) (C) Plea

9. The parties stipulate and agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the imposition of a total term of imprisonment of **60 months** as to Count One and Count Two is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a).

10. This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Obligations of the Parties

11. At the time of sentencing, this Office and the Defendant will recommend that the Court impose a term of imprisonment of **60 months** as to both Count One and Count Two, to run concurrent to each other. This Office and the Defendant reserve the right to advocate for a reasonable period of supervised release and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b. If the Court imposes the agreed-upon term of imprisonment, the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised

release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

<u>Section 3582 Waiver</u>

    13. The Defendant waives the right to seek any sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for which the basis relies on COVID-19 in any way, including arguing that certain underlying medical conditions increase the Defendant's risk of severe illness from COVID-19.

<u>Forfeiture</u>

    14. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

    15. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

    16. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. This Office agrees to seek the Attorney General's approval to apply forfeited assets to the Defendant's Restitution Order.

    17. The Defendant agrees to assist fully in the forfeiture of the property described above. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

    18. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable,

statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

19. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Entire Agreement

21. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

_____
Thomas P. Windom
Thomas M. Sullivan
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/27/20
Date

_____
William Garfield Bilbrough IV

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

11/3/2020
Date

_____
Robert C. Bonsib, Esq.

Rev. August 2018

9

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant, **WILLIAM GARFIELD BILBROUGH IV ("BILBROUGH")**, was a member of a white supremacist organization called "THE BASE." Co-defendants **Brian Mark Lemley ("Lemley")** and **Patrik Jordan Mathews ("Mathews")** also were members of The Base.

### The Base

Within The Base's encrypted chat rooms, members typically discussed, among other things, recruitment, creating a white ethno-state, committing acts of violence against minority communities (including African-Americans and Jewish-Americans), the organization's military-style training camps, and ways to make improvised explosive devices.

Since 2018, The Base has been building a coalition of white supremacist members within the United States and abroad through, among other things, online chat rooms, in-person meetings, propaganda, and military training. The Base's membership includes members of other white supremacist organizations, including Atomwaffen Division, a violent neo-Nazi terror group linked to several hate crimes. The Base recruits white supremacists and is particularly interested in applicants with military and explosives backgrounds. The Base recruits through its online presence, among other means. Applicants submit an application form, which includes questions regarding the applicant's current associations with white supremacist organizations; the applicant's military, science, and engineering experiences and training; and the applicant's race and gender. Applicants are then vetted. Once admitted into the organization, Base members are afforded access to a secure messaging group.

### The August 2019 Base Training Camps

Members of The Base conducted a regional training camp in Georgia from August 2 through August 4, 2019. **BILBROUGH** traveled with **Lemley** in **Lemley**'s vehicle to attend the training camp, and while there participated in tactical training and firearm drills.

Later in August 2019, **Lemley** and **BILBROUGH** attended another Base training camp in a different state. The photographs below were taken at that separate training camp. In the first photograph, **Lemley** is standing second from the left while holding a long gun straight in the air, and **BILBROUGH** is kneeling in the center under The Base flag while holding a blade. In the second photograph, **BILBROUGH** is standing second from the left while firing a long gun.





### Mathews's Arrival in the United States

On August 19, 2019, the Winnipeg (Canada) Free Press published an article regarding one of its reporter's infiltration of The Base. While acting in an undercover capacity on behalf of the Winnipeg Free Press, the reporter was telephonically interviewed by leadership of The Base to become a member. Upon completion of the telephone interview, leadership of The Base arranged an in-person meeting with **Mathews**, a local member of The Base residing in the area of Winnipeg, Canada. The reporting led to the identification of Mathews as the member of The Base the reporter had met in person. Thereafter, **Mathews** fled Canada and illegally entered the United States. At some point thereafter, **Lemley** and **BILBROUGH** learned that **Mathews** had unlawfully crossed the border.

On or about August 30, 2019, **Lemley** and **BILBROUGH** traveled in **Lemley**'s truck from Maryland to southern Michigan (roughly 600 miles, just off the Indiana toll road) in order to pick up **Mathews**. At least as of a certain time when **Lemley** and **BILBROUGH** were en route to pick up Mathews, **BILBROUGH** understood that Mathews was a fellow member of The Base, that **Mathews** had entered the United States unlawfully, and that **Lemley** and **BILBROUGH** were driving to pick up **Mathews** in order to transport **Mathews** to the East Coast, where **Mathews** could safely reside in the United States and continue his participation in The Base. **Lemley** and **BILBROUGH** remained in the Michigan area for approximately two hours, after which all three headed back east. **BILBROUGH** drove **Mathews** and **Lemley** during at least part of the return trip to Maryland.

**BILBROUGH** was dropped off at his house in Maryland on the evening of August 31, 2019. He brought with him a few souvenirs, including a flag for The Base and a book widely circulated in white nationalist circles.

### The October/November Training Camp in Georgia

On or about October 30, 2019, **Lemley** picked up **BILBROUGH** at **BILBROUGH**'s residence in Maryland and drove south to Georgia to attend a training camp at the property of another member of The Base. **Mathews**, who already was residing at the Georgia property, also attended the training camp. While in Georgia, on or about November 2, 2019, **Lemley** and **BILBROUGH** purchased approximately 1,550 rounds of 5.56 ammunition for $558.54. Late in the evening on November 2, 2019, **Lemley**, **Mathews**, and **BILBROUGH** traveled from Georgia to Maryland. **BILBROUGH** drove **Lemley**'s truck for at least part of that trip, including from Virginia, on the Maryland side of the Capital Beltway, and over the Chesapeake Bay Bridge.

### The Delaware Residence

As of November 2019, **Lemley** and **Mathews** lived at a residence in Delaware. **BILBROUGH** visited the Delaware residence on at least one occasion. On December 21, 2019, **BILBROUGH** arrived at the Delaware residence. **Mathews** passed **BILBROUGH** an assault rifle that **Mathews** had constructed with **Lemley**'s assistance and encouragement. **Lemley**, **Mathews**, and **BILBROUGH** discussed an upcoming rally in Virginia that at least **Lemley** and **Mathews** expected to attend, and **Lemley** stated, "don't wear any Base patches down in Virginia,

we're supposed to be clandestine." Furthermore, **Lemley, Mathews,** and **BILBROUGH** discussed activities of The Base and spoke about other members within the organization. Then, throughout the evening and into the early morning hours of December 22, 2019, **Lemley, Mathews,** and **BILBROUGH** discussed the manufacture of DMT (dimethyltryptamine), a Schedule 1 Controlled Substance, and attempted to actually manufacture DMT. **BILBROUGH** stated that he may try to sell DMT to the people to whom he delivers pizza, and **Mathews** stated that he had co-workers to whom he may be able to sell DMT. **BILBROUGH** also stated that he knows DMT is illegal and it is a felony to have DMT.

### Upward Departure

At all times relevant, **BILBROUGH** knew that **Mathews** had entered the United States to engage in subversive activity or other serious criminal behavior, and had never disavowed that purpose while **BILBROUGH** transported and otherwise interacted with **Mathews**.

SO STIPULATED:

_____
Thomas P. Windom
Thomas M. Sullivan
Assistant United States Attorneys

_____
William Garfield Bilbrough IV
Defendant

_____
Robert C. Bonsib, Esq.
Counsel for Defendant