IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION

UNITED STATES OF AMERICA, ) CRIMINAL
) NO. TDC-20-0033
Plaintiff, )
)
v. )
)
WILLIAM GARFIELD BILBROUGH, IV,)
)
Defendant. )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE THEODORE D. CHUANG
UNITED STATES DISTRICT JUDGE
TUESDAY, DECEMBER 8, 2020; 10:01 A.M.
GREENBELT, MARYLAND

FOR THE PLAINTIFF:

OFFICE OF THE UNITED STATES ATTORNEY
BY: THOMAS P. WINDOM, ESQUIRE
BY: THOMAS M. SULLIVAN, ESQUIRE
6406 Ivy Lane
Suite 800
Greenbelt, Maryland 20770
(301) 344-4433

FOR THE DEFENDANT:

MARCUS AND BONSIB
BY: ROBERT C. BONSIB, ESQUIRE
BY: MEGAN E. COLEMAN, ESQUIRE
6411 Ivy Lane
Suite 116
Greenbelt, Maryland 20770
(301) 441-3000

OFFICIAL COURT REPORTER:
Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227

***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

THE DEPUTY CLERK: May I have your attention, please. The United States District Court for the District of Maryland is now in session. The Honorable Theodore D. Chuang presiding.

The matter now pending before this Court is Criminal Docket TDC-20-033, the *United States of America vs. William Garfield Bilbrough, IV*. We are here for the purpose of a rearraignment and sentencing.

Counsel, please identify yourselves for the record.

MR. WINDOM: Good morning, Your Honor. Thomas Windom, Tom Sullivan for the United States. On the public line, Your Honor, is Special Assistant United States Attorney Adrienne Dedjinou. She has a competing hearing, so she will be dropping off early.

THE COURT: Good morning. I think defense counsel is still on mute.

MR. BONSIB: There we go. Robert Bonsib and Megan Coleman on behalf of William Bilbrough. And, Your Honor, just to start --

THE COURT: We are having trouble, Mr. Bonsib. If there is a way that Mr. Bilbrough can mute his line or his line can be muted until he is not speaking, it might be a good idea because I think there is a lot of noise at the jail he can't control.

Try again, Mr. Bonsib.

MR. BONSIB: Yes. Good morning. Robert Bonsib and

Megan Coleman on behalf of Mr. Bilbrough. And, Your Honor, at around 10:30, Ms. Coleman may have to take over the remainder of the proceeding if it's still going on because I have another Zoom court appearance, but I will be here until then if that's okay with the Court.

THE COURT: Okay. Just so long as it's okay with Mr. Bilbrough, I am okay with that.

So, I believe we are ready to proceed, then. We are here for a guilty plea, and I believe the defense has also requested a sentencing hearing in *United States vs. Bilbrough*.

First, for the record, we need to establish that we can proceed in this fashion, which is by video conference. The defendant is appearing by video from pretrial detention and his counsel are on a separate video line, but they have had, and, if necessary, can have the opportunity privately to confer during the course of today's proceedings.

The hearing is conducted under Section 15002(b)(2) of the CARES Act, which allows for a video guilty plea or sentencing proceeding with the consent of the defendant and the parties if any court proceeding would continue to impose an unreasonable risk to public health and safety and if the -- any further delay would cause harms to the interests of justice.

I find, first, based on the findings of the chief judge of this district, that there remains an unreasonable risk to public health and safety to conduct the hearing in person.

Because of COVID-19, the Court is currently closed to in-court proceedings due to the potential health risks.

I also find that further delay would cause serious harm to the interests of justice. Even though the defendant has been in pretrial custody throughout most of this year, and because of the issues with the pretrial detention during the course of the year, including a COVID-19 outbreak at the facility, the Court finds that further delay would cause serious harm to the interests of justice to not allow the defendant to now proceed to finalize this particular case.

And last, I need to confirm whether the defendant is consenting to today's proceedings.

Mr. Bonsib, have you had the opportunity to advise your client on this issue and to proceed by video?

MR. BONSIB: Yes, Your Honor. We have discussed the proceeding by video, and it's my understanding that Mr. Bilbrough consents to proceeding in that fashion.

Is that correct, Mr. Bilbrough?

THE DEFENDANT: I consent with everything, Your Honor.

THE COURT: Okay. And you have had the chance to discuss this with your attorneys before you agreed to consent?

THE DEFENDANT: Yes.

THE COURT: Thank you. So I will make the finding that the defendant has consented, so we will proceed with the

hearing by video. At least provisionally, having read the submissions, I am prepared to go to sentencing at the end of this.

I think we just have an issue with the connection to Mr. Bilbrough. I don't know what's going on there.

THE DEPUTY CLERK: Judge, just one moment. I don't believe that was Mr. Bilbrough.

MR. BONSIB: It wasn't.

THE DEPUTY CLERK: Your Honor, one moment. I am going to have to call I.T.

(Pause.)

THE DEPUTY CLERK: We are trying to reconnect with Mr. Bilbrough, Your Honor.

(Pause.)

THE DEPUTY CLERK: I.T. is still trying to reconnect, Your Honor.

(Pause.)

THE COURT: Is it just a technical issue or is he -- is there any issue from the jail side as to whether he is available?

THE DEPUTY CLERK: It's a technical issue at this point, Your Honor. We are just reestablishing connection with the jail.

(Pause.)

THE DEPUTY CLERK: Your Honor, Mr. Bilbrough is back.

THE COURT: Okay. So, Mr. Bilbrough, can you hear us now?

THE DEFENDANT: I can hear you.

THE COURT: Okay. So, as I understand it, Mr. Bilbrough is prepared to change his plea and plead guilty in this case.

Mr. Bilbrough, we are here today because, as I understand it, you are prepared to change your plea and plead guilty in this case. Now, pleading guilty to a federal crime is a serious step. It will mean that you have been convicted of a crime without taking advantage of your constitutional right to a trial by a jury.

So in order to accept your guilty plea, I must be satisfied that you are acting knowingly and voluntarily. To do that, I am going to ask you a series of questions with you under oath and will listen carefully to your responses, and if I am satisfied that you are acting knowingly and voluntarily, we will then have you enter the new plea.

So let's begin, then, by having the clerk administer an oath to you to tell the truth during today's proceedings.

THE DEPUTY CLERK: Mr. Bilbrough, would you please raise your right hand?

WILLIAM GARFIELD BILBROUGH, IV, DEFENDANT, SWORN

THE DEPUTY CLERK: Please lower your hand, sir. And please state your full name for the record.

THE DEFENDANT: William Garfiled Bilbrough, IV.

THE DEPUTY CLERK: Thank you.

THE COURT: Okay. So, Mr. Bilbrough, you -- do you understand that you are now under oath and you must answer all questions truthfully?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that if you answer any questions falsely, your answers could later be used against you in another prosecution for perjury or for making a false statement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Could you tell us how old you are?

THE DEFENDANT: I am 20.

THE COURT: And where were you born?

THE DEFENDANT: Maryland, Your Honor.

THE COURT: So you are a United States citizen; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And how far did you go in school?

THE DEFENDANT: I'm sorry?

THE COURT: How far did you go in school? What's your highest level of education?

THE DEFENDANT: I was going to -- sorry. I was going to DelTech Community College in Georgetown, Delaware.

THE COURT: So you finished -- you graduated from

high school and you have started some college at the community college in Delaware?

THE DEFENDANT: That's right, Your Honor.

THE COURT: And have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: No.

THE COURT: Are you, today, under the influence of any drugs, medication, or alcoholic beverages?

THE DEFENDANT: No.

THE COURT: Is there any reason that you would not be able to understand today's proceedings or to make decisions about your future today?

THE DEFENDANT: No. No, Your Honor.

THE COURT: If you do not understand a question I ask or don't hear a question I ask, will you let me know?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, you are here with your attorneys, Mr. Bonsib and Ms. Coleman.

Are you fully satisfied with their advice, representation, and counsel in this case?

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: And if, at any time today, you wish to consult with your attorneys, please let me know, and I will give you that opportunity.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you received a copy of the indictment against you, that is, the written charges made against you in this case?

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: And you were charged in Count One with conspiracy to transport certain aliens in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I), in Counts Two through Four with transporting certain aliens in violation of 8, U.S.C., 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II), in Count Three with conspiracy to transport and harbor certain aliens in violation of 8, U.S.C., Section 1324(a)(1)(A)(v)(I), and in Count Five with harboring certain aliens in violation of 8, U.S.C., Section 1324(a)(1)(A)(iii) and (a)(1)(A)(v)(II).

I understand you intend to plead guilty to Counts One and Two only; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, have you fully discussed these charges and the case in general with your attorneys?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand the charges against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: To make sure you understand the charges to which you intend to plead guilty, let me go over a few of

the elements of these offenses. These are the things the government would have to prove in order to have you found guilty on these charges.

So, on Count One, conspiracy to transport certain aliens, the government would have to prove, first, that you and one or more persons entered into an unlawful agreement as charged in the indictment to transport certain aliens; and, second, that you knowingly and willfully became a member of that unlawful agreement or conspiracy.

Do you understand that those are the things the government would have to prove to have you found guilty on Count One?

THE DEFENDANT: Yes, Your Honor.

THE COURT: As for Count Two, transporting certain aliens, the government would have to prove, first, that an alien was in the United States in violation of the law; second, that you knew or recklessly disregarded the fact that the person was an alien who had come to enter or remain in the United States in violation of the law; third, that you transported or aided and abetted the transportation of the alien within the United States; and, fourth, that you acted willfully in furtherance of the alien's violation of the law.

Do you understand that those are the things the government would have to prove to have you found guilty on Count Two?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I also want to make sure you understand the potential penalties for pleading guilty to these offenses. I am going to ask the government to tell us what the maximum penalties are in Counts One and Two.

MR. WINDOM: Yes, Your Honor. For Count One, the conspiracy count, the maximum term of imprisonment is ten years. The maximum term of supervised release is three years. The maximum fine is $250,000. And there is a mandatory special assessment of $100.

For Count Two, the maximum term of imprisonment is five years. The maximum term of supervised release is three years. The maximum fine is $250,000. And there is a mandatory $100 special assessment.

THE COURT: Mr. Bilbrough, do you understand that those are the maximum penalties that could be imposed in this case?

THE DEFENDANT: I do, Your Honor.

THE COURT: And you heard some terms, and I just want to make sure you understand. First, you heard about supervised release. What that is is a period of time following any term of imprisonment during which you would be subject to conditions imposed by the Court, you would be required to follow them, and violation of any of those conditions could result in additional prison time.

Do you understand what supervised release is?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also heard about a special assessment. That is a legal requirement that anyone convicted of a federal crime must pay the Court $100 for each count of conviction. Here, if you plead guilty, you owe the Court $200.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So, as part of a sentence, under certain circumstances, the Court could order you to pay restitution, that is, to pay back any victims of the crimes for the amount of their losses.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also as part of a sentence, under certain circumstances, the Court could order you to forfeit property, that is, to give up ownership, possession, and control over certain property related in some ways to the offense.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now I'd like to go over with you some of the important rights you will be giving up by pleading guilty.

First, under our system of justice, even though you have been charged with a crime or crimes, you are innocent unless or until the government proves you are guilty. You are not

required to plead guilty and you have the right to plead not guilty and to continue to plead not guilty throughout this case. By pleading guilty today, you would be giving up that right.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, under our Constitution, when you are charged with a crime, you have the right to a trial by a jury. So if you did not plead guilty, you would have a panel of citizens from this part of Maryland come to the courthouse, and we would select 12 jurors to hear your case. You and your attorneys would have the right to participate in the jury selection process to ensure that the jurors selected are fair and impartial. And in order to find you guilty, this jury would have to return a unanimous verdict of guilt, meaning that all 12 of them would have to agree that you are guilty before you could be convicted.

Do you understand that you have the right to a jury trial on these terms?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, if you do not want to have a trial before a jury, you could instead have one before a judge only if you, the Court, and the government all agreed.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, at the trial, you are not required to prove anything. You are presumed innocent and you cannot be found guilty unless the government proves that you are guilty beyond a reasonable doubt. And I would instruct the jury that you are presumed innocent and that the government has this heavy burden of proving guilt beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And at trial, you would also have the right to be represented by counsel, by an attorney, as you are here today, and, as necessary, the Court would appoint counsel to represent you at trial and every other stage of the case, so you would be guaranteed to have an attorney during the trial.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also at trial, you would have other important rights. You would have the right to confront the witnesses against you, meaning they would all have to come into the courtroom, take the witness stand, and testify in your presence. You would have the right to have your attorneys cross-examine these witnesses, that is, to ask questions of them.

You would have the right to testify on your own behalf if you wanted to, and you also would have the right to present other evidence and witnesses. If there are any witnesses who

you think would help your case but who are unwilling to testify, the Court would issue subpoenas to require them to testify.

Do you understand that you have all of these additional rights related to a trial?

THE DEFENDANT: Yes, Your Honor.

MR. BONSIB: Your Honor, I'm sorry to interrupt. I am going to step out if it's okay? I will be in the next room if Mr. Bilbrough has any questions for me, but Ms. Coleman is going to take over.

THE COURT: Okay. I will leave it to Ms. Coleman to handle everything from here on out. Thank you very much, Mr. Bonsib.

Just to clarify, Mr. Bilbrough, do you have any concerns with proceeding with Ms. Coleman only?

THE DEFENDANT: No. I do want to speak to her for a minute, though.

THE COURT: Okay. Would that be now or at a later point?

THE DEFENDANT: Now.

THE COURT: So, Mr. Bonsib will depart.

Miss Solomon, is there a way to have Mr. Bilbrough and Ms. Coleman confer in a separate electronic room?

THE DEPUTY CLERK: Under normal circumstances, Your Honor, I would move them into a breakout room, but,

unfortunately, this account that I am using doesn't have that feature set up. I can move the rest of us into the waiting room and step away so that they can speak.

MR. BONSIB: What about the public line?

THE DEPUTY CLERK: I can put the public line into the waiting room also.

THE COURT: Okay. Will that work for everyone? Ms. Coleman, will that work for you?

MS. COLEMAN: Yes, Your Honor.

THE COURT: And just to clarify, Miss Solomon, you will let us know when they are done?

THE DEPUTY CLERK: I am going to be just stepping away from here, and just wave at me, please, Ms. Coleman.

MR. BONSIB: Either that or if there is a direct line to where Ms. Solomon is at?

THE DEPUTY CLERK: It is (301) 344-3109.

THE COURT: Okay. We will wait for the call to Miss Solomon. The rest of us will be in the waiting room. Correct, Ms. Solomon?

THE DEPUTY CLERK: Yes, sir.

THE COURT: Thank you.

(Pause.)

THE COURT: Okay. Are we all set, Ms. Coleman?

MS. COLEMAN: Yes, we are.

THE COURT: Is the government back? I see they are

back. Okay. So we are continuing.

Mr. Bilbrough, I think the last thing I told you or asked you about was whether you understood that there are various rights regarding how a trial operates.

I also wanted to note for you, I said that you have the right to testify at your own trial. You also have the right, the absolute right not to testify or not to be forced to testify if you don't want to. You are not required to present evidence. I would instruct the jury that they cannot draw any negative inference, that is, they cannot hold it against you if you choose not to testify or if you choose not to present any evidence.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, if you are found guilty after a trial, you would still have the right to appeal to a higher court. You would have the right to appeal the verdict as well as the Court's decisions before and during the trial to see if any errors were committed that would require a new trial or dismissal of the charges.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: But by pleading guilty, there will be no trial, you will be found guilty today, and you will have waived or have given up your right to a trial as well as all the other

rights associated with a trial that I just described to you.

Do you understand that?

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: So if you plead guilty and are found guilty of these felonies, it could deprive you of valuable civil rights, such as the right to vote, the right to serve on a jury, and the right to possess a firearm.

Do you understand?

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: So, although I know you said you are a U.S. citizen, I need to tell you that if you are not or someone is not a U.S. citizen and pleads guilty to a federal offense, that conviction could affect that person's residency or status with the immigration authorities, including deportation or exclusion from the United States or prevent someone from becoming a U.S. citizen.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, I understand you have entered into a plea agreement in this case, and I have it here. It's dated, I think, September 29th, 2020.

You have signed it on pages 9 and 13; is that correct?

THE DEFENDANT: I don't have the plea, Your Honor.

THE COURT: Does Mr. Bilbrough have a copy of the plea agreement at this time, or not?

THE DEFENDANT: No.

THE COURT: You know which agreement I am discussing. Correct?

THE DEFENDANT: Right. I understand.

THE COURT: Ms. Coleman, have you and Mr. Bonsib conveyed all plea offers from the government to your client during the course of this case?

MS. COLEMAN: Yes.

THE COURT: I'm sorry. You are a little hard to hear.

MS. COLEMAN: Yes, Your Honor. I am confident that Mr. Bonsib conveyed the offer to Mr. Bilbrough, has gone over it with him.

THE COURT: Again, unfortunately, just for the record, we just need you to be closer to the microphone or something.

MS. COLEMAN: Yes, Your Honor. I apologize. I just asked her to assist me.

THE COURT: Yeah, of course.

MS. COLEMAN: Judge, can you hear me?

THE COURT: I can now. Go ahead.

MS. COLEMAN: Okay. Thank you. Yes. Is it better, the volume?

THE COURT: Yes.

MS. COLEMAN: So I am confident that Mr. Bonsib

reviewed the plea offer with Mr. Bilbrough. We have been able to --

THE COURT: I'm sorry. Again, so the problem is the background noise from the jail. The other issue is, again, just get it loud and as close to the microphone as you can, Ms. Coleman.

MS. COLEMAN: Thank you.

Your Honor, I am confident that Mr. Bilbrough and Mr. Bonsib have had multiple discussions of the plea offer. They were able to have communications set up and have reviewed the offer at length.

THE COURT: I also wanted to confirm, though, that you conveyed all plea offers to your client or Mr. Bonsib?

MS. COLEMAN: Yes. We have conveyed all plea offers made by the government, discussed them in detail with Mr. Bilbrough.

THE COURT: Thank you.

So, going back to Mr. Bilbrough, did you have an opportunity to read and review the plea agreement before you signed it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand the terms of the plea agreement?

THE DEFENDANT: (Witness nods.)

THE COURT: I wanted to go over some of those

provisions with you. First, as you may recall, the plea agreement has certain terms relating to the United States Sentencing Guidelines. The sentencing guidelines are established by the U.S. Sentencing Commission, under authority from Congress, and they provide for a recommended range for a sentencing based on the specific crimes of conviction, the specific factors relating to what -- the seriousness of those offenses as they were committed, and your criminal history.

Have you discussed the sentencing guidelines with your attorneys and how they may apply in this case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, I just want to have the prosecutor summarize the plea agreement terms as they relate to the guidelines calculations and any commitments by either side as they relate to a possible sentence, and then I am going to ask some questions about those.

MR. WINDOM: Thank you, Your Honor. Mr. Bilbrough, I may ask you to mute your device again, please? Thank you, sir.

Your Honor, the parties have agreed to a set of guidelines in this case. For Count One, the applicable base offense level is 12. Pursuant to Sentencing Guideline 2L1.1(a)(3), a three-level reduction applies pursuant to -- because the offense was committed other than for profit; however, the offense level is increased to 18 pursuant to Guideline 2L1.1(b)(5)(C) because a dangerous weapon, including

a firearm, was possessed.

The same guideline numbers apply for Count Five. The government does not oppose a two-level reduction based on acceptance of responsibility. The government is now moving for the third point of reduction for acceptance of responsibility as well pursuant to the plea agreement.

However, the parties also agree that an upward departure applies in this case pursuant to Application Note 7 of Guideline 2L1.1 because the defendant smuggled, transported, or harbored an alien knowing that the alien intended to enter the United States to engage in subversive activity or other serious criminal behavior.

Now, these are the guidelines, Your Honor, that the parties have agreed apply here. And, as Your Honor knows, the parties also have entered, by this agreement, into a "c" plea mandating a five-year term of imprisonment should the Court accept the plea.

THE COURT: Okay. First off, generally, Mr. Bilbrough, are you familiar with those terms?

THE DEFENDANT: I understand, Your Honor.

THE COURT: Let me just go over some parts of that with you.

First off, as you have heard, the prosecutor said the parties have agreed to certain numbers relating to the guidelines. When you add and subtract those numbers up, what

it leads to, the agreement of the parties, that, based on what we know now, the total offense level under the guidelines would be 15.

Now, if -- what these numbers mean is --

THE DEFENDANT: I'm sorry.

THE COURT: Can you just go on mute for a second because it's loud over there?

What Mr. Windom, the prosecutor, described, you add and subtract up to a 15, and that's the offense level the parties agreed to. Under the guidelines, there is a table that has all of these different events listed in it, and it also provides for a recommended sentence for various offense levels.

For Offense Level 15, the recommended sentence for anyone who is at Offense Level 15, there are different numbers depending on the person's criminal record. For someone with no or little criminal record, the recommended sentence for Offense Level 15 is 18 to 24 months imprisonment. All these numbers are in months.

If someone has a more significant criminal record, the numbers get higher, and for someone with the most significant level of criminal history, they would be in Category VI, which has a recommended sentence of 41 to 51 months for someone who is in Offense Level 15.

Do you understand that those are the types of sentences the guidelines would recommend based on the terms of the plea

agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And then, as you heard, in the plea agreement, you and the government have agreed that there would be an upward departure. Now, in general -- well, let me take a step back. In reaching the appropriate sentence, I am required to calculate the guideline range myself and consider it in reaching a sentence, but my obligation may not be the same as yours, so if I reach a different conclusion involving the offense level or conclude that the offense level is not a 15 but some other number, I may choose to find a different offense level.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, I am not required to give you a sentence in the guideline range. Under the guidelines, there are reasons I can depart from the guideline range and give you a sentence higher or lower than the guideline range.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And as I was mentioning and as Mr. Windom, the prosecutor, mentioned, in the plea agreement, you have agreed that the sentence should be actually different than the guideline range, and you agreed that it can be higher, that is called an upward departure, than the guideline range,

that the parties are recommending a joint recommended five-year sentence.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, besides the guidelines, I am also required, in reaching a sentence, to consider certain other factors contained in federal law. These include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, provide just punishment, to provide adequate deterrence to criminal conduct, to protect the public from further crimes, and to avoid unwarranted disparities among similar defendants.

Based on all of these and other factors, I could decide to impose a sentence above, below, or within the guideline range so long as it's at or below the maximum penalties we discussed earlier.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, in this case, as we heard, you and the government have agreed on an upward departure, that is a sentence above the guideline range, and you have also agreed to jointly recommend the sentence of 60 months or five years.

Under this type of plea agreement you have entered into, if I decide not to follow this recommendation, the 60-month or

five-year sentence, you would have the opportunity to withdraw the guilty plea and go to trial instead.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: But if you do not choose to withdraw your guilty plea at that point, you would then -- I would then sentence you, and if the sentence is different than you expected, you would not be allowed to withdraw your plea of guilty.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, also, if I decide to impose this 60-month or five-year sentence, you would not, at a later point, be allowed to withdraw your guilty plea.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: There is no parole in the federal criminal justice system, so if you were sentenced to prison, you would not be released on parole.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, I mentioned earlier that, generally, you can have, as part of a sentence, a term or a requirement to forfeit property. The plea agreement does contain certain provisions stating that the Court may enter a

order of forfeiture as part of this sentence and that you are giving up the right to challenge that.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, as I mentioned earlier, you generally have the right to appeal to a higher court, but under the terms of the plea agreement, you have waived or given up your right to appeal. First, you have given up your right to appeal the conviction, that is, my decision to accept your guilty plea.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, as part of the plea agreement, you have waived or given up your right to appeal the sentence imposed so long as I impose the recommended sentence by the parties of 60 months.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, the plea agreement contains a particular provision in paragraph 21 that says this is the full and complete agreement that you have with the government.

Is that true, that is the full and complete agreement with the government in this case?

THE DEFENDANT: Can you repeat that one more time?

THE COURT: The plea agreement has a paragraph that

states that this plea agreement is the full and complete agreement you have with the government and there are no other side agreements or other agreements.

Is that correct, this is the full agreement you have with the government?

THE DEFENDANT: Correct. Correct.

THE COURT: Has anyone made any promises or assurances to you other than what's contained in the plea agreement to get you to plead guilty in this case?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone threatened you or pressured you to get you to plead guilty in this case?

THE DEFENDANT: No.

THE COURT: Do you understand all of the possible consequences of a guilty plea that I have described to you today?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you -- are you pleading guilty out of your own free will?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, in order to accept your guilty plea, I will need to be satisfied that there is an independent basis in fact for the plea, that is, that you are actually guilty of these offenses, so I am going to ask the prosecutor to summarize the factual statement of the plea, that is the facts

the government would prove if the case were to go to trial. At the end of that, I will ask you, Mr. Bilbrough, whether you agree with this statement. It may make sense to push mute during that summary.

Mr. Windom, go ahead.

MR. WINDOM: Thank you, Your Honor.

Since Mr. Bilbrough does not have a copy of the Statement of Facts in front of him, I am going to be a little bit more complete than just summarizing it.

The parties have entered into a plea agreement that contains a Stipulation of Facts, Attachment A. The parties stipulate and agree that if the case had proceeded to trial, the office would have proven the following facts beyond a reasonable doubt:

The defendant, William Garfiled Bilbrough, IV, was a member of a white supremacist organization called "The Base." Codefendants Brian Mark Lemley and Patrik Jordan Mathews also were members of The Base.

There is a section describing The Base that's two paragraphs long.

Within The Base's encrypted chat rooms, members typically discussed, among other things, recruitment, creating a white ethno-state, committing acts of violence against minority communities, including African-Americans and Jewish-Americans, the organization's military-style training camps, and ways to

make improvised explosive devices.

Since 2018, The Base has been building a coalition of white supremacist members within the United States and abroad through, among other things, online chat rooms, in-person meetings, propaganda, and military training. The Base's membership includes members of other white supremacist organizations, including the Atomwaffen Division, a violent neo-Nazi terror group linked to several hate crimes. The Base recruits white supremacists and is particularly interested in applicants with military and explosives background. The Base recruits through its online presence, among other means. Applicants submit an application form, which includes questions regarding the applicant's current associations with white supremacist organizations; the applicant's military, science, and engineering experiences and training; and the applicant's race and gender. Applicants are then vetted. Once admitted into the organization, Base members are afforded access to a secure messaging group.

There is a section next on the August 2019 Base Training Camps.

Members of The Base conducted a regional training camp in Georgia from August 2nd through August 4th, 2019. Mr. Bilbrough travelled with Mr. Lemley in Mr. Lemley's vehicle to attend the training camp, and, while there, participated in tactical training and firearm drills.

Later in August 2019, Mr. Lemley and Mr. Bilbrough attended another Base training camp in a different state.

Following this paragraph are certain photographs taken of a separate training camp. Mr. Lemley, in one of the photographs, is standing while holding a long gun in the air. Mr. Bilbrough is kneeling in the center under a Base flag while holding a blade. In another photograph, Mr. Bilbrough is standing while firing a long gun.

On page 12, there is a discussion of Codefendant Mathews' arrival in the United States. On August 19th of 2019, the Winnipeg Free Press published an article regarding one of its reporter's infiltration of The Base. While acting in an undercover capacity on behalf of the newspaper, the reporter was telephonically interviewed by leadership of The Base to become a member. Upon completion of the interview, leadership of The Base arranged an in-person meeting with Mr. Mathews, a local member of The Base residing in the area of Winnipeg, Canada. The reporting led to the identification of Mr. Mathews as a member of The Base the reporter had met in person. Thereafter, Mr. Mathews fled Canada and illegally entered the United States. At some point thereafter, Mr. Lemley and Mr. Bilbrough learned that Mr. Mathews had unlawfully crossed the border.

Later that month, on or about August 30th of 2019, Mr. Lemley and Mr. Bilbrough travelled in Mr. Lemley's truck

from Maryland to southern Michigan, roughly 600 miles each direction, in order to pick up Mr. Mathews. At least as of a certain time when Mr. Lemley and Mr. Bilbrough were in route to pick up Mr. Mathews, Mr. Bilbrough understood that Mr. Mathews was a fellow member of The Base and Mr. Mathews had entered the United States unlawfully, and that Mr. Lemley and Mr. Bilbrough were driving to pick up Mr. Mathews in order to transport Mr. Mathews to the East Coast, where Mr. Mathews could safely reside in the United States and continue his participation in The Base. Mr. Lemley and Mr. Bilbrough remained in the Michigan area for approximately two hours, after which all three headed back East. Mr. Bilbrough drove Mr. Mathews and Mr. Lemley during at least part of the return trip to Maryland.

Mr. Bilbrough was dropped off at his house in Maryland the evening of August 31st, 2019, bringing with him a few souvenirs, including a flag for The Base and a book widely circulated in white nationalist circles.

There is a description of another training camp beginning in late October of 2019 where Mr. Lemley picked up Mr. Bilbrough at Mr. Bilbrough's residence in Maryland and drove south to Georgia to attend another training camp at another Base member's property. Mr. Mathews already was residing at the Georgia property and attended the training camp. While in Georgia, on or about November 2nd, 2019, Mr. Lemley and Mr. Bilbrough purchased roughly 1550 rounds of

ammunition for roughly $550. Later in the evening that day, Mr. Mathews, Mr. Lemley, and Mr. Bilbrough travelled from Georgia to Maryland. Mr. Bilbrough drove Mr. Lemley's truck for at least part of that trip, including from Virginia, on the Maryland side of the Capital Beltway, and over the Chesapeake Bay Bridge.

As of November of 2019, Mr. Lemley and Mr. Mathews lived at a residence in Delaware. Mr. Bilbrough visited those two at the Delaware residence on at least one occasion. On December 21st of 2019, Mr. Bilbrough arrived at the Delaware residence. Mr. Mathews passed Mr. Bilbrough an assault rifle that Mr. Mathews had constructed with Mr. Lemley's assistance and encouragement. Mr. Lemley and Mr. Mathews and Mr. Bilbrough discussed an upcoming rally in Virginia that at least Mr. Lemley and Mr. Mathews expected to attend. Mr. Lemley stated, "Don't wear any Base patches down in Virginia, we're supposed to be clandestine." Furthermore, Mr. Lemley, Mr. Mathews, and Mr. Bilbrough discussed the activities of The Base and spoke about other members within the organization.

Then, throughout the evening into the early morning hours of December 2019, Mr. Lemley, Mr. Mathews, and Mr. Bilbrough discussed the manufacture of DMT, which is dimethyltryptamine, a Schedule I controlled substance, and attempted to actually manufacture DMT. Mr. Bilbrough stated that he may try to sell DMT to people to whom he delivers pizza. Mr. Mathews stated he

has coworkers to whom he may be able to sell DMT. Mr. Bilbrough also stated that he knows DMT is illegal and it is a felony to have DMT.

The parties also, at the conclusion of the Statement of Facts, agree that an upward departure applies. At all times relevant, Mr. Bilbrough knew that Mr. Mathews had entered the United States to engage in subversive activity or other serious behavior, and had never disavowed that purpose while Mr. Bilbrough transported and otherwise interacted with Mr. Mathews.

I signed this Statement of Facts on behalf of the government on page 13, Mr. Bilbrough signed, and Mr. Bonsib signed as his counsel.

THE COURT: Okay. Thank you, Mr. Windom.

Mr. Bilbrough, having heard the government's factual statement, do you agree with that factual statement?

THE DEFENDANT: I agree with everything stated, Your Honor.

THE COURT: Did you do the things the government said you did?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty because you are, in fact, guilty of these offenses?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is there anything we discussed that you

didn't understand?

THE DEFENDANT: No. I understood everything, Your Honor.

THE COURT: Mr. Windom, is there anything else in the plea agreement or anything else that we should discuss with the defendant at this time?

MR. WINDOM: No, Your Honor.

THE COURT: Ms. Coleman, is there any reason we should not take the plea at this time?

MS. COLEMAN: No, Your Honor.

THE COURT: I am going to ask the clerk to take the plea to Counts One and Two of the indictment.

THE DEPUTY CLERK: Mr. Bilbrough, Judge Chuang has just reviewed with you the charges contained within the indictment.

Do you understand the charges placed against you?

THE DEFENDANT: I do.

THE DEPUTY CLERK: Ms. Coleman, as counsel for Mr. Bilbrough, are you satisfied that the defendant understands what he is charged with?

MS. COLEMAN: I am.

THE DEPUTY CLERK: Mr. Bilbrough, you have been charged in Counts One and Two of the indictment.

What is your plea as to Count One, conspiracy to transport aliens, guilty or not guilty?

THE DEFENDANT: Guilty.

THE DEPUTY CLERK: What is your plea as to Count Two, transporting certain aliens, guilty or not guilty?

THE DEFENDANT: Guilty.

THE DEPUTY CLERK: The plea is guilty as to Counts One and Two and not guilty to Counts Three, Four, and Five of the indictment. Is that correct, sir?

THE DEFENDANT: That's correct.

THE DEPUTY CLERK: Thank you.

THE COURT: It is the finding of the Court in the case of *United States vs. Bilbrough* that the defendant is fully competent to enter an informed plea, that the defendant is aware of the nature of the charges and the consequences of a guilty plea, and that that plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses. The plea is therefore accepted and the defendant is now adjudged guilty of Counts One and Two of the indictment.

Before we move to the sentencing phase, I did want to just confirm with Mr. Windom: This is our first appearance since the Due Process Act. Do you understand that the government has an obligation to disclose all exculpatory material under *Brady vs. Maryland* to the defense and that there are sanctions for failing to do so, and that -- can you confirm that the government has, in fact, made those disclosures

pending in this case?

MR. WINDOM: Yes, Your Honor. Thank you for bringing that up. The government understands and the government is aware of the law and the new rule. To the extent that there has been any exculpatory evidence, we have provided that to the defense.

THE COURT: Thank you.

Now, the defense had requested that we move to sentencing today, which, of course, as we all know, is not the ordinary course. Ordinarily, under the Rules of Criminal Procedure, we have a presentence report.

My understanding, the government is not opposed to this request to proceed directly to sentencing. Is that correct, Mr. Windom?

MR. WINDOM: That's correct.

THE COURT: So, in the absence of a PSR, what I have before me includes the defendant's motions for immediate sentencing, which includes attachments. That's ECF 131. I have the government's response, which is ECF 134. There are also other documents in the record that appear to be relevant for the sentencing, including the briefs and exhibits included at ECF Nos. 47, 69, 70, 71, 72, 77, 81, 83, and 86 and 93. I also have the Pretrial Services report.

Are there any other materials that have been submitted that could be considered at sentencing?

MR. WINDOM: No, Your Honor. We relied most heavily on the Statement of Facts.

THE COURT: Is there anything that was submitted or I should be considering other than what we have just described?

MS. COLEMAN: No. We believe that the report as well as the letters from his friends and family that were exhibits to the motion for review of detention would adequately -- would have been similar to exhibits that would have otherwise been put into the sentencing memo.

THE COURT: Am I correct that both sides agree there is no criminal history, no criminal record for Mr. Bilbrough?

MR. WINDOM: That's correct, Your Honor.

MS. COLEMAN: Yes, Your Honor.

THE COURT: Does that include whether we know whether there have been any arrests or non-convictions other than the convictions we are dealing with now?

MR. WINDOM: My understanding from the consultation, Your Honor, is that there is zero criminal history.

THE COURT: Okay. I will make some findings before we proceed. Ordinarily in a case in which the type of sentence is requested, such as a five-year sentence, I would have required a presentence report; however, the defense is correct that we have more information than usual at this stage. Plus, we have not just the Statement of Facts but additional evidence that was submitting during detention proceedings. Second, we

have no dispute on the guidelines calculations and no dispute that the defendant has no criminal record of any kind. That is corroborated by the Pretrial Services report. Third, we have specific information about defendant's history, characteristics from the letters and materials that were submitted during the detention process, including reference and character letters which the Court had to review for purposes of the detention and has now re-reviewed for sentencing.

The Court -- under Rule 32(c)(1)(A)(ii), the Court finds the information in the record is sufficient to meet with the sentencing authority. The Court also notes that in light of the conditions throughout detention, which have included the COVID-19 outbreak where Mr. Bilbrough has served incarceration, moving to sentencing and allowing for designation to the Bureau of Prisons now is in the interests of justice, so I will, again, with the consent of the parties, proceed to sentencing today having made that finding under Rule 32(c).

So the parties have taken a position on the guidelines in the plea agreement. I have reviewed those positions, conducted my own examination, and I find that the offense level is 15 and the criminal history category is I, and I agree with the specific numbers outlined in the agreement as the calculations of those findings.

As a result, the advisory guideline range is 18 to 24 months. The guideline range for supervised release is one to

three years. The guideline range for a fine is $10,500 to $75,000. And the special assessment is $200.

Are there any objections to those calculations?

MR. WINDOM: Not from the government, Your Honor.

MS. COLEMAN: No, Your Honor.

THE COURT: And could I just ask, although I don't think it's -- Mr. Encarnacion, do you see any problems with those calculations?

PROBATION OFFICER ENCARNACION: No, Your Honor.

THE COURT: The parties agreed in the plea agreement for an upward departure under Guideline 2L1.1, Application Note 7.

I assume, Mr. Windom, you are formally making a motion at this time. Is that correct?

MR. WINDOM: I'm sorry, Your Honor. I think that you asked if I was formally making the motion for a departure?

THE COURT: Yes.

MR. WINDOM: Yes, Your Honor.

THE COURT: Ms. Coleman, do you want to be heard on that?

MS. COLEMAN: We do have objections to the government's motion at this time pursuant to the plea agreement.

THE COURT: Okay. The Court finds that the upward departure is warranted under Guideline 2L1.1, Application Note

7(a), because the alien in this case, Mr. Mathews, was transported knowing that the alien had intended to enter the United States for perverse activity or for other serious criminal activity, through the activities involving a rally in Virginia that Mr. Mathews planned to attend, as outlined in the Statement of Facts, so I will find that an upward departure is warranted to go above the guideline range.

Now, as for the formal sentence, there is a recommendation in the plea agreement, but I will give both sides an opportunity to state their positions, oral argument for that recommended sentence. Why don't we begin with the government.

Mr. Windom.

MR. WINDOM: Thank you, Your Honor. And, for some reason, my Internet, because it's shaky, if you have trouble hearing me, please interrupt.

THE COURT: There is a bit of an echo. Okay.

MR. WINDOM: Mr. Bilbrough, if you are not muted, could you mute yourself, please? Okay. I am now getting a complete echo on myself.

THE COURT: I hear it as well. Ms. Solomon, do you have any idea why that's happening?

THE DEPUTY CLERK: The only thing I can recommend at this time is for Mr. Windom to disconnect and reconnect.

THE COURT: You don't have a speakerphone on, do you,

Mr. Windom?

MR. WINDOM: No, Your Honor. And now I am getting a repeat from you and from Ms. Solomon as well, at least on my audio.

THE COURT: Well, Ms. Solomon recommended that you disconnect.

MR. WINDOM: I will do so. I shall return.

(Pause.)

THE DEPUTY CLERK: Admitting Mr. Windom. You are on mute, Your Honor.

THE COURT: Another option would be to have Mr. Windom call in either with or without the video. Looks like he's coming back now.

MR. WINDOM: Your Honor, is my audio better?

THE COURT: I think we can hear you now. I don't hear the echo.

MR. WINDOM: Very good.

THE COURT: Do you want to make your argument on the sentencing?

MR. WINDOM: Thank you, Your Honor.

I will go through the 3553 factors. I know Your Honor has read all of the materials that have been submitted over the course of this case.

The -- this was an exceptionally serious offense. These crimes were of the defendant. The defendant was a member of a

white supremacist group, which, in FBI parlance, is a racially motivated violent extremist group called The Base. The goal of the group was to create a white ethno-state and to commit acts of violence against minorities.

This was a group of individuals, many with military training and with the intent of overthrowing the government and society as we know it. Their conduct was secret and conspiratorial, not just behind closed doors but in closed training camps and encrypted chat rooms.

Mr. Bilbrough attended several training camps in Georgia, in another state. Your Honor has seen pictures of those. The individuals in The Base basically dressed up in order to look terrifying and shot guns and otherwise practiced semi military tactics.

In late August, an enterprise of a reporter from the Winnipeg Free Press, who likely is listening on the line right now, infiltrated The Base and identified Mr. Mathews as having crossed the United States border, entering illegally in order to be protected by other Base members. And Mr. Bilbrough assisted in transporting and conspiring with Mr. Lemley to transport Mr. Mathews to safety. Mr. Bilbrough and Mr. Lemley drove 600 miles each way, stopping only for two hours, once in Michigan, to pick up Mr. Mathews.

By the time they got out there, Mr. Bilbrough knows the plan. He had previously known that Mr. Mathews was intending

to come across the border, and, at this point in time, Mr. Bilbrough was an unabashed member of The Base.

October 30th of 2019, Mr. Lemley and Mr. Bilbrough continued their criminal conduct. They drive down to Georgia. Mr. Mathews is already there. Mr. Lemley previously had taken Mr. Mathews down there.

Mr. Lemley and Mr. Bilbrough purchased a substantial amount of ammunition for the training camp. And then when returning, Mr. Bilbrough, at least part of the way, drives Mr. Mathews, who he knows to be illegally present in the United States and also knows to be a member of The Base subscribing to the conduct we previously discussed, Mr. Bilbrough drove him back up to Maryland and then Mr. Mathews went on to Delaware.

Mr. Bilbrough visited Mr. Mathews and Mr. Lemley in a Delaware residence where Mr. Mathews had an assault rifle, and, by this time, unbeknownst to the defendant, 24-hour audio and video recording within that residence had been solved by the FBI. Agents watched in realtime as Mr. Bilbrough and his coconspirators discussed Base activity, plans for Virginia, and an attempt to manufacture DMT.

I am getting the duplication, but I will try to go quick.

The upward departure is warranted based on the subversive activity and the serious criminal behavior that is outlined in the Statement of Facts and in the other papers Your Honor has seen.

If this is too distracting, Your Honor, I can either call back in or I can have a solution hereafter if you would like.

THE COURT: I guess it just depends on how much more you have. If it's a little bit more --

MR. WINDOM: I have got about one minute left, Your Honor.

THE COURT: Go ahead.

MR. WINDOM: For the history and characteristics of Mr. Bilbrough, he was 19 years old at the time of the crime. He had no criminal history. But it is clear that this was not an isolated event, and he hit the ground running directly into a federal criminal conduct.

The conduct I described already addresses the seriousness of the offense, the need to promote respect for the law, and to punish Mr. Bilbrough.

I think that Mr. Bilbrough will require certain specific deterrence, though we recognize that he had disassociated himself from The Base as of the time of the arrest. There is a debate as to whether that was because The Base was not as proactive as Mr. Bilbrough would like. A five-year sentence is important for general deterrence for any member of The Base or for anybody who would seek to join an organization such as The Base in order to propagate criminal conduct.

I believe that the other factors have been covered, though I will say this about unwarranted disparities:

Mr. Bilbrough, of the three, is the least culpable in this conduct because he was not specifically involved in the Virginia conduct. We anticipate, upon the conviction of Mr. Mathews and Mr. Lemley, substantially higher sentences will be sought for those coconspirators. The disparate sentences that we believe one day will come in play will not be unwarranted.

The five-year sentence that Mr. Bilbrough faces is substantial, substantial in general, it's substantial for a 19-year-old at the time, 20-year-old now, and it's substantial for the crimes of conviction. We ask Your Honor to impose that. We ask Your Honor to impose a three-year term of supervised release, no fine, no restitution, and a $100 special assessment.

THE COURT: Okay. Mr. Windom, a couple questions.

Maybe you can clarify for me what you were defining as criminal or subversive activity. I think there is this issue of, it came up at the detention hearings as well, that regardless of whether -- what one thinks of the views of the members of The Base, crimes are usually -- I think the focus here would be on violence and things like that. I think having a particular ideologically or a particular political viewpoint is not a crime in the United States.

And, I mean, you talked about ammunition that was transported, purchased. We have heard Mr. Bilbrough is not a

convicted felon, so it's unclear whether purchasing ammunition at the time was a crime. We know about the transporting of the aliens, that's obviously the conduct we are talking about, but in terms of the upward departure, the subversive activity, the serious criminal activity, what are you characterizing this as?

For example, again, it's unclear to me whether three firearms at a private location as a part of a group was, itself, a crime either. It seems to me it might not be, or at least it hasn't been proven to me in this case. So can you just define for me whether it's the planning around the Virginia activity and what that specifically showed, or what is it that you are calling the subversive or criminal activity that needs to be accounted for here that it is separate from a First Amendment action?

MR. WINDOM: Yes, sir. Thank you for the opportunity to clarify. This is not a First Amendment case, as Your Honor noted. It seeks to punish First Amendment activity in the United States, which we are not used to here.

With respect to the Application Note 7, it first describes subversive activities. Subversive activities is not defined. The Supreme Court case from about 50 years ago in reference to communism, it discusses what that is, so I think that it should be taken at its plain meaning, which applies here, the overthrow and the violent overthrow of the United States, not with respect to any -- any speech, itself, but

actual conduct.

That goes into play with the second part of the Application Note 7, which is -- the serious criminal behavior is the phrase. And that also is not defined in the guidelines, but I think that a fair way to read that is a felony, whether that's a dangerous felony, a violent felony, a felony that could result in physical injury, there are many ways on the spectrum to define what serious criminal behavior is.

Here -- well, I guess I will start with the beginning part of the Application Note 7. It talks about intention. It doesn't talk about actually carrying out. So it talks about knowing that the alien intended to enter the United States to engage in the activity.

So, here, Mr. Bilbrough knew, at the time, that Mr. Mathews was a member of The Base, which had, as its stated goal, the overthrow of the United States as we know it, as the creation of a white ethno-state actually committing acts of violence against minority communities. And this is all from the Statement of Facts, Your Honor. I am not trying to speak off book here.

THE COURT: I understand.

MR. WINDOM: And then what Mr. Bilbrough also recognized is that when he picked up Mr. Mathews, the intention was for Mr. Mathews to safely reside in the United States in order to continue his participation in The Base. And so that's

not, you know, continuing a discussion about what society should be, but, rather, actual action and conduct in order to bring about the violent undertakings in order to promote what Mr. Mathews wanted.

Now, as part of that, Mr. Bilbrough and others did engage in the paramilitary training camps, and that, standing alone, as Your Honor noted, might not be illegal. However, Mr. Mathews was unlawfully in the United States, which Mr. Bilbrough knew. Mr. Bilbrough provided and assisted in the purchase and transportation to the training camp of substantial ammunition which was then to be used by the parties at that training camp, which included Mr. Mathews.

Any possession of ammunition by Mr. Mathews would be a separate 922(g) offense, not in Maryland venue, but whether that's in Georgia or some other location, so that, alone, would be a serious -- would be a serious criminal behavior.

The remainder of the conduct, to Your Honor's point, would be, I think, or could be in Delaware, and this would be a way to fit within Application Note 7, where Mr. Bilbrough visited Mr. Mathews in the Delaware residence. They combined, attempted to manufacture a Schedule I controlled substance, which is a felony offense, again, not venued in Maryland, but it is serious criminal behavior.

And, as well, the parties discussed Base activities. Mr. Lemley and Mr. Mathews discussed what they intended to do

in Virginia, in which, I have to say, was perfectly in line with every type of conversation about what The Base wanted to do, which was create havoc and overthrow the United States Government.

So I think that in -- I am trying to -- to cabin the argument to the Statement of Facts. Your Honor has, of course, seen the detention hearing memos. We put in our recent filing -- Your Honor has access to the search warrants and Title III affidavit. I am trying to only focus on the Statement of Facts with respect to the conduct that we believe warrants an upward departure.

THE COURT: Okay. My other question is what conditions of supervised release would you recommend in this case?

MR. WINDOM: I think that the standard conditions, though I would also recommend that, to the extent that Your Honor is amenable, no foreign travel absent permission from the probation officer. I don't know that there needs to be a probation on domestic travel, but no foreign travel absent permission from the probation officer.

I think, Your Honor, on the Statement of Facts that we have, and Your Honor can make conditions of release that prevent -- prevent meeting in person with -- certainly with coconspirators, communicating with coconspirators. The question is how to spread that out more broadly and whether

there is a sufficient factual basis to prevent travel to -- to other Base training camps if The Base still exists roughly four years from now when Mr. Bilbrough -- when Mr. Bilbrough exits the BOP facility.

I think that there certainly is a sufficient factual basis to most broadly say that he cannot, during that period of time, associate with other felons which would encapsulate many of the -- or some of the folks who actually housed The Base training camps.

THE COURT: Well, I mean, is there a specific recommendation or condition you are asking me to impose? Again, we don't have the benefit of a presentence report here that everyone has looked at, so I understand the no foreign travel. Reading the Pretrial Services report, there are -- there is at least some substance abuse history, so that might warrant a testing requirement and treatment if deemed necessary by the probation officer.

I don't see anything here about mental health issues, although that doesn't preclude a condition of that type if there was some -- well, there was some mental health history at some point in the past.

And, again, on this issue of contact with witnesses, victims, coconspirators, is there a particular thing you are asking for on that regard?

MR. WINDOM: If Your Honor is willing, I would

recommend that during the three-year period of supervised release, that he not have contact with any members of The Base, whether that's the charged coconspirators or others.

THE COURT: And as part of your discussion, Ms. Coleman, you can also address the same question, what conditions of release are appropriate as well as what conditions of supervised release are appropriate as well as any recommendations for the Bureau of Prisons.

MS. COLEMAN: Thank you, Your Honor.

Your Honor, in this case, Mr. Bilbrough accepted this plea agreement because he recognizes the seriousness of the offense that he got himself into. It really is a tragic case from our perspective. Representing him the last year, year and a half, we have gotten to know Mr. Bilbrough personally. We have gotten to know his grandmother, who is actually his adoptive mother, and we have gotten to know many of his family members who have been present in court and had been present with us in our office.

Mr. Bilbrough, as Mr. Windom stated, was 19 years old at the time of this offense. This indictment and the plea agreement captures approximately a four-month window of time, from August of 2019 to December of 2019. As Your Honor knows from other cases and just from literature in general, oftentimes trying to demonstrate that the brain is still fully maturing until approximately age 21. Now, Mr. Bilbrough is, by

no means, a youth. He had been an adult for a year at the time of this offense, so he was, by no means, a mature adult fully cognizant of all of the decisions that he was making and all of these people with whom he was associating.

It is true that when you listen to the Statement of Facts and when you are aware of what's been recorded in the news accounts of this case, that this was a very troubling scenario, one which could have spiralled out of control and wreaked havoc upon an innocent community. Thankfully, through the efforts of law enforcement, but also through efforts of Mr. Bilbrough, it did not get that far.

As Mr. Windom indicated, there has been some dispute between the parties as to when Mr. Bilbrough's association with The Base concluded, but there is no dispute that it did formally conclude.

There also is no dispute that Mr. Bilbrough ever intended to go to Virginia.

With respect to the upward departure, we have agreed that it should apply in this case because we have agreed that Mr. Bilbrough had knowledge of Mr. Mathews' intent when he entered into the United States, and we don't dispute the fact that Mr. Bilbrough was present with Mr. Mathews and Mr. Lemley when there were discussions being made amongst them, or that Mr. Bilbrough purchased ammunition or handled a firearm.

So we ask Your Honor to consider greatly the fact that

Mr. Mathews and Mr. Lemley were older than Mr. Bilbrough, that Mr. Mathews entered into this country with the purpose of committing the subversive, violent criminal activity, and committed with Mr. Mathews and Mr. Lemley who were going to carry out the plan that they had orchestrated.

A 60-month sentence is justified in this case, but nothing greater is necessary to achieve the purposes of sentencing set forth in the 3553(a) factors.

This sentence of Mr. Bilbrough, he has been incarcerated for almost one year. He was arrested in January and I think we are at 11 months. This is a young man. He has never seen handcuffs, the inside of a cell. And as Mr. Windom indicated, he kind of fast tracked himself right to federal court. He couldn't be in a worse situation.

He's somebody who was delivering pizza before he was arrested in this case. He's somebody that was living in the farmlands of Denton, Maryland helping his grandmother with chickens before he now finds himself sitting in an orange jumpsuit in a detention facility.

He has learned a lot this last year. He has come to recognize the poor decisions that he made. He has been absolutely responsible with discussing his actions with counsel and with, frankly, assisting his grandmother in coming to terms with what the just outcome is in this case, which is five years.

He has undergone classes through the detention facility to better educate himself. And he, as I mentioned, really recognizes the gravity and severity of his actions.

I can speak for myself, you know, thinking back to when I was 19, and there is no way that I appreciated the risks and the consequences of actions that were taken by, you know, myself or friends that I knew, especially not in comparison to where he is now as an adult who has become more educated, has a family, and obviously crafting the field of criminal defense.

So I think the 60 months is a correct balance between the serious nature of what could have come from his actions. And he does have so much promise in the future if he can apply himself while he's incarcerated these next four years, if he can continue to educate himself, and if he can stay on the right path when he gets released and is supervised by the Court.

So with respect to the appropriate supervision once he is released, I don't have any objection to prohibiting foreign travel. I think that that situation had already been taken care of at the time that we were making requests for an order of detention. In fact, his grandmother told Mr. Bilbrough that she had destroyed his passport because she was working to discourage him from traveling, and then we were able to get possession of the passport from her. And I'm sorry, I can't state with certainty whether we were required to turn it into

the court or whether we still possess it, but I can state with certainty that it's not in Mr. Bilbrough's possession, and I can share with the Court, though I can't recall if Mr. Bonsib was required at one of these hearings to surrender it at that time.

Your Honor, we don't object to substance abuse testing and treatment or mental health counseling. I think that that was something that he -- with respect to the abuse of alcohol and/or drugs, there was something perhaps that he had entertained briefly, he was under the age of 21 at the time, and I don't think there is any harm that comes from an evaluation. It may be that it's not an issue when he's released, but an evaluation couldn't hurt.

Same with the mental health. He's young. Once he's released, he is going to have to start to perhaps get a job and trying to figure out who his friends are and who his friends aren't. And so to the extent that he can have a specialist at least evaluate him, I don't see that being problematic in that way.

I also don't have any issue with Mr. Bilbrough not associating with other felons, coconspirators, victims, or witnesses in this case. I think that that is a standard condition that a convicted felon in federal court will be prohibited from associating with co-felons.

I do have concern, though, about a general condition

prohibiting Mr. Bilbrough from associating with any members of The Base or going to Base training camps. The concern that I have is that it leaves it a little bit too broad and vague. It could be that there are non-felons who have some ideologies that members of The Base also might share, but those individuals may not formally be Base members. I just -- I am concerned that it leaves it open too much to Mr. Bilbrough associating with people that otherwise wouldn't be in categories that we routinely see as being prohibited people that defendants can associate with.

There is some disagreement that the defense and the government had had in certain aspects of this case with respect to whether there are First Amendment violations. Certainly not. We don't contest anything as it relates to violent activity, and that's why we have agreed to the plea in this case.

But to the extent that there are ideologies that one wants to express or associate themselves with someone else who share similar ideologies, I don't know where we draw the line. If it has to do with violence committed, then certainly, you know, one would hope that Mr. Bilbrough is not walking back down that path, but I think that he could get violated on a separate basis if it came down to a violent act. So if it's just a matter of Mr. Bilbrough associating with people who don't like certain groups of other people, I don't know that

this Court can prohibit that. And, so, I think that that's too overbroad, it's too vague, and I think that if Mr. Bilbrough reached the conclusion that Mr. Windom is speaking about would satisfy the Court if it's limited to associations with felons, coconspirators of this case, and victims.

THE COURT: What about the issue of a condition regarding attending training camps where it appears that the training is about military style training? Mr. Bilbrough, at that point, will not be permitted to possess a firearm or ammunition.

Now, I suppose one could go to a camp without touching any of those items, but I am not sure there is a First Amendment problem with saying that just going to a place like that where there is -- where you are that close to illegal conduct, that it would not be an appropriate thing for probation to -- or for supervised release to not permit for those three years in light of the potential violations of other conditions and crimes. What about that?

MS. COLEMAN: Yes, Your Honor. And I don't disagree with that. I think that if it can be phrased in a way that indicates that Mr. Bilbrough is not to attend other camps in which there is training with regards to firearms, in which it is likely that firearms would be present, that is -- that is okay because Mr. Bilbrough now cannot be in possession of firearms based on his conviction. And, so, from my standpoint

of somewhat trying to protect him as his defense attorney, I want to make sure that he's not constructively possessing those firearms either, so I don't see any -- Mr. Bonsib just walked back in perhaps at the appropriate time, but I will readjust the camera so you can see him, but I -- I will tell Mr. Bonsib --

THE COURT: I will just reach out to you, Mr. Bonsib. We are talking about proposed conditions of supervised release. And, at this point, both sides seem to agree that it would be appropriate to have conditions for substance abuse testing and treatment, mental health treatment, and subject to, you know, the discretion of the probation officer, that there be no contact with any felons, coconspirators, which, in this case, would be Mr. Lemley and Mr. Mathews or witnesses in this case, and no foreign travel to avoid the temptation of the Ukraine situation that had come up earlier, again, you know, subject to modification, if necessary.

The area where we were discussing was whether to have interactions with members of The Base or attending Base training camps. Ms. Coleman raised a concern about conditions that preclude First Amendment activity. I had noted that perhaps a condition of not attending Base training camps at which firearms are present might be a helpful condition that does not interfere with the ideology of First Amendment conditions. Given that he will be a prohibited person at that

point and can't go anywhere where there is a presence of firearms in an organized fashion, that would be something that the Court could appropriately try to regulate over those three years.

Do you have a view on any of those issues?

MR. BONSIB: Well, I think if it's connected to this issue of violence, it seems to me it makes sense that sort of the definition of what The Base is, or the general understanding of what The Base [audio drop] -- it plays out in terms of various participants. It's not always clear whether The Base has an organized structure or, you know, what it really means, so I don't think just saying The Base by itself would make sense. If you can make it to being in the constructive, rational possession of firearms, I think that makes sense because he would be prohibited from doing that under any circumstances anyhow.

THE COURT: Okay. Let me go back to Mr. Windom just -- we have moved a little bit off of what your recommendation was.

What do you think of where we stand now based on what counsel has proposed?

MR. WINDOM: I think, Your Honor, that what defense counsel proposed is probably the right balance when taking into account any First Amendment concerns.

I will just echo, for Mr. Bilbrough's sake, one thing

that his defense counsel said is that if he does start associating with folks in a way that goes more toward conduct and less towards speech, that he is probably going to end up violating another supervised release condition, and that will put him right back in front of Your Honor.

THE COURT: Okay. And, so, just to recap, then, I am not sure I am capturing what everyone thought as well as what I am thinking, but in terms of training camps, I would propose a condition that the defendant not attend training camps by The Base or any other organization in which there is -- in which firearms are present. Is that a fair condition?

MR. BONSIB: I think so, Your Honor.

MR. WINDOM: Yes, Your Honor.

THE COURT: Ms. Coleman, do you want to finish up if there is anything else you wanted to offer regarding the sentence?

MS. COLEMAN: Your Honor, I think I said -- I hope that I conveyed to you why this sentence is appropriate, and I would ask you to go along with the government's recommendation.

THE COURT: Okay. And the last question was whether you have any recommendations you would like me to make to the Bureau of Prisons?

MR. BONSIB: Mr. Bilbrough has asked to be -- is asking -- requesting that he wanted the recommendation to Butner because it's a medical facility. Is that still your

request, Mr. Bilbrough?

THE DEFENDANT: Yes. That's my request.

THE COURT: And largely as a result, if I am not mistaken, as a result of the diabetes. Is that correct?

THE DEFENDANT: Yes. I am a Type 1 diabetic.

THE COURT: So if there is nothing else from counsel, I will hear from Mr. Bilbrough. If you would like, you have the opportunity to make a statement before the sentencing issues.

MR. BONSIB: Your Honor, if I might, I don't know if this was addressed, I know that the Court recommended drug treatment upon release. Perhaps the Court could also recommend in the sentence, indicate the RDAP program if it's available, if he is an appropriate candidate for that.

THE COURT: Okay. If there is no objection to that, I can make the recommendation.

Mr. Bilbrough, your turn.

MS. COLEMAN: Your Honor, if I may, I spoke --

THE COURT: Sorry. Once counsel are done, it will be your turn. Ms. Coleman.

MS. COLEMAN: I just wanted to say, Mr. Bilbrough, when he and I spoke, when we had our breakout room, he has asked me to represent to the Court that he does take this case very seriously and that he is going to do his best to prove to the Court that he understands how this experience has actually

[audio gap] -- what good has come from it, and that you please impose the sentence that we have agreed to. He's indicated he wanted me to address you on his behalf rather than speak to you directly.

THE COURT: So just to clarify, Mr. Bilbrough, having heard Ms. Coleman's representation, you don't want to state anything generally. Correct? Ms. Coleman?

MS. COLEMAN: Yes, Your Honor. Yes. He wrote a statement.

THE COURT: Okay. Thank you. Why don't you just give me a moment and I will get ready to issue the sentence.

MR. WINDOM: Your Honor, just because I have had to deal with this before, can we get some affirmation that Mr. Bilbrough at least heard what Ms. Coleman said?

THE COURT: Yes.

THE DEFENDANT: I heard what she said.

THE COURT: And you are comfortable not making a statement; is that correct?

THE DEFENDANT: Correct.

THE COURT: Thank you.

(It is the policy of this court that every guilty plea and sentencing proceeding include a bench conference concerning whether the defendant is or is not cooperating.)

THE COURT: Okay. So, in considering the appropriate sentence for Mr. Bilbrough, I have considered the advisory

guideline range, as well as all the factors in 18, U.S.C., 3553(a), as well as Congress's direction that the sentence imposed be sufficient, but not greater than necessary, to comply with the purposes of sentencing. I have also considered the parties' agreed-upon recommendation of a total sentence of 60 months under Rule 11(c)(1)(C). I will discuss some but not all of the relevant factors here.

First, on the nature and circumstances of the offense, this is a case involving the transportation of an alien, Mr. Mathews, unlawfully from Canada to and within the United States. That offense, in and of itself, may not be the most serious federal offense, but the transport was in the context of assisting Mr. Mathews in participating in the activities of The Base, a white supremacist organization. Although having a particular ideology is not a crime, the defendant assisted Mr. Mathews and Mr. Lemley, another Base member, to go to a Base training camp, required significant amounts of ammunition. There was also part of a discussion in which they handled an assault rifle constructed by Mr. Mathews who had planned to attend the rally in Virginia in a clandestine way with weapons.

There was also discussion of drug manufacturing, illegal drug manufacturing and potential distribution. And, so, where the transporting was connected to what can be construed under the available facts as a plan to engage in violence at a large public gathering, this conduct was more serious than an

ordinary offense and warrants the upward departure that has already been discussed.

At the same time, the Court recognizes it was more limited than the other two charged individuals. Mr. Lemley appears to have been the leader of the transporting activity. Mr. Bilbrough did remove himself from these activities before the January 20th rally in Virginia, and he has accepted responsibility. Those factors all go to his benefit.

As for the history and characteristics of the defendant, Mr. Bilbrough has no criminal record. He was only 19 at the time of these events. His parents were not available as he was growing up, so he was raised by his grandmother, although it was a stable upbringing.

His undoing appears to have been a result of Internet searches that led him to The Base and influence of that organization. Although some of the letters that were submitted have characterized him as a victim, someone doesn't just get involved in this activity against his will. There had to have been some excuse to get involved in these activities, but perhaps the ideology is not a crime. Whether he knew that involvement in The Base would lead to criminal activity at the outset, such as transporting aliens, is not clear.

So the Courts finds, overall, Mr. Bilbrough's history and characteristics, particularly his lack of any criminal history and his youth, do not -- are mitigating factors and counsel

against a particularly high upward departure. When considering all these factors, because of the seriousness of the nature and circumstances of this offense and its connection to the extremely dangerous, potential violent activity at the rally, the Court agrees with the parties' joint recommendation of a five-year sentence, which constitutes an upward departure.

That sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to provide adequate deterrence both to Mr. Bilbrough for having engaged in activity like this and also others who might engage in this type of activity or the violence that -- to which the crime might be committed as well.

So, with that, I will impose the sentence. In the case of *The United States vs. Bilbrough*, the Court sentences you, Mr. Bilbrough, as follows: On Counts One and Two, conspiracy to transport certain aliens and transport certain aliens, the Court sentences you on each count to a term of imprisonment of 60 months, to be followed by three years of supervised release. All terms will run concurrently.

I will make the recommendation to the Bureau of Prisons that you be designated to FCI Butner for medical reasons and also to the RDAP program. I will impose no fine. You are required to pay the special assessment of $200.

In addition to the standard and statutory conditions of supervised release, I will impose the following special

conditions of supervised release: first, that you be subject to substance abuse testing and that you not tamper with the testing methods or try to avoid or subvert the testing methods; second, that you undergo substance abuse treatment at the direction of the probation officer; that you also undergo mental health treatment at the direction of the probation officer and treating professionals.

There will be -- you will be required -- as a condition, you are not permitted to engage in any foreign travel without the permission of the probation officer. You are also to have no contact with Mr. Lemley, Mr. Mathews, or any other witness to this, coconspirators or the witnesses or any convicted felons during the term of supervised release. You also are not permitted to attend any training camps of The Base or any other organization at which firearms are present.

I would note for you, Mr. Bilbrough, that one of the standards conditions which I didn't state specifically is that there be no possession of a firearm or ammunition, which also, once you are convicted, is a crime in and of itself. So, I think those are included there as well.

I believe there is no forfeiture order imposed here, Mr. Windom; is that correct?

MR. WINDOM: That's correct, Your Honor.

THE COURT: I believe that completes the terms of the sentence.

Mr. Bilbrough, just to address you briefly, the transporting an alien by itself may not have seemed like the most serious crime, this episode involving Mr. Lemley and assisting Mr. Mathews as he entered and traveled in the United States illegally, having unsecured firearm and ammunition -- helping to secure firearms and ammunition -- or ammunition and also to participate in activities involving discussions of firearms and drugs and then being involved in discussions about going to the rally in Virginia has the potential for some very serious and violent consequences.

Regardless of the viewpoints of The Base and its members, the law cannot tolerate that kind of violence that you were facilitating, and so a serious sentence is required.

Now, during this sentence, I hope you will consider how you can get yourself back on a law-abiding path, which you certainly can do. You have no prior criminal record. You have got yourself off this path before it got too far into violence, and you also have a lot of support from family and friends as noted in the letters that were submitted, and you are still young. You have a lot going for you. And so I urge you to seriously reflect on the path you have been on, get training and counseling while you are in prison, treatment, and come back ready to get on a more positive path that will make your grandmother and family proud.

If you revert back, though, and be involved in the kind

of activities that involve violence like what was about to happen in this case, you may be back in prison again and an even longer sentence may follow.

So, although there are no conditions of supervised release formally barring you from viewing certain materials on the Internet or interacting with certain individual people who have a certain viewpoint, I would certainly say those types of activities are -- put you in a much more susceptible position to reverting back to this type of activity. And, so, for your sake and the sake of your family and your community, and our community, I would urge you to head off in a different direction both while you are in prison and after you are out. If you do that, hopefully you will find that you can lead a productive, law-abiding life in the future that benefits everyone.

So, with that, Mr. Bilbrough, I tell you you generally have the right to appeal your conviction and sentence subject to any waivers you may have made in the plea agreement. If there is basis to appeal and you wish to do so, you must file a notice of appeal within 14 days of the entry of judgment. If you request, the clerk will prepare and file a notice of appeal on your behalf. If you cannot afford to pay the costs of an appeal or for appellate counsel, you can apply to have the Court waive the filing fee and appoint counsel to represent you on the appeal.

Do you understand, Mr. Bilbrough?

THE DEFENDANT: Yes. I understand, Your Honor.

THE COURT: Okay. Mr. Windom, is it now time for the government to dismiss the remaining counts of the indictment?

MR. WINDOM: Yes, Your Honor. We dismiss Counts Three, Four, and Five. And also, Your Honor, just one point of clarity for defense counsel, Butner has three FCIs in the Federal Medical Center there, and I believe that they want it in place or recommended to the Federal Medical Center on the order.

MR. BONSIB: That is correct. Thank you.

THE COURT: Okay. I mean, I have had to deal with the niceties of Butner recently as well, and I don't know -- my general understanding is regardless of where you are on the complex, the fact is that there is a federal medical center there, but I will make that recommendation. The BOP, obviously, will make its determination, but I think if you end up anywhere on the complex, that at least gives you the benefit of being in proximity to the medical experts that they have there.

So I will grant the government's motion to have Counts Three, Four, and Five dismissed.

Mr. Bilbrough is already in the custody of the marshal's service, so he is remanded back there until he is designated.

Is there anything else we should discuss?

MR. BONSIB: Your Honor, I don't know if this has been discussed before I came back, but I understand that the probation officer wants to do the post PSI, so I don't know if we need some technical assistance with that or how that might work so Mr. Bilbrough doesn't get taken away.

THE COURT: You are saying that -- Mr. Encarnacion, I assume you wanted to do a PSR report?

PROBATION OFFICER ENCARNACION: We will have to file a supplemental report in place of the PSR, so I will need to interview him after this hearing concludes.

THE COURT: Okay. So, Ms. Solomon, can we have some connection with Mr. Encarnacion, Mr. Bilbrough, and counsel?

THE DEPUTY CLERK: I will transfer this to Mr. Encarnacion.

THE COURT: With that, I believe we can conclude the hearing. Thank you all very much.

MR. WINDOM: Thank you, Judge.

(The proceedings were concluded at 12:01 p.m.)

C E R T I F I C A T E

I, Renee A. Ewing, an Official Court Reporter for the United States District Court for the District of Maryland, do hereby certify that the foregoing is a true and correct transcript of the stenographically reported proceedings taken on the date and time previously stated in the above matter; that the testimony of witnesses and statements of the parties were correctly recorded in machine shorthand by me and thereafter transcribed under my supervision with computer-aided transcription to the best of my ability; and that I am neither of counsel nor kin to any party in said action, nor interested in the outcome thereof.

Renee A Ewing

Renee A. Ewing, RPR, RMR, CRR
Official Court Reporter
June 22, 2021

## $

**$10,500** [1] - 40:1
**$100** [4] - 11:10, 11:13, 12:5, 46:13
**$200** [3] - 12:6, 40:2, 66:23
**$250,000** [2] - 11:9, 11:13
**$550** [1] - 33:1
**$75,000** [1] - 40:2

## 1

**1** [1] - 62:5
**10:01** [1] - 1:11
**10:30** [1] - 3:2
**11** [1] - 54:11
**11(c)(1)(C)** [1] - 64:6
**116** [1] - 1:21
**12** [4] - 13:11, 13:16, 21:21, 31:9
**12:01** [1] - 71:18
**13** [2] - 18:22, 34:12
**131** [1] - 37:18
**1324(a)(1)(A)(ii** [1] - 9:10
**1324(a)(1)(A)(iii** [1] - 9:14
**1324(a)(1)(A)(v)(I** [2] - 9:8, 9:12
**134** [1] - 37:19
**14** [1] - 69:20
**15** [8] - 23:3, 23:9, 23:13, 23:14, 23:17, 23:23, 24:11, 39:20
**15002(b)(2** [1] - 3:17
**1550** [1] - 32:25
**18** [4] - 21:24, 23:17, 39:24, 64:1
**19** [4] - 45:9, 52:19, 55:5, 65:10
**19-year-old** [1] - 46:10
**19th** [1] - 31:10

## 2

**20** [1] - 7:13
**20-year-old** [1] - 46:10
**2018** [1] - 30:2
**2019** [14] - 30:19, 30:22, 31:1, 31:10, 31:24, 32:15, 32:19, 32:24, 33:7, 33:10, 33:21, 44:3, 52:22
**2020** [2] - 1:11, 18:21
**2021** [1] - 72:17
**20770** [2] - 1:16, 1:21
**20th** [1] - 65:7
**21** [3] - 27:20, 52:25, 56:10
**21st** [1] - 33:10
**22** [1] - 72:17
**24** [2] - 23:17, 39:24
**24-hour** [1] - 44:16
**29th** [1] - 18:21
**2L1.1** [3] - 22:9, 40:11, 40:25
**2L1.1(a)(3** [1] - 21:22
**2L1.1(b)(5)(C** [1] - 21:25
**2nd** [2] - 30:22, 32:24

## 3

**301** [4] - 1:17, 1:22, 1:24, 16:16
**30th** [2] - 31:24, 44:3
**31st** [1] - 32:15
**32(c)** [1] - 39:17
**32(c)(1)(A)(ii** [1] - 39:9
**344-3109** [1] - 16:16
**344-3227** [1] - 1:24
**344-4433** [1] - 1:17
**3553** [1] - 42:21
**3553(a** [2] - 54:8, 64:2

## 4

**41** [1] - 23:22
**441-3000** [1] - 1:22
**47** [1] - 37:22
**4th** [1] - 30:22

## 5

**50** [1] - 47:21
**51** [1] - 23:22

## 6

**60** [5] - 25:23, 27:16, 55:10, 64:6, 66:18
**60-month** [3] - 25:25, 26:13, 54:6
**600** [2] - 32:1, 43:22
**6406** [1] - 1:15
**6411** [1] - 1:20
**69** [1] - 37:22

## 7

**7** [6] - 22:8, 40:12, 47:19, 48:3, 48:10, 49:19
**7(a** [1] - 41:1
**70** [1] - 37:22
**71** [1] - 37:22
**72** [1] - 37:22
**77** [1] - 37:22

## 8

**8** [5] - 1:11, 9:7, 9:10, 9:12, 9:13
**800** [1] - 1:16
**81** [1] - 37:22
**83** [1] - 37:22
**86** [1] - 37:22

## 9

**9** [1] - 18:22
**922(g** [1] - 49:14
**93** [1] - 37:22

## A

**a)(1)(A)(v)(II** [1] - 9:10
**a)(1)(A)(v)(II)** [1] - 9:14
**A.M** [1] - 1:11
**abetted** [1] - 10:20
**abiding** [2] - 68:15, 69:14
**ability** [1] - 72:11
**able** [5] - 8:11, 20:1, 20:10, 34:1, 55:23
**abroad** [1] - 30:3
**absence** [1] - 37:16
**absent** [2] - 50:17, 50:19
**absolute** [1] - 17:7
**absolutely** [1] - 54:22
**abuse** [6] - 51:15, 56:6, 56:8, 59:10, 67:2, 67:4
**accept** [4] - 6:13, 22:17, 27:9, 28:21
**acceptance** [2] - 22:4, 22:5
**accepted** [3] - 36:17, 52:10, 65:7
**access** [2] - 30:17, 50:8
**account** [2] - 16:1, 60:24
**accounted** [1] - 47:13
**accounts** [1] - 53:7
**achieve** [1] - 54:7
**act** [1] - 57:23
**Act** [2] - 3:18, 36:21
**acted** [1] - 10:21
**acting** [3] - 6:14, 6:17, 31:12
**action** [3] - 47:14, 49:2, 72:12
**actions** [4] - 54:22, 55:3, 55:6, 55:11
**activities** [11] - 33:18, 41:4, 47:20, 49:24, 64:13, 65:6, 65:19, 68:7, 69:1, 69:8
**activity** [23] - 22:11, 34:7, 41:3, 41:4, 44:19, 44:23, 46:17, 47:4, 47:5, 47:11, 47:12, 47:17, 48:13, 54:3, 57:15, 59:21, 65:5, 65:18, 65:21, 66:4, 66:10, 66:11, 69:9
**acts** [3] - 29:23, 43:3, 48:17
**actual** [2] - 48:1, 49:2
**add** [2] - 22:25, 23:8
**addiction** [1] - 8:5
**addition** [1] - 66:24
**additional** [3] - 11:24, 15:4, 38:24
**address** [3] - 52:5, 63:3, 68:1
**addressed** [1] - 62:11
**addresses** [1] - 45:13
**adequate** [2] - 25:11, 66:9
**adequately** [1] - 38:7
**adjudged** [1] - 36:17
**administer** [1] - 6:19
**admitted** [1] - 30:16
**admitting** [1] - 42:9
**adoptive** [1] - 52:16
**Adrienne** [1] - 2:12
**adult** [3] - 53:1, 53:2, 55:8
**advantage** [1] - 6:11
**advice** [1] - 8:19
**advise** [1] - 4:13
**advisory** [2] - 39:24, 63:25
**affect** [1] - 18:13
**affidavit** [1] - 50:9
**affirmation** [1] - 63:13
**afford** [1] - 69:22
**afforded** [1] - 30:17
**African** [1] - 29:24
**African-Americans** [1] - 29:24
**age** [2] - 52:25, 56:10
**agents** [1] - 44:18
**ago** [1] - 47:21
**agree** [10] - 13:16, 22:7, 29:3, 29:12, 34:5, 34:16, 34:17, 38:10, 39:21, 59:9
**agreed** [17] - 4:22, 13:23, 21:19, 22:14, 22:24, 23:10, 24:4, 24:23, 24:24, 25:21, 25:22, 40:10, 53:18, 53:19, 57:15, 63:2, 64:5
**agreed-upon** [1] - 64:5
**agreement** [37] - 10:6, 10:9, 18:20, 18:25, 19:2, 20:19, 20:23, 21:2, 21:13, 22:6, 22:15, 23:1, 24:1, 24:4, 24:22, 25:24, 26:24, 27:7, 27:13, 27:19, 27:21, 27:22, 27:25, 28:1, 28:2, 28:4, 28:9, 29:10, 35:5, 39:19, 39:22, 40:10, 40:23, 41:9, 52:11, 52:21, 69:18
**agreements** [2] - 28:3
**agrees** [1] - 66:5
**ahead** [3] - 19:21, 29:5, 45:7
**AIDED** [1] - 1:25
**aided** [2] - 10:20, 72:10
**air** [1] - 31:5
**alcohol** [1] - 56:8
**alcoholic** [1] - 8:8
**alien** [10] - 10:16, 10:18, 10:21, 22:10, 41:1, 41:2, 48:12, 64:9, 68:2
**alien's** [1] - 10:22
**aliens** [13] - 9:7, 9:9, 9:11, 9:13, 10:4, 10:7, 10:15, 35:25, 36:3, 47:3, 65:22, 66:16
**allow** [1] - 4:9
**allowed** [2] - 26:8, 26:14
**allowing** [1] - 39:14
**allows** [1] - 3:18
**almost** [1] - 54:10
**alone** [2] - 49:6, 49:15
**amenable** [1] - 50:17
**Amendment** [8] - 47:14, 47:16, 47:17, 57:13, 58:13, 59:21, 59:24, 60:24
**AMERICA** [1] - 1:5
**America** [1] - 2:5
**Americans** [2] - 29:24
**ammunition** [13] - 33:1, 44:8, 46:24, 47:1, 49:11, 49:13, 53:24, 58:10, 64:17, 67:18, 68:5, 68:6
**amount** [2] - 12:11, 44:8
**amounts** [1] - 64:17
**AND** [1] - 1:19
**answer** [2] - 7:4, 7:7

**answers** [1] - 7:8
**anticipate** [1] - 46:3
**anyhow** [1] - 60:16
**apologize** [1] - 19:17
**appeal** [12] - 17:16, 17:17, 27:6, 27:8, 27:9, 27:14, 69:17, 69:19, 69:20, 69:21, 69:23, 69:25
**appear** [1] - 37:20
**appearance** [2] - 3:4, 36:20
**appearing** [1] - 3:13
**appellate** [1] - 69:23
**applicable** [1] - 21:20
**applicant's** [3] - 30:13, 30:14, 30:15
**applicants** [3] - 30:10, 30:12, 30:16
**Application** [7] - 22:8, 40:11, 40:25, 47:19, 48:3, 48:10, 49:19
**application** [1] - 30:12
**applies** [4] - 21:22, 22:8, 34:5, 47:23
**apply** [6] - 21:10, 22:2, 22:14, 53:19, 55:12, 69:23
**appoint** [2] - 14:11, 69:24
**appreciated** [1] - 55:5
**appropriate** [10] - 24:6, 52:6, 52:7, 55:17, 58:15, 59:4, 59:10, 61:18, 62:14, 63:24
**appropriately** [1] - 60:3
**area** [3] - 31:17, 32:11, 59:18
**argument** [3] - 41:10, 42:18, 50:6
**arranged** [1] - 31:16
**arrest** [1] - 45:18
**arrested** [2] - 54:10, 54:16
**arrests** [1] - 38:15
**arrival** [1] - 31:10
**arrived** [1] - 33:10
**article** [1] - 31:11
**aspects** [1] - 57:12
**assault** [3] - 33:11, 44:15, 64:19
**assessment** [6] - 11:10, 11:14, 12:4, 40:2, 46:14, 66:23
**assist** [1] - 19:18
**assistance** [2] - 33:12, 71:4
**Assistant** [1] - 2:11
**assisted** [3] - 43:20, 49:9, 64:15
**assisting** [3] - 54:23, 64:13, 68:4
**associate** [3] - 51:7, 57:10, 57:18
**associated** [1] - 18:1
**associating** [7] - 53:4, 56:21, 56:24, 57:1, 57:8, 57:24, 61:2
**association** [1] - 53:13
**associations** [2] - 30:13, 58:4
**assume** [2] - 40:13, 71:7
**assurances** [1] - 28:8
**Atomwaffen** [1] - 30:7
**Attachment** [1] - 29:11
**attachments** [1] - 37:18
**attempt** [1] - 44:20
**attempted** [2] - 33:23, 49:21
**attend** [8] - 30:24, 32:21, 33:15, 41:5, 58:21, 61:9, 64:20, 67:14
**attended** [3] - 31:2, 32:23, 43:10
**attending** [3] - 58:7, 59:19, 59:22
**attention** [1] - 2:1
**ATTORNEY** [1] - 1:14
**attorney** [3] - 14:10, 14:13, 59:1
**Attorney** [1] - 2:11
**attorneys** [7] - 4:22, 8:17, 8:23, 9:19, 13:12, 14:20, 21:10
**audio** [5] - 42:4, 42:14, 44:16, 60:9, 63:1
**August** [9] - 30:19, 30:22, 31:1, 31:10, 31:24, 32:15, 43:15, 52:22
**authorities** [1] - 18:14
**authority** [2] - 21:4, 39:11
**available** [4] - 5:20, 62:13, 64:24, 65:11
**avoid** [3] - 25:13, 59:15, 67:3
**aware** [3] - 36:13, 37:4, 53:6

## B

**background** [2] - 20:4, 30:10
**balance** [2] - 55:10, 60:23
**barring** [1] - 69:5
**base** [1] - 21:20
**Base** [62] - 29:16, 29:18, 29:19, 30:2, 30:8, 30:10, 30:17, 30:19, 30:21, 31:2, 31:6, 31:12, 31:14, 31:16, 31:17, 31:19, 32:5, 32:10, 32:16, 32:22, 33:16, 33:18, 43:2, 43:12, 43:17, 43:19, 44:2, 44:11, 44:19, 45:18, 45:19, 45:21, 45:23, 46:20, 48:15, 48:25, 49:24, 50:2, 51:2, 51:8, 52:2, 53:14, 57:2, 57:5, 57:6, 59:19, 59:22, 60:8, 60:9, 60:11, 60:12, 61:10, 64:14, 64:16, 64:17, 65:15, 65:21, 67:14, 68:11
**Base's** [2] - 29:21, 30:5
**based** [9] - 3:23, 21:6, 22:3, 23:1, 23:25, 25:14, 44:22, 58:25, 60:20
**basis** [6] - 28:22, 36:15, 51:1, 51:6, 57:23, 69:19
**Bay** [1] - 33:6
**became** [1] - 10:8
**become** [2] - 31:15, 55:8
**becoming** [1] - 18:16
**BEFORE** [1] - 1:10
**begin** [2] - 6:19, 41:11
**beginning** [2] - 32:18, 48:9
**behalf** [7] - 2:17, 3:1, 14:23, 31:13, 34:11, 63:3, 69:22
**behavior** [7] - 22:12, 34:8, 44:23, 48:3, 48:8, 49:16, 49:23
**behind** [1] - 43:8
**below** [2] - 25:15, 25:16
**Beltway** [1] - 33:5
**bench** [1] - 63:22
**benefit** [3] - 51:12, 65:8, 70:18
**benefits** [1] - 69:14
**best** [2] - 62:24, 72:11
**better** [3] - 19:22, 42:14, 55:2
**between** [2] - 53:13, 55:10
**beverages** [1] - 8:8
**beyond** [3] - 14:4, 14:6, 29:13
**Bilbrough** [136] - 2:6, 2:17, 2:20, 3:1, 3:7, 3:10, 4:17, 4:18, 5:5, 5:7, 5:13, 5:25, 6:1, 6:5, 6:7, 6:21, 7:1, 7:3, 11:15, 15:9, 15:14, 15:22, 17:2, 18:24, 19:12, 20:1, 20:8, 20:16, 20:18, 21:17, 22:19, 29:2, 29:7, 29:15, 30:23, 31:1, 31:6, 31:7, 31:22, 31:25, 32:3, 32:4, 32:6, 32:10, 32:12, 32:14, 32:20, 32:25, 33:2, 33:3, 33:8, 33:10, 33:11, 33:13, 33:18, 33:21, 33:24, 34:2, 34:6, 34:9, 34:12, 34:15, 35:13, 35:19, 35:22, 36:11, 38:11, 39:13, 41:18, 43:10, 43:19, 43:21, 43:24, 44:2, 44:3, 44:7, 44:9, 44:12, 44:14, 44:18, 45:9, 45:15, 45:16, 45:20, 46:1, 46:8, 46:25, 48:14, 48:22, 49:5, 49:9, 49:19, 51:3, 52:10, 52:14, 52:19, 52:25, 53:10, 53:16, 53:20, 53:22, 53:24, 54:1, 54:9, 55:21, 56:20, 57:1, 57:7, 57:21, 57:24, 58:2, 58:8, 58:21, 58:24, 61:23, 62:1, 62:7, 62:17, 62:21, 63:5, 63:14, 63:25, 65:6, 65:10, 66:10, 66:14, 66:15, 67:16, 68:1, 69:16, 70:1, 70:23, 71:5, 71:12
**BILBROUGH** [2] - 1:8, 6:23
**Bilbrough's** [5] - 32:20, 53:13, 56:2, 60:25, 65:23
**bit** [5] - 29:8, 41:17, 45:4, 57:3, 60:18
**blade** [1] - 31:7
**Bonsib** [18] - 2:16, 2:19, 2:24, 2:25, 4:13, 8:18, 15:13, 15:21, 19:5, 19:12, 19:25, 20:9, 20:13, 34:12, 56:3, 59:3, 59:5, 59:7
**BONSIB** [15] - 1:19, 1:19, 2:16, 2:25, 4:15, 5:8, 15:7, 16:4, 16:14, 60:6, 61:12, 61:23, 62:10, 70:11, 71:1
**book** [2] - 32:16, 48:20
**BOP** [2] - 51:4, 70:16
**border** [3] - 31:23, 43:18, 44:1
**born** [1] - 7:14
**Brady** [1] - 36:23
**brain** [1] - 52:24
**breakout** [2] - 15:25, 62:22
**Brian** [1] - 29:17
**Bridge** [1] - 33:6
**briefly** [2] - 56:10, 68:1
**briefs** [1] - 37:21
**bring** [1] - 49:3
**bringing** [2] - 32:15, 37:2
**broad** [1] - 57:3
**broadly** [2] - 50:25, 51:6
**building** [1] - 30:2
**burden** [1] - 14:6
**Bureau** [4] - 39:14, 52:8, 61:22, 66:20
**Butner** [4] - 61:25, 66:21, 70:7, 70:13
**BY** [4] - 1:14, 1:15, 1:19, 1:20

## C

**cabin** [1] - 50:5
**calculate** [1] - 24:7
**calculations** [5] - 21:14, 39:1, 39:22, 40:3, 40:8
**camera** [1] - 59:5
**camp** [12] - 30:21, 30:24, 31:2, 31:4, 32:18, 32:21, 32:24, 44:8, 49:10, 49:12, 58:11, 64:17
**camps** [14] - 29:25, 43:9, 43:10, 49:6, 51:2, 51:9, 57:2,

58:7, 58:21, 59:20, 59:22, 61:8, 61:9, 67:14
**Camps** [1] - 30:20
**Canada** [3] - 31:18, 31:20, 64:10
**candidate** [1] - 62:14
**cannot** [7] - 14:2, 17:9, 17:10, 51:6, 58:24, 68:12, 69:22
**capacity** [1] - 31:13
**Capital** [1] - 33:5
**captures** [1] - 52:21
**capturing** [1] - 61:7
**care** [1] - 55:20
**carefully** [1] - 6:16
**CARES** [1] - 3:18
**carry** [1] - 54:5
**carrying** [1] - 48:11
**case** [48] - 4:10, 6:6, 6:9, 8:20, 9:4, 9:19, 11:17, 13:3, 13:11, 14:12, 15:1, 18:20, 19:7, 21:10, 21:20, 22:8, 25:20, 27:23, 28:9, 28:12, 29:1, 29:12, 36:11, 37:1, 38:20, 41:1, 42:23, 47:9, 47:16, 47:21, 50:14, 52:10, 52:12, 53:7, 53:19, 54:6, 54:16, 54:24, 56:22, 57:12, 57:16, 58:5, 59:13, 59:14, 62:23, 64:9, 66:13, 69:2
**cases** [1] - 52:23
**categories** [1] - 57:9
**Category** [1] - 23:21
**category** [1] - 39:21
**cell** [1] - 54:12
**Center** [2] - 70:8, 70:9
**center** [2] - 31:6, 70:15
**certain** [25] - 9:7, 9:9, 9:11, 9:13, 10:4, 10:7, 10:14, 12:9, 12:15, 12:18, 21:2, 22:24, 25:6, 26:25, 31:3, 32:3, 36:3, 45:16, 57:12, 57:25, 66:16, 69:5, 69:6, 69:7
**certainly** [6] - 50:23, 51:5, 57:13, 57:20, 68:16, 69:7
**certainty** [2] - 55:25, 56:2
**certify** [1] - 72:5
**challenge** [1] - 27:2
**chance** [1] - 4:21
**change** [2] - 6:5, 6:8
**character** [1] - 39:6
**characteristics** [5] - 25:8, 39:4, 45:8, 65:9, 65:24
**characterized** [1] - 65:17
**characterizing** [1] - 47:5
**charged** [8] - 9:6, 10:6, 12:24, 13:8, 35:20, 35:23, 52:3, 65:4
**charges** [9] - 9:3, 9:19, 9:21, 9:24, 10:3, 17:20, 35:14, 35:16, 36:13
**chat** [3] - 29:21, 30:4, 43:9
**Chesapeake** [1] - 33:5
**chickens** [1] - 54:18
**chief** [1] - 3:23
**choose** [4] - 17:11, 24:11, 26:5
**CHUANG** [1] - 1:10
**Chuang** [2] - 2:3, 35:13
**circles** [1] - 32:17
**circulated** [1] - 32:17
**circumstances** [7] - 12:10, 12:16, 15:24, 25:8, 60:16, 64:8, 66:3
**citizen** [4] - 7:16, 18:11, 18:12, 18:16
**citizens** [1] - 13:10
**civil** [1] - 18:6
**clandestine** [2] - 33:17, 64:20
**clarify** [5] - 15:14, 16:10, 46:16, 47:16, 63:5
**clarity** [1] - 70:7
**classes** [1] - 55:1
**clear** [3] - 45:10, 60:10, 65:22
**clerk** [3] - 6:19, 35:11, 69:21
**CLERK** [24] - 2:1, 5:6, 5:9, 5:12, 5:15, 5:21, 5:25, 6:21, 6:24, 7:2, 15:24, 16:5, 16:12, 16:16, 16:20, 35:13, 35:18, 35:22, 36:2, 36:5, 36:9, 41:23, 42:9, 71:13
**client** [3] - 4:14, 19:6, 20:13
**close** [2] - 20:5, 58:14
**closed** [3] - 4:1, 43:8
**closer** [1] - 19:15
**co** [1] - 56:24
**co-felons** [1] - 56:24
**coalition** [1] - 30:2
**Coast** [1] - 32:8
**coconspirators** [10] - 44:19, 46:5, 50:24, 51:23, 52:3, 56:21, 58:5, 59:13, 67:12
**Code** [1] - 9:8
**Codefendant** [1] - 31:9
**codefendants** [1] - 29:17
**cognizant** [1] - 53:3
**Coleman** [22] - 2:17, 3:1, 3:2, 8:18, 15:9, 15:11, 15:15, 15:23, 16:8, 16:13, 16:23, 19:5, 20:6, 35:8, 35:18, 40:19, 52:5, 59:20, 61:14, 62:20, 63:7, 63:14
**COLEMAN** [23] - 1:20, 16:9, 16:24, 19:8, 19:11, 19:17, 19:20, 19:22, 19:25, 20:7, 20:14, 35:10, 35:21, 38:5, 38:13, 40:5, 40:21, 52:9, 58:19, 61:17, 62:18, 62:21, 63:8
**Coleman's** [1] - 63:6
**College** [1] - 7:24
**college** [2] - 8:1, 8:2
**combined** [1] - 49:20
**comfortable** [1] - 63:17
**coming** [2] - 42:13, 54:23
**Commission** [1] - 21:4
**commit** [1] - 43:3
**commitments** [1] - 21:14
**committed** [6] - 17:19, 21:8, 21:23, 54:4, 57:20, 66:12
**committing** [3] - 29:23, 48:17, 54:3
**communicating** [1] - 50:24
**communications** [1] - 20:10
**communism** [1] - 47:22
**communities** [2] - 29:24, 48:18
**Community** [1] - 7:24
**community** [4] - 8:1, 53:9, 69:10, 69:11
**comparison** [1] - 55:7
**competent** [1] - 36:12
**competing** [1] - 2:12
**complete** [5] - 27:21, 27:22, 28:1, 29:9, 41:20
**completes** [1] - 67:24
**completion** [1] - 31:15
**complex** [2] - 70:15, 70:18
**comply** [1] - 64:4
**COMPUTER** [1] - 1:25
**computer** [1] - 72:10
**COMPUTER-AIDED** [1] - 1:25
**computer-aided** [1] - 72:10
**concern** [3] - 56:25, 57:2, 59:20
**concerned** [1] - 57:7
**concerning** [1] - 63:22
**concerns** [2] - 15:14, 60:24
**conclude** [3] - 24:10, 53:15, 71:15
**concluded** [2] - 53:14, 71:18
**concludes** [1] - 71:10
**conclusion** [3] - 24:9, 34:4, 58:3
**concurrently** [1] - 66:19
**condition** [11] - 51:11, 51:19, 56:23, 56:25, 58:6, 59:22, 59:23, 61:4, 61:9, 61:11, 67:8
**conditions** [17] - 11:22, 11:24, 39:12, 50:13, 50:15, 50:22, 52:6, 52:7, 58:18, 59:8, 59:10, 59:20, 59:25, 66:24, 67:1, 67:17, 69:4
**conduct** [18] - 3:25, 25:12, 43:7, 44:4, 44:12, 45:12, 45:13, 45:23, 46:2, 46:3, 47:3, 48:1, 49:2, 49:17, 50:10, 58:15, 61:2, 64:25
**conducted** [3] - 3:17, 30:21, 39:19
**confer** [2] - 3:15, 15:23
**conference** [2] - 3:12, 63:22
**confident** [3] - 19:11, 19:25, 20:8
**confirm** [4] - 4:11, 20:12, 36:20, 36:24
**confront** [1] - 14:17
**Congress** [1] - 21:5
**Congress's** [1] - 64:2
**connected** [2] - 60:6, 64:23
**connection** [4] - 5:4, 5:22, 66:3, 71:12
**consent** [4] - 3:19, 4:19, 4:22, 39:16
**consented** [1] - 4:25
**consenting** [1] - 4:12
**consents** [1] - 4:17
**consequences** [4] - 28:15, 36:13, 55:6, 68:10
**consider** [4] - 24:7, 25:6, 53:25, 68:14
**considered** [3] - 37:25, 63:25, 64:4
**considering** [3] - 38:4, 63:24, 66:1
**conspiracy** [7] - 9:7, 9:11, 10:4, 10:9, 11:7, 35:24, 66:15
**conspiratorial** [1] - 43:8
**conspiring** [1] - 43:20
**constitutes** [1] - 66:6
**Constitution** [1] - 13:7
**constitutional** [1] - 6:11
**constructed** [2] - 33:12, 64:19
**constructive** [1] - 60:14
**constructively** [1] - 59:2
**construed** [1] - 64:23
**consult** [1] - 8:23
**consultation** [1] - 38:17
**contact** [4] - 51:22, 52:2, 59:13, 67:11
**contain** [1] - 26:25
**contained** [3] - 25:7, 28:8, 35:14
**containing** [1] - 36:16
**contains** [2] - 27:19, 29:11
**contest** [1] - 57:14
**context** [1] - 64:12
**continue** [5] - 3:20, 13:2, 32:9, 48:25, 55:14
**continued** [1] - 44:4
**continuing** [2] - 17:1, 49:1
**control** [3] - 2:23,

12:17, 53:8
**controlled** [2] - 33:23, 49:21
**conversation** [1] - 50:2
**conveyed** [5] - 19:6, 19:12, 20:13, 20:14, 61:18
**convicted** [7] - 6:10, 12:4, 13:17, 47:1, 56:23, 67:12, 67:19
**conviction** [8] - 12:6, 18:13, 21:6, 27:9, 46:3, 46:11, 58:25, 69:17
**convictions** [2] - 38:15, 38:16
**cooperating** [1] - 63:23
**copy** [3] - 9:2, 18:24, 29:7
**correct** [26] - 4:18, 7:17, 9:16, 16:19, 18:22, 19:3, 28:4, 28:6, 36:7, 36:8, 37:13, 37:15, 38:10, 38:12, 38:22, 40:14, 55:10, 62:4, 63:7, 63:18, 63:19, 67:22, 67:23, 70:11, 72:5
**correctly** [1] - 72:9
**corroborated** [1] - 39:3
**costs** [1] - 69:22
**counsel** [20] - 2:8, 2:14, 3:14, 8:20, 14:10, 14:11, 34:13, 35:18, 54:22, 60:21, 60:23, 61:1, 62:6, 62:19, 65:25, 69:23, 69:24, 70:7, 71:12, 72:12
**counseling** [2] - 56:7, 68:22
**Count** [13] - 9:6, 9:10, 9:13, 10:4, 10:12, 10:14, 10:25, 11:6, 11:11, 21:20, 22:2, 35:24, 36:2
**count** [3] - 11:7, 12:5, 66:17
**country** [1] - 54:2
**counts** [1] - 70:4
**Counts** [11] - 9:8, 9:15, 11:5, 35:12, 35:23, 36:5, 36:6, 36:18, 66:15, 70:5, 70:21
**couple** [1] - 46:15
**course** [8] - 3:16, 4:7, 19:7, 19:19, 37:9, 37:10, 42:23, 50:6
**Court** [39] - 2:2, 2:4, 3:5, 4:1, 4:8, 11:23, 12:5, 12:6, 12:10, 12:16, 13:23, 14:11, 15:2, 22:16, 26:25, 36:10, 39:7, 39:9, 39:11, 40:24, 47:21, 55:16, 56:3, 58:1, 58:4, 60:3, 62:11, 62:12, 62:23, 62:25, 65:3, 66:5, 66:14, 66:17, 69:24, 72:3, 72:4, 72:17
**court** [10] - 3:4, 3:20, 4:1, 17:17, 27:6, 52:17, 54:13, 56:1, 56:23, 63:21
**COURT** [146] - 1:1, 1:23, 2:14, 2:19, 3:6, 4:21, 4:24, 5:18, 6:1, 6:4, 7:3, 7:7, 7:12, 7:14, 7:16, 7:19, 7:21, 7:25, 8:4, 8:7, 8:10, 8:14, 8:17, 8:22, 9:2, 9:6, 9:18, 9:21, 9:24, 10:14, 11:2, 11:15, 11:19, 12:3, 12:9, 12:15, 12:21, 13:7, 13:21, 14:1, 14:9, 14:16, 15:11, 15:18, 15:21, 16:7, 16:10, 16:17, 16:21, 16:23, 16:25, 17:15, 17:23, 18:4, 18:10, 18:19, 18:24, 19:2, 19:5, 19:9, 19:14, 19:19, 19:21, 19:24, 20:3, 20:12, 20:17, 20:22, 20:25, 21:12, 22:18, 22:21, 23:6, 24:3, 24:15, 24:21, 25:5, 25:20, 26:5, 26:12, 26:17, 26:22, 27:5, 27:13, 27:19, 27:25, 28:7, 28:11, 28:14, 28:18, 28:21, 34:14, 34:19, 34:22, 34:25, 35:4, 35:8, 35:11, 36:10, 37:7, 37:16, 38:3, 38:10, 38:14, 38:19, 40:6, 40:10, 40:17, 40:19, 40:24, 41:17, 41:21, 41:25, 42:5, 42:11, 42:15, 42:18, 45:3, 45:7, 46:15, 48:21, 50:12, 51:10, 52:4, 58:6, 59:7, 60:17, 61:6, 61:14, 61:20, 62:3, 62:6, 62:15, 62:19, 63:5, 63:10, 63:15, 63:17, 63:20, 63:24, 67:24, 70:3, 70:12, 71:6, 71:11, 71:15
**Court's** [1] - 17:18
**courthouse** [1] - 13:10
**courtroom** [1] - 14:19
**Courts** [1] - 65:23
**covered** [1] - 45:24
**COVID-19** [3] - 4:1, 4:7, 39:13
**coworkers** [1] - 34:1
**crafting** [1] - 55:9
**create** [2] - 43:3, 50:3
**creating** [1] - 29:22
**creation** [1] - 48:17
**crime** [14] - 6:9, 6:11, 12:5, 12:24, 13:8, 45:9, 46:23, 47:2, 47:8, 64:15, 65:20, 66:12, 67:19, 68:3
**crimes** [9] - 12:11, 12:24, 21:6, 25:12, 30:8, 42:25, 46:11, 46:20, 58:18
**Criminal** [2] - 2:4, 37:10
**CRIMINAL** [1] - 1:5
**criminal** [32] - 21:8, 22:12, 23:15, 23:16, 23:19, 23:21, 25:12, 26:18, 38:11, 38:18, 39:2, 39:21, 41:4, 44:4, 44:23, 45:10, 45:12, 45:23, 46:17, 47:5, 47:12, 48:3, 48:8, 49:16, 49:23, 54:3, 55:9, 65:10, 65:21, 65:24, 68:16
**cross** [1] - 14:21
**cross-examine** [1] - 14:21
**crossed** [2] - 31:22, 43:18
**CRR** [2] - 1:24, 72:16
**culpable** [1] - 46:1
**current** [1] - 30:13
**custody** [2] - 4:5, 70:23

## D

**dangerous** [3] - 21:25, 48:6, 66:4
**date** [1] - 72:7
**dated** [1] - 18:20
**days** [1] - 69:20
**deal** [2] - 63:13, 70:12
**dealing** [1] - 38:16
**debate** [1] - 45:19
**December** [3] - 33:9, 33:21, 52:22
**DECEMBER** [1] - 1:11
**decide** [3] - 25:14, 25:25, 26:12
**decision** [1] - 27:9
**decisions** [4] - 8:11, 17:18, 53:3, 54:21
**Dedjinou** [1] - 2:12
**deemed** [1] - 51:16
**Defendant** [1] - 1:9
**defendant** [22] - 3:13, 3:19, 4:4, 4:10, 4:11, 4:25, 22:9, 25:9, 29:15, 35:6, 35:19, 36:11, 36:12, 36:17, 39:2, 42:25, 44:16, 61:9, 63:23, 64:15, 65:9
**DEFENDANT** [83] - 1:18, 4:19, 4:23, 6:3, 6:23, 7:1, 7:6, 7:11, 7:13, 7:15, 7:18, 7:20, 7:23, 8:3, 8:6, 8:9, 8:13, 8:16, 8:21, 9:1, 9:5, 9:17, 9:20, 9:23, 10:13, 11:1, 11:18, 12:2, 12:8, 12:14, 12:20, 13:6, 13:20, 13:25, 14:8, 14:15, 15:6, 15:16, 15:20, 17:14, 17:22, 18:3, 18:9, 18:18, 18:23, 19:1, 19:4, 20:21, 20:24, 21:11, 22:20, 23:5, 24:2, 24:14, 24:20, 25:4, 25:19, 26:4, 26:11, 26:16, 26:21, 27:4, 27:12, 27:18, 27:24, 28:6, 28:10, 28:13, 28:17, 28:20, 34:17, 34:21, 34:24, 35:2, 35:17, 36:1, 36:4, 36:8, 62:2, 62:5, 63:16, 63:19, 70:2
**defendant's** [2] - 37:17, 39:4
**defendants** [2] - 25:13, 57:10
**defense** [12] - 2:14, 3:9, 36:23, 37:6, 37:8, 38:22, 55:9, 57:11, 59:1, 60:22, 61:1, 70:7
**define** [2] - 47:10, 48:8
**defined** [2] - 47:21, 48:4
**defining** [1] - 46:16
**definition** [1] - 60:8
**Delaware** [9] - 7:24, 8:2, 33:8, 33:9, 33:10, 44:13, 44:15, 49:18, 49:20
**delay** [3] - 3:22, 4:3, 4:8
**delivering** [1] - 54:15
**delivers** [1] - 33:25
**DelTech** [1] - 7:24
**demonstrate** [1] - 52:24
**Denton** [1] - 54:17
**depart** [2] - 15:21, 24:17
**departure** [16] - 22:7, 24:5, 24:25, 25:21, 34:5, 40:11, 40:16, 40:25, 41:6, 44:22, 47:4, 50:11, 53:18, 65:1, 66:1, 66:6
**deportation** [1] - 18:14
**deprive** [1] - 18:5
**DEPUTY** [24] - 2:1, 5:6, 5:9, 5:12, 5:15, 5:21, 5:25, 6:21, 6:24, 7:2, 15:24, 16:5, 16:12, 16:16, 16:20, 35:13, 35:18, 35:22, 36:2, 36:5, 36:9, 41:23, 42:9, 71:13
**described** [5] - 18:1, 23:8, 28:15, 38:4, 45:13
**describes** [1] - 47:20
**describing** [1] - 29:19
**description** [1] - 32:18
**designated** [2] - 66:21, 70:24
**designation** [1] - 39:14
**destroyed** [1] - 55:22
**detail** [1] - 20:15
**detention** [12] - 3:13, 4:6, 38:7, 38:25, 39:6, 39:7, 39:12, 46:18, 50:7, 54:19, 55:1, 55:21
**determination** [1] - 70:17
**deterrence** [4] - 25:11, 45:17, 45:21, 66:9
**device** [1] - 21:18
**devices** [1] - 30:1
**diabetes** [1] - 62:4

**diabetic** [1] - 62:5
**different** [8] - 23:11, 23:14, 24:9, 24:11, 24:23, 26:7, 31:2, 69:11
**dimethyltryptamine** [1] - 33:22
**direct** [1] - 16:14
**direction** [5] - 32:2, 64:2, 67:5, 67:6, 69:12
**directly** [3] - 37:13, 45:11, 63:4
**disagree** [1] - 58:19
**disagreement** [1] - 57:11
**disassociated** [1] - 45:17
**disavowed** [1] - 34:8
**disclose** [1] - 36:22
**disclosures** [1] - 36:25
**disconnect** [2] - 41:24, 42:6
**discourage** [1] - 55:23
**discretion** [1] - 59:12
**discuss** [4] - 4:22, 35:5, 64:6, 70:25
**discussed** [16] - 4:15, 9:18, 20:15, 21:9, 25:17, 29:22, 33:14, 33:18, 33:22, 34:25, 44:12, 44:19, 49:24, 49:25, 65:2, 71:2
**discusses** [1] - 47:22
**discussing** [3] - 19:2, 54:22, 59:18
**discussion** [5] - 31:9, 49:1, 52:4, 64:18, 64:21
**discussions** [4] - 20:9, 53:23, 68:7, 68:8
**dismiss** [2] - 70:4, 70:5
**dismissal** [1] - 17:20
**dismissed** [1] - 70:22
**disparate** [1] - 46:5
**disparities** [2] - 25:13, 45:25
**dispute** [6] - 39:1, 53:12, 53:14, 53:16, 53:21
**disregarded** [1] - 10:17
**distracting** [1] - 45:1
**distribution** [1] - 64:22
**DISTRICT** [3] - 1:1, 1:2, 1:11
**district** [1] - 3:24
**District** [4] - 2:2, 72:4
**DIVISION** [1] - 1:3
**Division** [1] - 30:7
**DMT** [7] - 33:22, 33:24, 33:25, 34:1, 34:2, 34:3, 44:20
**Docket** [1] - 2:5
**documents** [1] - 37:20
**domestic** [1] - 50:19
**done** [2] - 16:11, 62:19
**doors** [1] - 43:8
**doubt** [3] - 14:4, 14:6, 29:14
**down** [5] - 33:16, 44:4, 44:6, 57:22, 57:23
**draw** [2] - 17:9, 57:19
**dressed** [1] - 43:12
**drills** [1] - 30:25
**drive** [1] - 44:4
**drives** [1] - 44:9
**driving** [1] - 32:7
**drop** [1] - 60:9
**dropped** [1] - 32:14
**dropping** [1] - 2:13
**drove** [5] - 32:12, 32:21, 33:3, 43:22, 44:12
**drug** [3] - 62:11, 64:21, 64:22
**drugs** [4] - 8:5, 8:8, 56:9, 68:8
**Due** [1] - 36:21
**due** [1] - 4:2
**duplication** [1] - 44:21
**during** [15] - 3:16, 4:6, 6:20, 11:22, 14:13, 17:18, 19:7, 29:4, 32:13, 38:25, 39:5, 51:6, 52:1, 67:13, 68:14

**E**

**early** [2] - 2:13, 33:20
**East** [2] - 32:8, 32:12
**ECF** [3] - 37:18, 37:19, 37:22
**echo** [4] - 41:17, 41:20, 42:16, 60:25
**educate** [2] - 55:2, 55:14
**educated** [1] - 55:8
**education** [1] - 7:22
**efforts** [2] - 53:9, 53:10
**either** [6] - 16:14, 21:14, 42:12, 45:1, 47:8, 59:3
**electronic** [1] - 15:23
**elements** [2] - 10:1, 36:16
**encapsulate** [1] - 51:7
**Encarnacion** [4] - 40:7, 71:6, 71:12, 71:14
**ENCARNACION** [2] - 40:9, 71:8
**encouragement** [1] - 33:13
**encrypted** [2] - 29:21, 43:9
**end** [4] - 5:2, 29:2, 61:3, 70:17
**enforcement** [1] - 53:10
**engage** [7] - 22:11, 34:7, 48:13, 49:5, 64:24, 66:11, 67:9
**engaged** [1] - 66:10
**engineering** [1] - 30:15
**ensure** [1] - 13:13
**enter** [7] - 6:18, 10:18, 22:10, 26:25, 36:12, 41:2, 48:12
**entered** [11] - 10:6, 18:19, 22:15, 25:24, 29:10, 31:20, 32:5, 34:6, 53:21, 54:2, 68:4
**entering** [1] - 43:18
**enterprise** [1] - 43:15
**entertained** [1] - 56:10
**entry** [1] - 69:20
**episode** [1] - 68:3
**errors** [1] - 17:19
**especially** [1] - 55:7
**ESQUIRE** [4] - 1:14, 1:15, 1:19, 1:20
**essential** [1] - 36:16
**establish** [1] - 3:11
**established** [1] - 21:4
**ethno** [3] - 29:23, 43:3, 48:17
**ethno-state** [3] - 29:23, 43:3, 48:17
**evaluate** [1] - 56:18
**evaluation** [2] - 56:12, 56:13
**evening** [3] - 32:15, 33:1, 33:20
**event** [1] - 45:11
**events** [2] - 23:11, 65:11
**evidence** [5] - 14:25, 17:9, 17:12, 37:5, 38:24
**Ewing** [4] - 1:24, 72:3, 72:15, 72:16
**examination** [1] - 39:20
**examine** [1] - 14:21
**example** [1] - 47:6
**exceptionally** [1] - 42:24
**exclusion** [1] - 18:15
**exculpatory** [2] - 36:22, 37:5
**excuse** [1] - 65:19
**exhibits** [3] - 37:21, 38:6, 38:8
**exists** [1] - 51:2
**exits** [1] - 51:3
**expected** [2] - 26:8, 33:15
**experience** [1] - 62:25
**experiences** [1] - 30:15
**experts** [1] - 70:19
**explosive** [1] - 30:1
**explosives** [1] - 30:10
**express** [1] - 57:18
**extent** [4] - 37:4, 50:16, 56:17, 57:17
**extremely** [1] - 66:4
**extremist** [1] - 43:2

**F**

**faces** [1] - 46:8
**facilitating** [1] - 68:13
**facility** [5] - 4:8, 51:4, 54:19, 55:1, 61:25
**fact** [9] - 10:17, 28:23, 34:23, 36:15, 36:25, 53:21, 53:25, 55:21, 70:15
**factors** [11] - 21:7, 25:7, 25:14, 42:21, 45:24, 54:8, 64:1, 64:7, 65:8, 65:25, 66:2
**facts** [3] - 28:25, 29:13, 64:24
**Facts** [13] - 29:8, 29:11, 34:5, 34:11, 38:2, 38:24, 41:6, 44:24, 48:19, 50:6, 50:10, 50:21, 53:5
**factual** [5] - 28:25, 34:15, 34:16, 51:1, 51:5
**failing** [1] - 36:24
**fair** [3] - 13:13, 48:5, 61:11
**false** [1] - 7:9
**falsely** [1] - 7:8
**familiar** [1] - 22:19
**family** [6] - 38:6, 52:16, 55:9, 68:18, 68:24, 69:10
**far** [4] - 7:19, 7:21, 53:11, 68:17
**farmlands** [1] - 54:17
**fashion** [3] - 3:12, 4:17, 60:2
**fast** [1] - 54:13
**FBI** [2] - 43:1, 44:18
**FCI** [1] - 66:21
**FCIs** [1] - 70:7
**feature** [1] - 16:2
**Federal** [2] - 70:8, 70:9
**federal** [10] - 6:9, 12:5, 18:12, 25:7, 26:17, 45:12, 54:13, 56:23, 64:12, 70:15
**fee** [1] - 69:24
**fellow** [1] - 32:5
**felon** [2] - 47:1, 56:23
**felonies** [1] - 18:5
**felons** [7] - 51:7, 56:21, 56:24, 57:4, 58:4, 59:13, 67:13
**felony** [6] - 34:3, 48:5, 48:6, 49:22
**few** [2] - 9:25, 32:15
**field** [1] - 55:9
**figure** [1] - 56:16
**file** [3] - 69:19, 69:21, 71:8
**filing** [2] - 50:8, 69:24
**finalize** [1] - 4:10
**findings** [3] - 3:23, 38:19, 39:23
**fine** [5] - 11:9, 11:13, 40:1, 46:13, 66:22
**finish** [1] - 61:14
**finished** [1] - 7:25
**firearm** [7] - 18:7, 22:1, 30:25, 53:24, 58:9, 67:18, 68:5
**firearms** [12] - 47:7, 58:22, 58:23, 58:25, 59:3, 59:23, 60:2, 60:14, 61:11, 67:15, 68:6, 68:8
**firing** [1] - 31:8
**first** [14] - 3:11, 3:23, 10:5, 10:15, 11:20, 12:23, 21:1, 22:18, 22:23, 27:8, 36:20, 47:19, 64:8, 67:1
**First** [8] - 47:14, 47:16, 47:17, 57:13, 58:12, 59:21, 59:24, 60:24
**fit** [1] - 49:19

**Five** [5] - 9:13, 22:2, 36:6, 70:6, 70:22
**five** [11] - 11:11, 22:16, 25:1, 25:23, 26:1, 26:13, 38:21, 45:20, 46:8, 54:24, 66:6
**five-year** [8] - 22:16, 25:1, 26:1, 26:13, 38:21, 45:20, 46:8, 66:6
**flag** [2] - 31:6, 32:16
**fled** [1] - 31:20
**focus** [2] - 46:20, 50:9
**folks** [2] - 51:8, 61:2
**follow** [3] - 11:23, 25:25, 69:3
**followed** [1] - 66:18
**following** [4] - 11:21, 29:13, 31:3, 66:25
**follows** [1] - 66:15
**FOR** [3] - 1:2, 1:13, 1:18
**forced** [1] - 17:7
**foregoing** [1] - 72:5
**foreign** [6] - 50:17, 50:19, 51:13, 55:18, 59:15, 67:9
**forfeit** [2] - 12:16, 26:24
**forfeiture** [2] - 27:1, 67:21
**form** [1] - 30:12
**formal** [1] - 41:8
**formally** [5] - 40:13, 40:16, 53:15, 57:6, 69:5
**forth** [1] - 54:8
**Four** [4] - 9:9, 36:6, 70:6, 70:22
**four** [3] - 51:2, 52:21, 55:13
**four-month** [1] - 52:21
**fourth** [1] - 10:21
**frankly** [1] - 54:23
**free** [1] - 28:19
**Free** [2] - 31:11, 43:16
**friends** [5] - 38:6, 55:7, 56:16, 68:18
**front** [2] - 29:8, 61:5
**full** [5] - 6:25, 27:20, 27:22, 28:1, 28:4
**fully** [5] - 8:19, 9:18, 36:11, 52:24, 53:2
**furtherance** [1] - 10:22
**furthermore** [1] - 33:17
**future** [3] - 8:12, 55:12, 69:14

## G

**gap** [1] - 63:1
**GARFIELD** [2] - 1:8, 6:23
**Garfield** [1] - 2:6
**Garfiled** [2] - 7:1, 29:15
**gathering** [1] - 64:25
**gender** [1] - 30:16
**general** [8] - 9:19, 24:5, 45:21, 46:9, 52:23, 56:25, 60:8, 70:14
**generally** [5] - 22:18, 26:23, 27:6, 63:7, 69:16
**Georgetown** [1] - 7:24
**Georgia** [8] - 30:22, 32:21, 32:23, 32:24, 33:3, 43:10, 44:4, 49:15
**given** [5] - 17:25, 27:7, 27:8, 27:14, 59:25
**goal** [2] - 43:2, 48:16
**Government** [1] - 50:4
**government** [34] - 10:2, 10:5, 10:11, 10:15, 10:24, 11:4, 12:25, 13:23, 14:3, 14:5, 16:25, 19:6, 20:15, 22:3, 22:4, 24:4, 25:21, 27:21, 27:23, 28:2, 28:5, 29:1, 34:12, 34:19, 36:22, 36:25, 37:3, 37:12, 40:4, 41:12, 43:6, 57:12, 70:4
**government's** [5] - 34:15, 37:19, 40:22, 61:19, 70:21
**graduated** [1] - 7:25
**grandmother** [6] - 52:15, 54:17, 54:23, 55:21, 65:12, 68:24
**grant** [1] - 70:21
**gravity** [1] - 55:3
**greater** [2] - 54:7, 64:3
**greatly** [1] - 53:25
**GREENBELT** [1] - 1:12
**Greenbelt** [2] - 1:16, 1:21
**ground** [1] - 45:11
**group** [7] - 30:8, 30:18, 43:1, 43:2, 43:3, 43:5, 47:7
**groups** [1] - 57:25
**growing** [1] - 65:12
**guaranteed** [1] - 14:13
**guess** [2] - 45:3, 48:9
**Guideline** [5] - 21:21, 21:25, 22:9, 40:11, 40:25
**guideline** [14] - 22:2, 24:7, 24:16, 24:17, 24:18, 24:24, 24:25, 25:15, 25:22, 39:24, 39:25, 40:1, 41:7, 64:1
**Guidelines** [1] - 21:3
**guidelines** [14] - 21:3, 21:9, 21:14, 21:20, 22:13, 22:25, 23:2, 23:10, 23:25, 24:16, 25:5, 39:1, 39:18, 48:4
**guilt** [2] - 13:15, 14:6
**guilty** [55] - 3:9, 3:18, 6:5, 6:8, 6:9, 6:13, 9:15, 9:25, 10:3, 10:11, 10:24, 11:3, 12:6, 12:22, 12:25, 13:1, 13:2, 13:3, 13:9, 13:14, 13:16, 14:3, 17:15, 17:23, 17:24, 18:4, 18:5, 18:12, 26:2, 26:6, 26:9, 26:14, 27:10, 28:9, 28:12, 28:15, 28:18, 28:21, 28:23, 34:22, 34:23, 35:25, 36:1, 36:3, 36:4, 36:5, 36:6, 36:14, 36:18, 63:21
**gun** [2] - 31:5, 31:8
**guns** [1] - 43:13

## H

**half** [1] - 52:14
**hand** [2] - 6:22, 6:24
**handcuffs** [1] - 54:12
**handle** [1] - 15:12
**handled** [2] - 53:24, 64:18
**harbor** [1] - 9:11
**harbored** [1] - 22:10
**harboring** [1] - 9:13
**hard** [1] - 19:9
**harm** [3] - 4:3, 4:9, 56:11
**harms** [1] - 3:22
**hate** [1] - 30:8
**havoc** [2] - 50:3, 53:8
**head** [1] - 69:11
**headed** [1] - 32:12
**health** [9] - 3:21, 3:25, 4:2, 51:18, 51:20, 56:7, 56:14, 59:11, 67:6
**hear** [10] - 6:1, 6:3, 8:15, 13:11, 19:10, 19:20, 41:21, 42:15, 42:16, 62:7
**heard** [12] - 11:19, 11:20, 12:3, 22:23, 24:3, 25:20, 34:15, 40:19, 46:25, 63:6, 63:14, 63:16
**hearing** [9] - 2:12, 3:10, 3:17, 3:25, 5:1, 41:16, 50:7, 71:10, 71:16
**hearings** [2] - 46:18, 56:4
**heavily** [1] - 38:1
**heavy** [1] - 14:6
**help** [1] - 15:1
**helpful** [1] - 59:23
**helping** [2] - 54:17, 68:6
**hereafter** [1] - 45:2
**hereby** [1] - 72:5
**high** [2] - 8:1, 66:1
**higher** [6] - 17:16, 23:20, 24:18, 24:24, 27:6, 46:4
**highest** [1] - 7:22
**himself** [8] - 45:18, 52:12, 54:13, 54:18, 55:2, 55:13, 55:14, 65:6
**history** [14] - 21:8, 23:21, 25:8, 38:11, 38:18, 39:4, 39:21, 45:8, 45:10, 51:15, 51:20, 65:9, 65:23, 65:24
**hit** [1] - 45:11
**hold** [1] - 17:10
**holding** [2] - 31:5, 31:7
**Honor** [129] - 2:9, 2:11, 2:17, 3:1, 4:15, 4:20, 5:9, 5:13, 5:16, 5:22, 5:25, 7:6, 7:11, 7:15, 7:18, 8:3, 8:13, 8:16, 8:21, 9:1, 9:5, 9:17, 9:20, 9:23, 10:13, 11:1, 11:6, 11:18, 12:2, 12:8, 12:14, 12:20, 13:6, 13:20, 13:25, 14:8, 14:15, 15:6, 15:7, 15:25, 16:9, 17:14, 17:22, 18:3, 18:9, 18:18, 18:23, 19:11, 19:17, 20:8, 20:21, 21:11, 21:17, 21:19, 22:13, 22:14, 22:20, 24:2, 24:14, 24:20, 25:4, 25:19, 26:4, 26:11, 26:16, 26:21, 27:4, 27:12, 27:18, 28:10, 28:17, 28:20, 29:6, 34:18, 34:24, 35:3, 35:7, 35:10, 37:2, 38:1, 38:12, 38:13, 38:18, 40:4, 40:5, 40:9, 40:15, 40:18, 41:14, 42:2, 42:10, 42:14, 42:20, 42:21, 43:11, 44:24, 45:1, 45:6, 46:11, 46:12, 47:16, 48:19, 49:7, 50:6, 50:8, 50:17, 50:21, 50:22, 51:25, 52:9, 52:10, 52:22, 53:25, 56:6, 58:19, 60:22, 61:5, 61:12, 61:13, 61:17, 62:10, 62:18, 63:8, 63:12, 67:23, 70:2, 70:5, 70:6, 71:1
**Honor's** [1] - 49:17
**HONORABLE** [1] - 1:10
**Honorable** [1] - 2:3
**hope** [3] - 57:21, 61:17, 68:14
**hopefully** [1] - 69:13
**hours** [3] - 32:11, 33:20, 43:22
**house** [1] - 32:14
**housed** [1] - 51:8
**hurt** [1] - 56:13

## I

**I.T** [2] - 5:10, 5:15
**idea** [2] - 2:21, 41:22
**identification** [1] - 31:18
**identified** [1] - 43:17
**identify** [1] - 2:8
**ideologically** [1] - 46:22
**ideologies** [3] - 57:4, 57:17, 57:19
**ideology** [3] - 59:24, 64:15, 65:20
**Ill** [1] - 50:9
**illegal** [4] - 34:2, 49:7, 58:14, 64:21
**illegally** [4] - 31:20, 43:18, 44:10, 68:5
**illness** [1] - 8:5
**immediate** [1] - 37:17
**immigration** [1] -

18:14
**impartial** [1] - 13:14
**important** [3] - 12:22, 14:17, 45:21
**impose** [11] - 3:20, 25:15, 26:12, 27:15, 46:11, 46:12, 51:11, 63:2, 66:13, 66:22, 66:25
**imposed** [5] - 11:16, 11:23, 27:15, 64:3, 67:21
**imprisonment** [6] - 11:7, 11:11, 11:22, 22:16, 23:17, 66:17
**improvised** [1] - 30:1
**IN** [1] - 1:1
**in-court** [1] - 4:1
**in-person** [2] - 30:4, 31:16
**incarcerated** [2] - 54:9, 55:13
**incarceration** [1] - 39:13
**include** [3] - 25:7, 38:14, 63:22
**included** [4] - 37:21, 39:12, 49:12, 67:20
**includes** [4] - 30:6, 30:12, 37:17, 37:18
**including** [9] - 4:7, 18:14, 21:25, 29:24, 30:7, 32:16, 33:4, 37:21, 39:6
**increased** [1] - 21:24
**independent** [2] - 28:22, 36:15
**indicate** [1] - 62:13
**indicated** [3] - 53:12, 54:12, 63:2
**indicates** [1] - 58:21
**indictment** [9] - 9:3, 10:7, 35:12, 35:15, 35:23, 36:7, 36:18, 52:20, 70:4
**individual** [1] - 69:6
**individuals** [4] - 43:5, 43:12, 57:6, 65:4
**inference** [1] - 17:10
**infiltrated** [1] - 43:17
**infiltration** [1] - 31:12
**influence** [2] - 8:7, 65:15
**information** [3] - 38:23, 39:4, 39:10
**informed** [1] - 36:12
**injury** [1] - 48:7
**innocent** [4] - 12:24, 14:2, 14:5, 53:9
**inside** [1] - 54:12
**instead** [2] - 13:22, 26:2
**instruct** [2] - 14:4, 17:9
**intend** [2] - 9:15, 9:25
**intended** [5] - 22:10, 41:2, 48:12, 49:25, 53:16
**intending** [1] - 43:25
**intent** [2] - 43:6, 53:20
**intention** [2] - 48:10, 48:23
**interacted** [1] - 34:9
**interacting** [1] - 69:6
**interactions** [1] - 59:19
**interested** [2] - 30:9, 72:12
**interests** [4] - 3:22, 4:4, 4:9, 39:15
**interfere** [1] - 59:24
**Internet** [3] - 41:15, 65:14, 69:6
**interrupt** [2] - 15:7, 41:16
**interview** [2] - 31:15, 71:10
**interviewed** [1] - 31:14
**involve** [1] - 69:1
**involved** [5] - 46:2, 65:18, 65:19, 68:8, 68:25
**involvement** [1] - 65:21
**involving** [5] - 24:9, 41:4, 64:9, 68:3, 68:7
**isolated** [1] - 45:11
**issue** [14] - 4:14, 5:4, 5:18, 5:19, 5:21, 15:2, 20:4, 46:17, 51:22, 56:12, 56:20, 58:6, 60:7, 63:11
**issues** [4] - 4:6, 51:18, 60:5, 62:9
**items** [1] - 58:12
**itself** [6] - 47:8, 47:25, 60:12, 64:11, 67:19, 68:2
**IV** [5] - 1:8, 2:6, 6:23, 7:1, 29:15
**Ivy** [2] - 1:15, 1:20

## J

**jail** [4] - 2:22, 5:19, 5:23, 20:4
**January** [2] - 54:10, 65:7
**Jewish** [1] - 29:24
**Jewish-Americans** [1] - 29:24
**job** [1] - 56:15
**join** [1] - 45:22
**joint** [2] - 25:1, 66:5
**jointly** [1] - 25:23
**Jordan** [1] - 29:17
**Judge** [2] - 35:13, 71:17
**judge** [4] - 3:23, 5:6, 13:22, 19:20
**JUDGE** [1] - 1:11
**judgment** [1] - 69:20
**jumpsuit** [1] - 54:19
**June** [1] - 72:17
**jurors** [2] - 13:11, 13:13
**jury** [9] - 6:12, 13:9, 13:12, 13:14, 13:18, 13:22, 14:4, 17:9, 18:7
**justice** [6] - 3:22, 4:4, 4:9, 12:23, 26:18, 39:15
**justified** [1] - 54:6

## K

**kin** [1] - 72:12
**kind** [5] - 8:5, 39:2, 54:13, 68:12, 68:25
**kneeling** [1] - 31:6
**knowing** [4] - 22:10, 36:14, 41:2, 48:12
**knowingly** [3] - 6:14, 6:17, 10:8
**knowledge** [1] - 53:20
**known** [1] - 43:25
**knows** [6] - 22:14, 34:2, 43:24, 44:10, 44:11, 52:22

## L

**lack** [1] - 65:24
**Lane** [2] - 1:15, 1:20
**large** [1] - 64:24
**largely** [1] - 62:3
**last** [5] - 4:11, 17:2, 52:13, 54:20, 61:20
**late** [2] - 32:19, 43:15
**law** [12] - 10:16, 10:19, 10:22, 25:7, 25:10, 37:4, 45:14, 53:10, 66:8, 68:12, 68:15, 69:14
**law-abiding** [2] - 68:15, 69:14
**lead** [2] - 65:21, 69:13
**leader** [1] - 65:5
**leadership** [2] - 31:14, 31:15
**leads** [1] - 23:1
**learned** [2] - 31:22, 54:20
**least** [14] - 5:1, 32:2, 32:13, 33:4, 33:9, 33:14, 42:3, 44:9, 46:1, 47:9, 51:15, 56:18, 63:14, 70:18
**leave** [1] - 15:11
**leaves** [2] - 57:3, 57:7
**led** [2] - 31:18, 65:15
**left** [1] - 45:5
**legal** [1] - 12:4
**Lemley** [35] - 29:17, 30:23, 31:1, 31:4, 31:21, 31:25, 32:3, 32:6, 32:10, 32:13, 32:19, 32:25, 33:2, 33:7, 33:13, 33:15, 33:17, 33:21, 43:20, 43:21, 44:3, 44:5, 44:7, 44:14, 46:4, 49:25, 53:22, 54:1, 54:4, 59:14, 64:16, 65:4, 67:11, 68:3
**Lemley's** [4] - 30:23, 31:25, 33:3, 33:12
**length** [1] - 20:11
**less** [1] - 61:3
**letters** [5] - 38:6, 39:5, 39:6, 65:16, 68:19
**level** [12] - 7:22, 21:21, 21:22, 21:24, 22:3, 23:2, 23:9, 23:21, 24:10, 24:12, 39:20
**Level** [4] - 23:13, 23:14, 23:17, 23:23
**levels** [1] - 23:12
**life** [1] - 69:14
**light** [2] - 39:11, 58:17
**likely** [2] - 43:16, 58:23
**limited** [2] - 58:4, 65:4
**line** [10] - 2:11, 2:20, 3:14, 16:4, 16:5, 16:14, 43:16, 50:1, 57:19
**linked** [1] - 30:8
**listed** [1] - 23:11
**listen** [2] - 6:16, 53:5
**listening** [1] - 43:16
**literature** [1] - 52:23
**lived** [1] - 33:7
**living** [1] - 54:16
**local** [1] - 31:17
**location** [2] - 47:7, 49:15
**look** [1] - 43:12
**looked** [1] - 51:13
**looks** [1] - 42:12
**losses** [1] - 12:12
**loud** [2] - 20:5, 23:7
**lower** [2] - 6:24, 24:18

## M

**machine** [1] - 72:9
**man** [1] - 54:11
**mandating** [1] - 22:16
**mandatory** [2] - 11:9, 11:13
**manufacture** [4] - 33:22, 33:24, 44:20, 49:21
**manufacturing** [2] - 64:21, 64:22
**MARCUS** [1] - 1:19
**Mark** [1] - 29:17
**marshal's** [1] - 70:23
**MARYLAND** [2] - 1:2, 1:12
**Maryland** [17] - 1:16, 1:21, 2:2, 7:15, 13:10, 32:1, 32:13, 32:14, 32:20, 33:3, 33:5, 36:23, 44:13, 49:14, 49:22, 54:17, 72:4
**material** [1] - 36:23
**materials** [4] - 37:24, 39:5, 42:22, 69:5
**Mathews** [58] - 29:17, 31:16, 31:18, 31:20, 31:22, 32:2, 32:4, 32:5, 32:7, 32:8, 32:12, 32:22, 33:2, 33:7, 33:11, 33:12, 33:13, 33:15, 33:18, 33:21, 33:25, 34:6, 34:10, 41:1, 41:5, 43:17, 43:21, 43:23, 43:25, 44:5, 44:6, 44:10, 44:13, 44:14, 44:15, 46:4, 48:15, 48:23, 48:24, 49:4, 49:8, 49:12, 49:13, 49:20, 49:25, 53:22, 54:1, 54:2, 54:4, 59:14, 64:10, 64:13, 64:16, 64:19, 67:11, 68:4
**Mathews'** [2] - 31:9, 53:20
**matter** [3] - 2:4, 57:24, 72:7
**mature** [1] - 53:2
**maturing** [1] - 52:25

**maximum** [9] - 11:4, 11:7, 11:8, 11:9, 11:11, 11:12, 11:13, 11:16, 25:16
**mean** [5] - 6:10, 23:4, 46:24, 51:10, 70:12
**meaning** [3] - 13:15, 14:18, 47:23
**means** [4] - 30:11, 53:1, 53:2, 60:12
**medical** [4] - 61:25, 66:21, 70:15, 70:19
**Medical** [2] - 70:8, 70:9
**medication** [1] - 8:8
**meet** [1] - 39:10
**meeting** [2] - 31:16, 50:23
**meetings** [1] - 30:5
**Megan** [2] - 2:16, 3:1
**MEGAN** [1] - 1:20
**member** [12] - 10:8, 29:16, 31:15, 31:17, 31:19, 32:5, 42:25, 44:2, 44:11, 45:21, 48:15, 64:16
**member's** [1] - 32:22
**members** [16] - 29:18, 29:21, 30:3, 30:6, 30:17, 30:21, 33:19, 43:19, 46:20, 52:2, 52:17, 57:1, 57:5, 57:6, 59:19, 68:11
**membership** [1] - 30:6
**memo** [1] - 38:9
**memos** [1] - 50:7
**mental** [7] - 8:5, 51:18, 51:20, 56:7, 56:14, 59:11, 67:6
**mentioned** [4] - 24:22, 26:22, 27:5, 55:2
**mentioning** [1] - 24:21
**messaging** [1] - 30:18
**met** [1] - 31:19
**methods** [2] - 67:3
**Michigan** [3] - 32:1, 32:11, 43:23
**microphone** [2] - 19:15, 20:5
**might** [10] - 2:21, 47:8, 49:7, 51:15, 57:5, 59:23, 62:10, 66:11, 66:12, 71:4
**miles** [2] - 32:1, 43:22
**military** [7] - 29:25, 30:5, 30:10, 30:14, 43:5, 43:13, 58:8
**military-style** [1] - 29:25
**minorities** [1] - 43:4
**minority** [2] - 29:23, 48:18
**minute** [2] - 15:17, 45:5
**Miss** [3] - 15:22, 16:10, 16:18
**mistaken** [1] - 62:4
**mitigating** [1] - 65:25
**modification** [1] - 59:17
**moment** [3] - 5:6, 5:9, 63:11
**month** [2] - 31:24, 52:21
**months** [10] - 23:17, 23:18, 23:22, 25:23, 27:16, 39:25, 54:11, 55:10, 64:6, 66:18
**morning** [4] - 2:9, 2:14, 2:25, 33:20
**most** [6] - 4:5, 23:20, 38:1, 51:6, 64:11, 68:3
**mother** [1] - 52:16
**motion** [5] - 38:7, 40:13, 40:16, 40:22, 70:21
**motions** [1] - 37:17
**motivated** [1] - 43:2
**move** [4] - 15:25, 16:2, 36:19, 37:8
**moved** [1] - 60:18
**moving** [2] - 22:4, 39:14
**MR** [45] - 2:9, 2:16, 2:25, 4:15, 5:8, 11:6, 15:7, 16:4, 16:14, 21:17, 29:6, 35:7, 37:2, 37:15, 38:1, 38:12, 38:17, 40:4, 40:15, 40:18, 41:14, 41:18, 42:2, 42:7, 42:14, 42:17, 42:20, 45:5, 45:8, 47:15, 48:22, 50:15, 51:25, 60:6, 60:22, 61:12, 61:13, 61:23, 62:10, 63:12, 67:23, 70:5, 70:11, 71:1, 71:17
**MS** [22] - 16:9, 16:24, 19:8, 19:11, 19:17, 19:20, 19:22, 19:25, 20:7, 20:14, 35:10, 35:21, 38:5, 38:13, 40:5, 40:21, 52:9, 58:19, 61:17, 62:18, 62:21, 63:8
**multiple** [1] - 20:9
**must** [4] - 6:13, 7:4, 12:5, 69:19
**mute** [7] - 2:15, 2:20, 21:18, 23:6, 29:3, 41:19, 42:10
**muted** [2] - 2:21, 41:18

## N

**name** [1] - 6:25
**narcotic** [1] - 8:5
**nationalist** [1] - 32:17
**nature** [5] - 25:7, 36:13, 55:11, 64:8, 66:2
**Nazi** [1] - 30:8
**necessary** [7] - 3:15, 14:11, 51:16, 54:7, 59:17, 64:3, 66:7
**need** [9] - 3:11, 4:11, 18:11, 19:15, 25:9, 28:22, 45:14, 71:4, 71:9
**needs** [2] - 47:13, 50:18
**negative** [1] - 17:10
**neo** [1] - 30:8
**neo-Nazi** [1] - 30:8
**never** [2] - 34:8, 54:11
**new** [3] - 6:18, 17:19, 37:4
**news** [1] - 53:6
**newspaper** [1] - 31:13
**next** [3] - 15:8, 30:19, 55:13
**niceties** [1] - 70:13
**NO** [1] - 1:5
**noise** [2] - 2:22, 20:4
**non** [2] - 38:15, 57:4
**non-convictions** [1] - 38:15
**non-felons** [1] - 57:4
**normal** [1] - 15:24
**Nos** [1] - 37:22
**Note** [7] - 22:8, 40:11, 40:25, 47:19, 48:3, 48:10, 49:19
**note** [2] - 17:5, 67:16
**noted** [4] - 47:17, 49:7, 59:21, 68:19
**NOTES** [1] - 1:25
**notes** [1] - 39:11
**nothing** [2] - 54:7, 62:6
**notice** [2] - 69:20, 69:21
**November** [2] - 32:24, 33:7
**number** [1] - 24:11
**numbers** [8] - 22:2, 22:24, 22:25, 23:4, 23:14, 23:17, 23:20, 39:22

## O

**oath** [3] - 6:16, 6:20, 7:4
**object** [1] - 56:6
**objection** [2] - 55:18, 62:15
**objections** [2] - 40:3, 40:21
**obligation** [2] - 24:8, 36:22
**obviously** [3] - 47:3, 55:9, 70:17
**occasion** [1] - 33:9
**October** [2] - 32:19, 44:3
**OF** [5] - 1:2, 1:5, 1:10, 1:14, 1:25
**Offense** [4] - 23:13, 23:14, 23:16, 23:23
**offense** [27] - 12:18, 18:12, 21:21, 21:23, 21:24, 23:2, 23:9, 23:12, 24:10, 24:12, 25:8, 25:10, 39:20, 42:24, 45:14, 49:14, 49:22, 52:12, 52:20, 53:2, 64:8, 64:11, 64:12, 65:1, 66:3, 66:8
**offenses** [6] - 10:1, 11:3, 21:8, 28:24, 34:23, 36:16
**offer** [5] - 19:12, 20:1, 20:9, 20:11, 61:15
**offers** [3] - 19:6, 20:13, 20:14
**office** [2] - 29:13, 52:18
**OFFICE** [1] - 1:14
**officer** [8] - 50:18, 50:20, 51:17, 59:12, 67:5, 67:7, 67:10, 71:3
**OFFICER** [2] - 40:9, 71:8
**OFFICIAL** [1] - 1:23
**Official** [1] - 72:3
**official** [1] - 72:17
**oftentimes** [1] - 52:24
**old** [3] - 7:12, 45:9, 52:19
**older** [1] - 54:1
**once** [6] - 30:16, 43:22, 55:17, 56:14, 62:19, 67:19
**One** [13] - 9:6, 9:15, 10:4, 10:12, 11:5, 11:6, 21:20, 35:12, 35:23, 35:24, 36:6, 36:18, 66:15
**one** [21] - 5:6, 5:9, 10:5, 13:22, 27:24, 31:4, 31:11, 33:9, 39:25, 45:5, 46:6, 46:19, 53:8, 54:10, 56:4, 57:17, 57:21, 58:11, 60:25, 67:16, 70:6
**online** [2] - 30:4, 30:11
**open** [1] - 57:7
**operates** [1] - 17:4
**opportunity** [8] - 3:15, 4:13, 8:24, 20:19, 26:1, 41:10, 47:15, 62:8
**oppose** [1] - 22:3
**opposed** [1] - 37:12
**option** [1] - 42:11
**oral** [1] - 41:10
**orange** [1] - 54:18
**orchestrated** [1] - 54:5
**order** [18] - 6:13, 10:2, 12:10, 12:16, 13:14, 27:1, 28:21, 32:2, 32:7, 43:12, 43:18, 45:23, 48:25, 49:2, 49:3, 55:20, 67:21, 70:10
**ordinarily** [2] - 37:10, 38:20
**ordinary** [2] - 37:9, 65:1
**organization** [8] - 29:16, 30:17, 33:19, 45:22, 61:10, 64:14, 65:16, 67:15
**organization's** [1] - 29:25
**organizations** [2] - 30:7, 30:14
**organized** [2] - 60:2, 60:11
**otherwise** [4] - 34:9, 38:8, 43:13, 57:8
**outbreak** [2] - 4:7, 39:13
**outcome** [2] - 54:24, 72:13
**outlined** [3] - 39:22, 41:5, 44:23
**outset** [1] - 65:22
**overall** [1] - 65:23
**overbroad** [1] - 58:2
**overthrow** [4] - 47:24,

48:16, 50:3
**overthrowing** [1] - 43:6
**owe** [1] - 12:6
**own** [4] - 14:23, 17:6, 28:19, 39:20
**ownership** [1] - 12:17

**P**

**p.m** [1] - 71:18
**page** [2] - 31:9, 34:12
**pages** [1] - 18:22
**panel** [1] - 13:9
**papers** [1] - 44:24
**paragraph** [3] - 27:20, 27:25, 31:3
**paragraphs** [1] - 29:20
**paramilitary** [1] - 49:6
**parents** [1] - 65:11
**parlance** [1] - 43:1
**parole** [2] - 26:17, 26:19
**part** [15] - 12:9, 12:15, 13:10, 26:23, 27:1, 27:13, 32:13, 33:4, 44:9, 47:7, 48:2, 48:10, 49:5, 52:4, 64:18
**participants** [1] - 60:10
**participate** [2] - 13:12, 68:7
**participated** [1] - 30:24
**participating** [1] - 64:13
**participation** [2] - 32:9, 48:25
**particular** [6] - 4:10, 27:20, 46:22, 51:23, 64:15
**particularly** [3] - 30:9, 65:24, 66:1
**parties** [20] - 3:19, 21:19, 22:7, 22:14, 22:15, 22:24, 23:1, 23:9, 25:1, 27:16, 29:10, 29:11, 34:4, 39:16, 39:18, 40:10, 49:11, 49:24, 53:13, 72:8
**parties'** [2] - 64:5, 66:5
**parts** [1] - 22:21
**party** [1] - 72:12
**passed** [1] - 33:11
**passport** [2] - 55:22, 55:24
**past** [1] - 51:21
**patches** [1] - 33:16
**path** [6] - 55:15, 57:22, 68:15, 68:17, 68:21, 68:23
**Patrik** [1] - 29:17
**Pause** [6] - 5:11, 5:14, 5:17, 5:24, 16:22, 42:8
**pay** [5] - 12:5, 12:10, 12:11, 66:23, 69:22
**penalties** [4] - 11:3, 11:5, 11:16, 25:16
**pending** [2] - 2:4, 37:1
**people** [7] - 33:25, 53:4, 57:8, 57:9, 57:24, 57:25, 69:6
**perfectly** [1] - 50:1
**perhaps** [6] - 56:9, 56:15, 59:4, 59:22, 62:12, 65:20
**period** [3] - 11:21, 51:6, 52:1
**perjury** [1] - 7:9
**permission** [3] - 50:17, 50:20, 67:10
**permit** [1] - 58:16
**permitted** [3] - 58:9, 67:9, 67:14
**person** [7] - 3:25, 10:18, 30:4, 31:16, 31:19, 50:23, 59:25
**person's** [2] - 18:13, 23:15
**personally** [1] - 52:14
**persons** [1] - 10:6
**perspective** [1] - 52:13
**perverse** [1] - 41:3
**phase** [1] - 36:19
**photograph** [1] - 31:7
**photographs** [2] - 31:3, 31:5
**phrase** [1] - 48:4
**phrased** [1] - 58:20
**physical** [1] - 48:7
**pick** [4] - 32:2, 32:4, 32:7, 43:23
**picked** [2] - 32:19, 48:23
**pictures** [1] - 43:11
**pizza** [2] - 33:25, 54:15
**place** [3] - 58:13, 70:9, 71:9
**placed** [1] - 35:16
**plain** [1] - 47:23
**Plaintiff** [1] - 1:6
**PLAINTIFF** [1] - 1:13
**plan** [3] - 43:25, 54:5, 64:24
**planned** [2] - 41:5, 64:19
**planning** [1] - 47:10
**plans** [1] - 44:19
**play** [2] - 46:6, 48:2
**plays** [1] - 60:9
**plea** [62] - 3:9, 3:18, 6:5, 6:8, 6:13, 6:18, 18:20, 18:23, 18:25, 19:6, 20:1, 20:9, 20:13, 20:14, 20:19, 20:22, 21:1, 21:13, 22:6, 22:15, 22:17, 23:25, 24:4, 24:22, 25:24, 26:2, 26:6, 26:8, 26:14, 26:24, 27:7, 27:10, 27:13, 27:19, 27:25, 28:1, 28:8, 28:15, 28:21, 28:23, 28:25, 29:10, 35:5, 35:9, 35:12, 35:24, 36:2, 36:5, 36:12, 36:14, 36:15, 36:17, 39:19, 40:10, 40:22, 41:9, 52:11, 52:20, 57:15, 63:21, 69:18
**plead** [12] - 6:5, 6:8, 9:15, 9:25, 12:6, 13:1, 13:2, 13:9, 18:4, 28:9, 28:12
**pleading** [7] - 6:9, 11:3, 12:22, 13:3, 17:23, 28:18, 34:22
**pleads** [1] - 18:12
**plus** [1] - 38:23
**point** [13] - 5:22, 15:19, 22:5, 26:6, 26:14, 31:21, 44:1, 49:17, 51:21, 58:9, 59:9, 60:1, 70:6
**policy** [1] - 63:21
**political** [1] - 46:22
**poor** [1] - 54:21
**position** [2] - 39:18, 69:8
**positions** [2] - 39:19, 41:10
**positive** [1] - 68:23
**possess** [3] - 18:7, 56:1, 58:9
**possessed** [1] - 22:1
**possessing** [1] - 59:2
**possession** [7] - 12:17, 49:13, 55:24, 56:2, 58:24, 60:14, 67:18
**possible** [2] - 21:15, 28:14
**post** [1] - 71:3
**potential** [6] - 4:2, 11:3, 58:17, 64:22, 66:4, 68:9
**practiced** [1] - 43:13
**preclude** [2] - 51:19, 59:21
**prepare** [1] - 69:21
**prepared** [3] - 5:2, 6:5, 6:8
**presence** [3] - 14:20, 30:11, 60:1
**present** [11] - 14:24, 17:8, 17:11, 44:10, 52:17, 53:22, 58:23, 59:23, 61:11, 67:15
**presentence** [3] - 37:11, 38:22, 51:12
**presiding** [1] - 2:3
**Press** [2] - 31:11, 43:16
**pressured** [1] - 28:11
**presumed** [2] - 14:2, 14:5
**pretrial** [3] - 3:13, 4:5, 4:6
**Pretrial** [3] - 37:23, 39:3, 51:14
**prevent** [4] - 18:15, 50:23, 51:1
**previously** [4] - 43:25, 44:5, 44:12, 72:7
**prison** [5] - 11:25, 26:18, 68:22, 69:2, 69:12
**Prisons** [4] - 39:15, 52:8, 61:22, 66:20
**private** [1] - 47:7
**privately** [1] - 3:15
**proactive** [1] - 45:20
**probation** [10] - 50:18, 50:19, 50:20, 51:17, 58:16, 59:12, 67:5, 67:6, 67:10, 71:3
**PROBATION** [2] - 40:9, 71:8
**problem** [2] - 20:3, 58:13
**problematic** [1] - 56:18
**problems** [1] - 40:7
**Procedure** [1] - 37:10
**proceed** [8] - 3:8, 3:12, 4:10, 4:14, 4:25, 37:13, 38:20, 39:16
**proceeded** [1] - 29:12
**proceeding** [7] - 3:3, 3:19, 3:20, 4:16, 4:17, 15:15, 63:22
**PROCEEDINGS** [1] - 1:10
**proceedings** [8] - 3:16, 4:2, 4:12, 6:20, 8:11, 38:25, 71:18, 72:6
**process** [2] - 13:13, 39:6
**Process** [1] - 36:21
**productive** [1] - 69:14
**professionals** [1] - 67:7
**profit** [1] - 21:23
**program** [2] - 62:13, 66:22
**prohibit** [1] - 58:1
**prohibited** [4] - 56:24, 57:9, 59:25, 60:15
**prohibiting** [2] - 55:18, 57:1
**promise** [1] - 55:12
**promises** [1] - 28:7
**promote** [4] - 25:10, 45:14, 49:3, 66:8
**propaganda** [1] - 30:5
**propagate** [1] - 45:23
**property** [5] - 12:16, 12:18, 26:24, 32:22, 32:23
**propose** [1] - 61:8
**proposed** [3] - 59:8, 60:21, 60:23
**prosecution** [1] - 7:9
**prosecutor** [5] - 21:12, 22:23, 23:8, 24:22, 28:24
**protect** [2] - 25:12, 59:1
**protected** [1] - 43:19
**proud** [1] - 68:24
**prove** [8] - 10:2, 10:5, 10:11, 10:15, 10:24, 14:2, 29:1, 62:24
**proven** [2] - 29:13, 47:9
**proves** [2] - 12:25, 14:3
**provide** [5] - 21:5, 25:11, 66:8, 66:9
**provided** [2] - 37:5, 49:9
**provides** [1] - 23:11
**proving** [1] - 14:6
**provision** [1] - 27:20
**provisionally** [1] - 5:1
**provisions** [2] - 21:1, 26:25
**proximity** [1] - 70:19
**PSI** [1] - 71:3
**PSR** [3] - 37:16, 71:7, 71:9

**public** [7] - 2:10, 3:21, 3:25, 16:4, 16:5, 25:12, 64:25
**published** [1] - 31:11
**punish** [2] - 45:15, 47:17
**punishment** [2] - 25:11, 66:9
**purchase** [1] - 49:10
**purchased** [4] - 32:25, 44:7, 46:25, 53:24
**purchasing** [1] - 47:1
**purpose** [3] - 2:6, 34:8, 54:2
**purposes** [3] - 39:7, 54:7, 64:4
**pursuant** [6] - 21:21, 21:22, 21:24, 22:6, 22:8, 40:22
**push** [1] - 29:3
**put** [5] - 16:5, 38:9, 50:7, 61:5, 69:8

## Q

**questions** [8] - 6:15, 7:5, 7:8, 14:21, 15:9, 21:16, 30:12, 46:15
**quick** [1] - 44:21

## R

**race** [1] - 30:16
**racially** [1] - 43:1
**raise** [1] - 6:22
**raised** [2] - 59:20, 65:12
**rally** [6] - 33:14, 41:4, 64:20, 65:7, 66:4, 68:9
**range** [14] - 21:5, 24:7, 24:16, 24:17, 24:18, 24:24, 24:25, 25:16, 25:22, 39:24, 39:25, 40:1, 41:7, 64:1
**rather** [2] - 49:2, 63:3
**rational** [1] - 60:14
**RDAP** [2] - 62:13, 66:22
**re** [1] - 39:8
**re-reviewed** [1] - 39:8
**reach** [2] - 24:9, 59:7
**reached** [1] - 58:3
**reaching** [3] - 24:6, 24:8, 25:6
**read** [4] - 5:1, 20:19, 42:22, 48:5
**reading** [1] - 51:14
**readjust** [1] - 59:4
**ready** [3] - 3:8, 63:11, 68:23
**really** [3] - 52:12, 55:2, 60:12
**realtime** [1] - 44:18
**rearraignment** [1] - 2:7
**reason** [3] - 8:10, 35:8, 41:15
**reasonable** [3] - 14:4, 14:6, 29:14
**reasons** [2] - 24:17, 66:21
**recap** [1] - 61:6
**received** [1] - 9:2
**recent** [1] - 50:7
**recently** [2] - 8:4, 70:13
**recklessly** [1] - 10:17
**recognize** [2] - 45:17, 54:21
**recognized** [1] - 48:23
**recognizes** [3] - 52:11, 55:3, 65:3
**recommend** [7] - 23:25, 25:23, 41:23, 50:13, 50:16, 52:1, 62:12
**recommendation** [11] - 25:25, 41:9, 51:11, 60:18, 61:19, 61:24, 62:16, 64:5, 66:5, 66:20, 70:16
**recommendations** [2] - 52:8, 61:21
**recommended** [11] - 21:5, 23:12, 23:13, 23:16, 23:22, 25:1, 27:15, 41:11, 42:5, 62:11, 70:9
**recommending** [1] - 25:1
**reconnect** [3] - 5:12, 5:15, 41:24
**record** [13] - 2:8, 3:11, 6:25, 19:15, 23:15, 23:16, 23:19, 37:20, 38:11, 39:2, 39:10, 65:10, 68:16
**recorded** [2] - 53:6, 72:9
**recording** [1] - 44:17
**recruitment** [1] - 29:22
**recruits** [2] - 30:9, 30:11
**reduction** [3] - 21:22, 22:3, 22:5
**reestablishing** [1] - 5:22
**reference** [2] - 39:6, 47:22
**reflect** [3] - 25:9, 66:7, 68:21
**regard** [1] - 51:24
**regarding** [5] - 17:4, 30:13, 31:11, 58:7, 61:15
**regardless** [3] - 46:19, 68:11, 70:14
**regards** [1] - 58:22
**regional** [1] - 30:21
**regulate** [1] - 60:3
**relate** [2] - 21:13, 21:15
**related** [2] - 12:18, 15:5
**relates** [1] - 57:14
**relating** [3] - 21:2, 21:7, 22:24
**release** [20] - 11:8, 11:12, 11:21, 12:1, 39:25, 46:13, 50:13, 50:22, 52:2, 52:6, 52:7, 58:16, 59:8, 61:4, 62:12, 66:18, 66:25, 67:1, 67:13, 69:5
**released** [5] - 26:19, 55:15, 55:18, 56:13, 56:15
**relevant** [3] - 34:6, 37:20, 64:7
**relied** [1] - 38:1
**remain** [1] - 10:18
**remainder** [2] - 3:2, 49:17
**remained** [1] - 32:10
**remaining** [1] - 70:4
**remains** [1] - 3:24
**remanded** [1] - 70:24
**remove** [1] - 65:6
**Renee** [4] - 1:24, 72:3, 72:15, 72:16
**repeat** [2] - 27:24, 42:3
**report** [9] - 37:11, 37:23, 38:5, 38:22, 39:3, 51:12, 51:14, 71:7, 71:9
**reported** [1] - 72:6
**reporter** [3] - 31:13, 31:19, 43:15
**REPORTER** [1] - 1:23
**Reporter** [2] - 72:3, 72:17
**reporter's** [1] - 31:12
**reporting** [1] - 31:18
**represent** [3] - 14:12, 62:23, 69:24
**representation** [2] - 8:20, 63:6
**represented** [1] - 14:10
**representing** [1] - 52:13
**request** [4] - 37:13, 62:1, 62:2, 69:21
**requested** [3] - 3:9, 37:8, 38:21
**requesting** [1] - 61:24
**requests** [1] - 55:20
**require** [3] - 15:2, 17:19, 45:16
**required** [14] - 11:23, 13:1, 14:1, 17:8, 24:7, 24:15, 25:6, 38:22, 55:25, 56:4, 64:17, 66:23, 67:8, 68:13
**requirement** [3] - 12:4, 26:24, 51:16
**reside** [2] - 32:9, 48:24
**residence** [7] - 32:20, 33:8, 33:9, 33:10, 44:15, 44:17, 49:20
**residency** [1] - 18:13
**residing** [2] - 31:17, 32:23
**respect** [10] - 25:10, 45:14, 47:19, 47:25, 50:10, 53:18, 55:17, 56:8, 57:12, 66:8
**response** [1] - 37:19
**responses** [1] - 6:16
**responsibility** [3] - 22:4, 22:5, 65:8
**responsible** [1] - 54:22
**rest** [2] - 16:2, 16:18
**restitution** [2] - 12:10, 46:13
**result** [6] - 11:24, 39:24, 48:7, 62:3, 62:4, 65:14
**return** [3] - 13:15, 32:13, 42:7
**returning** [1] - 44:9
**revert** [1] - 68:25
**reverting** [1] - 69:9
**review** [3] - 20:19, 38:7, 39:7
**reviewed** [5] - 20:1, 20:10, 35:14, 39:8, 39:19
**rifle** [3] - 33:11, 44:15, 64:19
**rights** [6] - 12:22, 14:17, 15:5, 17:4, 18:1, 18:6
**risk** [2] - 3:21, 3:24
**risks** [2] - 4:2, 55:5
**RMR** [2] - 1:24, 72:16
**ROBERT** [1] - 1:19
**Robert** [2] - 2:16, 2:25
**room** [7] - 15:8, 15:23, 15:25, 16:3, 16:6, 16:18, 62:22
**rooms** [3] - 29:21, 30:4, 43:9
**roughly** [4] - 32:1, 32:25, 33:1, 51:2
**rounds** [1] - 32:25
**route** [1] - 32:3
**routinely** [1] - 57:9
**RPR** [2] - 1:24, 72:16
**rule** [1] - 37:4
**Rule** [3] - 39:9, 39:17, 64:6
**Rules** [1] - 37:10
**run** [1] - 66:19
**running** [1] - 45:11

## S

**safely** [2] - 32:8, 48:24
**safety** [3] - 3:21, 3:25, 43:21
**sake** [3] - 60:25, 69:10
**sanctions** [1] - 36:24
**satisfied** [5] - 6:14, 6:17, 8:19, 28:22, 35:19
**satisfy** [1] - 58:4
**scenario** [1] - 53:7
**Schedule** [2] - 33:23, 49:21
**school** [3] - 7:19, 7:21, 8:1
**science** [1] - 30:14
**search** [1] - 50:8
**searches** [1] - 65:15
**second** [6] - 10:7, 10:16, 23:6, 38:25, 48:2, 67:4
**secret** [1] - 43:7
**Section** [4] - 3:17, 9:8, 9:12, 9:14
**section** [2] - 29:19, 30:19
**secure** [2] - 30:18, 68:6
**see** [8] - 16:25, 17:18, 40:7, 51:18, 56:18, 57:9, 59:3, 59:5
**seek** [1] - 45:22
**seeks** [1] - 47:17
**seem** [1] - 59:9
**select** [1] - 13:11
**selected** [1] - 13:13

**selection** [1] - 13:13
**sell** [2] - 33:24, 34:1
**semi** [1] - 43:13
**sense** [4] - 29:3, 60:7, 60:13, 60:15
**sentence** [50] - 12:9, 12:15, 21:15, 23:12, 23:13, 23:16, 23:22, 24:6, 24:8, 24:16, 24:18, 24:23, 25:2, 25:6, 25:9, 25:15, 25:22, 25:23, 26:1, 26:7, 26:13, 26:23, 27:1, 27:14, 27:15, 38:20, 38:21, 41:8, 41:11, 45:20, 46:8, 54:6, 54:9, 61:16, 61:18, 62:13, 63:2, 63:11, 63:25, 64:2, 64:5, 66:6, 66:7, 66:13, 67:25, 68:13, 68:14, 69:3, 69:17
**sentenced** [1] - 26:18
**sentences** [5] - 23:24, 46:4, 46:5, 66:14, 66:17
**Sentencing** [3] - 21:3, 21:4, 21:21
**sentencing** [23] - 2:7, 3:10, 3:18, 5:2, 21:3, 21:6, 21:9, 36:19, 37:8, 37:13, 37:18, 37:21, 37:25, 38:9, 39:8, 39:11, 39:14, 39:16, 42:19, 54:8, 62:8, 63:22, 64:4
**separate** [6] - 3:14, 15:23, 31:4, 47:13, 49:14, 57:23
**September** [1] - 18:21
**series** [1] - 6:15
**serious** [20] - 4:3, 4:9, 6:10, 22:11, 34:7, 41:3, 42:24, 44:23, 47:5, 48:3, 48:8, 49:16, 49:23, 55:11, 64:12, 64:25, 68:3, 68:10, 68:13
**seriously** [2] - 62:24, 68:21
**seriousness** [6] - 21:7, 25:10, 45:13, 52:11, 66:2, 66:7
**serve** [1] - 18:6
**served** [1] - 39:13
**service** [1] - 70:24
**Services** [3] - 37:23, 39:3, 51:14
**session** [1] - 2:3
**set** [5] - 16:2, 16:23, 20:10, 21:19, 54:8
**several** [2] - 30:8, 43:10
**severity** [1] - 55:3
**shaky** [1] - 41:15
**shall** [1] - 42:7
**share** [3] - 56:3, 57:5, 57:19
**shorthand** [1] - 72:9
**shot** [1] - 43:13
**showed** [1] - 47:11
**side** [4] - 5:19, 21:14, 28:3, 33:5
**sides** [3] - 38:10, 41:10, 59:9
**signed** [5] - 18:22, 20:20, 34:11, 34:12, 34:13
**significant** [3] - 23:19, 23:20, 64:17
**similar** [3] - 25:13, 38:8, 57:19
**sitting** [1] - 54:18
**situation** [3] - 54:14, 55:19, 59:16
**smuggled** [1] - 22:9
**society** [2] - 43:7, 49:1
**Solomon** [9] - 15:22, 16:10, 16:15, 16:18, 16:19, 41:21, 42:3, 42:5, 71:11
**solution** [1] - 45:2
**solved** [1] - 44:17
**someone** [8] - 18:11, 18:15, 23:15, 23:19, 23:20, 23:22, 57:18, 65:17
**somewhat** [1] - 59:1
**sorry** [9] - 7:20, 7:23, 15:7, 19:9, 20:3, 23:5, 40:15, 55:24, 62:19
**sort** [1] - 60:7
**sought** [1] - 46:5
**south** [1] - 32:21
**SOUTHERN** [1] - 1:3
**southern** [1] - 32:1
**souvenirs** [1] - 32:16
**speakerphone** [1] - 41:25
**speaking** [2] - 2:21, 58:3
**Special** [1] - 2:11
**special** [7] - 11:9, 11:14, 12:3, 40:2, 46:13, 66:23, 66:25
**specialist** [1] - 56:17
**specific** [6] - 21:6, 21:7, 39:4, 39:22, 45:16, 51:10
**specifically** [3] - 46:2, 47:11, 67:17
**spectrum** [1] - 48:8
**speech** [2] - 47:25, 61:3
**spiralled** [1] - 53:8
**spread** [1] - 50:25
**stable** [1] - 65:13
**stage** [2] - 14:12, 38:23
**stand** [2] - 14:19, 60:20
**standard** [3] - 50:15, 56:22, 66:24
**standards** [1] - 67:17
**standing** [3] - 31:5, 31:8, 49:6
**standpoint** [1] - 58:25
**start** [4] - 2:18, 48:9, 56:15, 61:1
**started** [1] - 8:1
**state** [11] - 6:25, 29:23, 31:2, 41:10, 43:3, 43:11, 48:17, 55:25, 56:1, 63:6, 67:17
**Statement** [12] - 29:7, 34:4, 34:11, 38:2, 38:24, 41:6, 44:24, 48:19, 50:6, 50:10, 50:21, 53:5
**statement** [8] - 7:10, 28:25, 29:3, 34:16, 62:8, 63:9, 63:18
**statements** [1] - 72:8
**STATES** [4] - 1:1, 1:5, 1:11, 1:14
**states** [1] - 28:1
**States** [36] - 2:2, 2:5, 2:10, 2:11, 3:10, 7:16, 9:8, 10:16, 10:19, 10:21, 18:15, 21:2, 22:11, 30:3, 31:10, 31:21, 32:6, 32:9, 34:7, 36:11, 41:3, 43:18, 44:11, 46:23, 47:18, 47:25, 48:12, 48:16, 48:24, 49:8, 50:3, 53:21, 64:11, 66:14, 68:5, 72:4
**stating** [1] - 26:25
**status** [1] - 18:13
**statutory** [1] - 66:24
**stay** [1] - 55:14
**stenographically** [1] - 72:6
**STENOTYPE** [1] - 1:25
**step** [4] - 6:10, 15:8, 16:3, 24:6
**stepping** [1] - 16:12
**still** [9] - 2:15, 3:3, 5:15, 17:16, 51:2, 52:24, 56:1, 61:25, 68:19
**stipulate** [1] - 29:12
**Stipulation** [1] - 29:11
**stopping** [1] - 43:22
**structure** [1] - 60:11
**style** [2] - 29:25, 58:8
**subject** [5] - 11:22, 59:11, 59:16, 67:1, 69:17
**submissions** [1] - 5:2
**submit** [1] - 30:12
**submitted** [6] - 37:24, 38:3, 39:5, 42:22, 65:16, 68:19
**submitting** [1] - 38:25
**subpoenas** [1] - 15:2
**subscribing** [1] - 44:11
**substance** [7] - 33:23, 49:21, 51:15, 56:6, 59:10, 67:2, 67:4
**substantial** [6] - 44:7, 46:9, 46:10, 49:10
**substantially** [1] - 46:4
**subtract** [2] - 22:25, 23:9
**subversive** [9] - 22:11, 34:7, 44:22, 46:17, 47:4, 47:12, 47:20, 54:3
**subvert** [1] - 67:3
**sufficient** [4] - 39:10, 51:1, 51:5, 64:3
**Suite** [2] - 1:16, 1:21
**Sullivan** [1] - 2:10
**SULLIVAN** [1] - 1:15
**summarize** [2] - 21:13, 28:25
**summarizing** [1] - 29:9
**summary** [1] - 29:4
**supervised** [18] - 11:8, 11:12, 11:20, 12:1, 39:25, 46:13, 50:13, 52:1, 52:7, 55:15, 58:16, 59:8, 61:4, 66:18, 66:25, 67:1, 67:13, 69:4
**supervision** [2] - 55:17, 72:10
**supplemental** [1] - 71:9
**support** [1] - 68:18
**supported** [1] - 36:15
**suppose** [1] - 58:11
**supposed** [1] - 33:17
**supremacist** [6] - 29:16, 30:3, 30:6, 30:14, 43:1, 64:14
**supremacists** [1] - 30:9
**Supreme** [1] - 47:21
**surrender** [1] - 56:4
**susceptible** [1] - 69:8
**SWORN** [1] - 6:23
**system** [2] - 12:23, 26:18

## T

**table** [1] - 23:10
**tactical** [1] - 30:25
**tactics** [1] - 43:14
**talks** [2] - 48:10, 48:11
**tamper** [1] - 67:2
**TDC-20-0033** [1] - 1:5
**TDC-20-033** [1] - 2:5
**technical** [3] - 5:18, 5:21, 71:4
**telephonically** [1] - 31:14
**temptation** [1] - 59:15
**ten** [1] - 11:7
**term** [10] - 11:7, 11:8, 11:11, 11:12, 11:21, 22:16, 26:23, 46:12, 66:17, 67:13
**terms** [14] - 11:19, 13:19, 20:22, 21:2, 21:13, 22:19, 23:25, 27:7, 47:4, 54:23, 60:10, 61:8, 66:19, 67:24
**terrifying** [1] - 43:13
**terror** [1] - 30:8
**testify** [8] - 14:19, 14:23, 15:2, 15:3, 17:6, 17:7, 17:8, 17:11
**testimony** [1] - 72:8
**testing** [6] - 51:16, 56:6, 59:10, 67:2, 67:3
**thankfully** [1] - 53:9
**THE** [255] - 1:1, 1:2, 1:10, 1:13, 1:14, 1:18, 2:1, 2:14, 2:19, 3:6, 4:19, 4:21, 4:23, 4:24, 5:6, 5:9, 5:12, 5:15, 5:18, 5:21, 5:25, 6:1, 6:3, 6:4, 6:21, 6:24, 7:1, 7:2, 7:3, 7:6, 7:7, 7:11, 7:12, 7:13, 7:14,

7:15, 7:16, 7:18, 7:19, 7:20, 7:21, 7:23, 7:25, 8:3, 8:4, 8:6, 8:7, 8:9, 8:10, 8:13, 8:14, 8:16, 8:17, 8:21, 8:22, 9:1, 9:2, 9:5, 9:6, 9:17, 9:18, 9:20, 9:21, 9:23, 9:24, 10:13, 10:14, 11:1, 11:2, 11:15, 11:18, 11:19, 12:2, 12:3, 12:8, 12:9, 12:14, 12:15, 12:20, 12:21, 13:6, 13:7, 13:20, 13:21, 13:25, 14:1, 14:8, 14:9, 14:15, 14:16, 15:6, 15:11, 15:16, 15:18, 15:20, 15:21, 15:24, 16:5, 16:7, 16:10, 16:12, 16:16, 16:17, 16:20, 16:21, 16:23, 16:25, 17:14, 17:15, 17:22, 17:23, 18:3, 18:4, 18:9, 18:10, 18:18, 18:19, 18:23, 18:24, 19:1, 19:2, 19:4, 19:5, 19:9, 19:14, 19:19, 19:21, 19:24, 20:3, 20:12, 20:17, 20:21, 20:22, 20:24, 20:25, 21:11, 21:12, 22:18, 22:20, 22:21, 23:5, 23:6, 24:2, 24:3, 24:14, 24:15, 24:20, 24:21, 25:4, 25:5, 25:19, 25:20, 26:4, 26:5, 26:11, 26:12, 26:16, 26:17, 26:21, 26:22, 27:4, 27:5, 27:12, 27:13, 27:18, 27:19, 27:24, 27:25, 28:6, 28:7, 28:10, 28:11, 28:13, 28:14, 28:17, 28:18, 28:20, 28:21, 34:14, 34:17, 34:19, 34:21, 34:22, 34:24, 34:25, 35:2, 35:4, 35:8, 35:11, 35:13, 35:17, 35:18, 35:22, 36:1, 36:2, 36:4, 36:5, 36:8, 36:9, 36:10, 37:7, 37:16, 38:3, 38:10, 38:14, 38:19, 40:6, 40:10, 40:17, 40:19, 40:24, 41:17, 41:21, 41:23, 41:25, 42:5, 42:9, 42:11, 42:15, 42:18, 45:3, 45:7, 46:15, 48:21, 50:12, 51:10, 52:4, 58:6, 59:7, 60:17, 61:6, 61:14, 61:20, 62:2, 62:3, 62:5, 62:6, 62:15, 62:19, 63:5, 63:10, 63:15, 63:16, 63:17, 63:19, 63:20, 63:24, 67:24, 70:2, 70:3, 70:12, 71:6, 71:11, 71:13, 71:15

**themselves** [1] - 57:18
**THEODORE** [1] - 1:10
**Theodore** [1] - 2:3
**thereafter** [3] - 31:20, 31:21, 72:10
**therefore** [1] - 36:17
**thereof** [1] - 72:13
**thinking** [2] - 55:4, 61:8
**thinks** [1] - 46:19
**third** [3] - 10:19, 22:5, 39:3
**Thomas** [1] - 2:9
**THOMAS** [2] - 1:14, 1:15
**threatened** [1] - 28:11
**Three** [4] - 9:11, 36:6, 70:6, 70:22
**three** [13] - 11:8, 11:12, 21:22, 32:12, 40:1, 46:1, 46:12, 47:6, 52:1, 58:17, 60:3, 66:18, 70:7
**three-level** [1] - 21:22
**three-year** [2] - 46:12, 52:1
**throughout** [4] - 4:5, 13:2, 33:20, 39:12
**Title** [2] - 9:7, 50:9
**today** [10] - 6:7, 8:7, 8:12, 8:22, 13:3, 14:11, 17:24, 28:16, 37:9, 39:17
**today's** [4] - 3:16, 4:12, 6:20, 8:11
**tolerate** [1] - 68:12
**Tom** [1] - 2:10
**total** [2] - 23:2, 64:5
**touching** [1] - 58:11
**toward** [1] - 61:2
**towards** [1] - 61:3
**tracked** [1] - 54:13
**tragic** [1] - 52:12
**training** [32] - 29:25, 30:5, 30:15, 30:21, 30:24, 30:25, 31:2, 31:4, 32:18, 32:21, 32:23, 43:6, 43:9, 43:10, 44:8, 49:6, 49:10, 49:12, 51:2, 51:9, 57:2, 58:7, 58:8, 58:22, 59:20, 59:22, 61:8, 61:9, 64:17, 67:14, 68:21
**Training** [1] - 30:19
**transcribed** [1] - 72:10
**TRANSCRIPT** [1] - 1:10
**transcript** [1] - 72:6
**TRANSCRIPTION** [1] - 1:25
**transcription** [1] - 72:11
**transfer** [1] - 71:13
**transport** [10] - 9:7, 9:11, 10:4, 10:7, 32:7, 35:25, 43:21, 64:12, 66:16
**transportation** [3] - 10:20, 49:10, 64:9
**transported** [5] - 10:20, 22:9, 34:9, 41:2, 46:25
**transporting** [9] - 9:9, 10:14, 36:3, 43:20, 47:2, 64:23, 65:5, 65:22, 68:2
**travel** [8] - 50:17, 50:19, 51:1, 51:14, 55:19, 59:15, 67:9
**traveled** [1] - 68:4
**traveling** [1] - 55:23
**travelled** [3] - 30:23, 31:25, 33:2
**treated** [1] - 8:4
**treating** [1] - 67:7
**treatment** [8] - 51:16, 56:7, 59:11, 62:12, 67:4, 67:6, 68:22
**trial** [21] - 6:12, 13:8, 13:18, 13:21, 14:1, 14:9, 14:12, 14:13, 14:16, 15:5, 17:4, 17:6, 17:16, 17:18, 17:19, 17:24, 17:25, 18:1, 26:2, 29:1, 29:12
**trip** [2] - 32:13, 33:4
**trouble** [2] - 2:19, 41:15
**troubling** [1] - 53:7
**truck** [2] - 31:25, 33:3
**true** [3] - 27:22, 53:5, 72:5
**truth** [1] - 6:20
**truthfully** [1] - 7:5
**try** [5] - 2:24, 33:24, 44:21, 60:3, 67:3
**trying** [8] - 5:12, 5:15, 48:19, 50:5, 50:9, 52:24, 56:16, 59:1
**TUESDAY** [1] - 1:11
**turn** [3] - 55:25, 62:17, 62:20
**Two** [12] - 9:8, 9:16, 10:14, 10:25, 11:5, 11:11, 35:12, 35:23, 36:2, 36:6, 36:18, 66:15
**two** [6] - 22:3, 29:19, 32:11, 33:8, 43:22, 65:4
**two-level** [1] - 22:3
**Type** [1] - 62:5
**type** [6] - 25:24, 38:20, 50:2, 51:19, 66:11, 69:9
**types** [2] - 23:24, 69:7
**typically** [1] - 29:21

## U

**U.S** [4] - 18:11, 18:12, 18:16, 21:4
**U.S.C** [4] - 9:10, 9:12, 9:14, 64:1
**Ukraine** [1] - 59:15
**unabashed** [1] - 44:2
**unanimous** [1] - 13:15
**unbeknownst** [1] - 44:16
**unclear** [2] - 47:1, 47:6
**under** [27] - 3:17, 6:16, 7:4, 8:7, 12:9, 12:15, 12:23, 13:7, 15:24, 21:4, 23:2, 23:10, 24:16, 25:24, 27:6, 31:6, 36:23, 37:10, 39:9, 39:17, 40:11, 40:25, 56:10, 60:16, 64:6, 64:23, 72:10
**undercover** [1] - 31:13
**undergo** [2] - 67:4, 67:5
**undergone** [1] - 55:1
**understood** [3] - 17:3, 32:4, 35:2
**undertakings** [1] - 49:3
**undoing** [1] - 65:14
**unfortunately** [2] - 16:1, 19:14
**UNITED** [4] - 1:1, 1:5, 1:11, 1:14
**United** [36] - 2:2, 2:5, 2:10, 2:11, 3:10, 7:16, 9:8, 10:16, 10:19, 10:21, 18:15, 21:2, 22:11, 30:3, 31:10, 31:21, 32:6, 32:9, 34:7, 36:11, 41:3, 43:18, 44:10, 46:23, 47:18, 47:24, 48:12, 48:16, 48:24, 49:8, 50:3, 53:21, 64:10, 66:14, 68:4, 72:4
**unlawful** [2] - 10:6, 10:8
**unlawfully** [4] - 31:22, 32:6, 49:8, 64:10
**unless** [2] - 12:24, 14:3
**unreasonable** [2] - 3:20, 3:24
**unsecured** [1] - 68:5
**unwarranted** [3] - 25:13, 45:25, 46:7
**unwilling** [1] - 15:1
**up** [27] - 12:17, 12:22, 13:3, 16:2, 17:25, 20:10, 22:25, 23:9, 27:2, 27:7, 27:8, 27:14, 32:2, 32:4, 32:7, 32:19, 37:3, 43:12, 43:23, 44:13, 46:18, 48:23, 59:16, 61:3, 61:14, 65:12, 70:18
**upbringing** [1] - 65:13
**upcoming** [1] - 33:14
**upward** [15] - 22:7, 24:5, 24:25, 25:21, 34:5, 40:11, 40:24, 41:6, 44:22, 47:4, 50:11, 53:18, 65:1, 66:1, 66:6
**urge** [2] - 68:20, 69:11
**usual** [1] - 38:23

## V

**vague** [2] - 57:3, 58:2
**valuable** [1] - 18:5
**various** [3] - 17:3, 23:12, 60:10
**vehicle** [1] - 30:23
**venue** [1] - 49:14
**venued** [1] - 49:22
**verdict** [2] - 13:15, 17:17
**vetted** [1] - 30:16
**VI** [1] - 23:21
**victim** [1] - 65:17
**victims** [4] - 12:11, 51:23, 56:21, 58:5
**video** [9] - 3:12, 3:13, 3:14, 3:18, 4:14,

4:16, 5:1, 42:12, 44:17
**view** [1] - 60:5
**viewing** [1] - 69:5
**viewpoint** [2] - 46:22, 69:7
**viewpoints** [1] - 68:11
**views** [1] - 46:19
**violated** [1] - 57:22
**violating** [1] - 61:4
**violation** [8] - 9:7, 9:9, 9:12, 9:13, 10:16, 10:19, 10:22, 11:24
**violations** [2] - 57:13, 58:17
**violence** [11] - 29:23, 43:4, 46:21, 48:18, 57:20, 60:7, 64:24, 66:12, 68:12, 68:17, 69:1
**violent** [10] - 30:7, 43:2, 47:24, 48:6, 49:3, 54:3, 57:14, 57:23, 66:4, 68:10
**Virginia** [12] - 33:4, 33:14, 33:16, 41:5, 44:19, 46:3, 47:11, 50:1, 53:17, 64:20, 65:7, 68:9
**visited** [3] - 33:8, 44:14, 49:20
**volume** [1] - 19:23
**voluntarily** [2] - 6:14, 6:17
**voluntary** [1] - 36:15
**vote** [1] - 18:6
**vs** [5] - 2:5, 3:10, 36:11, 36:23, 66:14

## W

**wait** [1] - 16:17
**waiting** [3] - 16:2, 16:6, 16:18
**waive** [1] - 69:24
**waived** [3] - 17:24, 27:7, 27:14
**waivers** [1] - 69:18
**walked** [1] - 59:3
**walking** [1] - 57:21
**wants** [2] - 57:18, 71:3
**warrant** [1] - 51:16
**warranted** [3] - 40:25, 41:7, 44:22
**warrants** [3] - 50:8, 50:11, 65:1
**watched** [1] - 44:18
**wave** [1] - 16:13
**ways** [3] - 12:18, 29:25, 48:7
**weapon** [1] - 21:25
**weapons** [1] - 64:20
**wear** [1] - 33:16
**white** [11] - 29:16, 29:22, 30:3, 30:6, 30:9, 30:13, 32:17, 43:1, 43:3, 48:17, 64:14
**widely** [1] - 32:16
**willfully** [2] - 10:8, 10:22
**WILLIAM** [2] - 1:8, 6:23
**William** [4] - 2:5, 2:17, 7:1, 29:15
**willing** [1] - 51:25
**WINDOM** [33] - 1:14, 2:9, 11:6, 21:17, 29:6, 35:7, 37:2, 37:15, 38:1, 38:12, 38:17, 40:4, 40:15, 40:18, 41:14, 41:18, 42:2, 42:7, 42:14, 42:17, 42:20, 45:5, 45:8, 47:15, 48:22, 50:15, 51:25, 60:22, 61:13, 63:12, 67:23, 70:5, 71:17
**Windom** [22] - 2:10, 23:8, 24:22, 29:5, 34:14, 35:4, 36:20, 37:14, 40:13, 41:13, 41:24, 42:1, 42:9, 42:12, 46:15, 52:19, 53:12, 54:12, 58:3, 60:17, 67:22, 70:3
**window** [1] - 52:21
**Winnipeg** [3] - 31:11, 31:17, 43:16
**wish** [2] - 8:22, 69:19
**withdraw** [4] - 26:1, 26:5, 26:8, 26:14
**Witness** [1] - 20:24
**witness** [2] - 14:19, 67:11
**witnesses** [9] - 14:18, 14:21, 14:25, 51:22, 56:22, 59:14, 67:12, 72:8
**worse** [1] - 54:14
**wreaked** [1] - 53:8
**written** [1] - 9:3
**wrote** [1] - 63:8

## Y

**year** [17] - 4:5, 4:7, 22:16, 25:1, 26:1, 26:13, 38:21, 45:20, 46:8, 46:12, 52:1, 52:13, 53:1, 54:10, 54:20, 66:6
**years** [15] - 11:8, 11:12, 25:23, 40:1, 45:9, 47:21, 51:3, 52:19, 54:25, 55:13, 58:17, 60:4, 66:18
**young** [3] - 54:11, 56:14, 68:20
**yourself** [3] - 41:19, 68:15, 68:17
**yourselves** [1] - 2:8
**youth** [2] - 53:1, 65:25

## Z

**zero** [1] - 38:18
**Zoom** [1] - 3:4